LATHAM & WATKINS LLP
  Daniel M. Wall (SBN 102580)
  Christopher S. Yates (SBN 161273)
  Aaron T. Chiu (SBN 287788)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:  Dan.Wall@lw.com
          Chris.Yates@lw.com
          Aaron.Chiu@lw.com

Attorneys for Defendant
Fédération Internationale de Natation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS A. SHIELDS, ET AL,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>FÉDÉRATION INTERNATIONALE DE NATATION,<br><br>                    Defendant. | CASE NO. 3:18-cv-07393-JSC<br>CASE NO. 3:18-cv-07394-JSC<br><br>**DEFENDANT FÉDÉRATION INTERNATIONALE DE NATATION'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF RE: JURISDICTION**<br><br>Date:      December 12, 2019<br>Time:      9:00 AM<br>Place:     Courtroom F, 15th Floor<br><br>The Honorable Jacqueline Scott Corley |
| INTERNATIONAL SWIMMING LEAGUE, LTD.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>FÉDÉRATION INTERNATIONALE DE NATATION,<br><br>                    Defendant. | |

**REDACTED VERSION OF THE DOCUMENT
SOUGHT TO BE FILED UNDER SEAL**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  OVERVIEW OF THE JURISDICTIONAL FACTS ......................................... 4

    A.  ISL and FINA's Initial Negotiations Regarding a Potential MOU ...................... 4

    B.  ISL Attempts to Solicit Support from FINA's Member Federations in the Spring of 2018 .................................................................................... 4

    C.  USAS' Participation in ISL was Always Conditioned upon FINA's Approval ............................................................................................ 6

    D.  FINA's June 5 Memorandum Was Intended to Inform All of Its Member Federations Regarding Its General Position on ISL .............................. 7

        1.  The June 5 Memorandum Was Not Motivated by Any Specific ISL Event ................................................................................ 7

        2.  There Was Never a "Planned Las Vegas Event" ....................................... 9

        3.  FINA Had Indications That ISL Was Considering Various Potential Venues for Its Inaugural Event When It Circulated the June 5 Memorandum ........................................... 10

    E.  ISL Continued to Explore Potential Venues and Negotiated with FINA after the June 5 Memorandum ................................................. 12

    F.  After ISL Refused to Finalize an MOU with FINA, the Italian Federation Announced That ISL's Inaugural Event Was Planned for Turin, Italy ................................................................................ 13

    G.  FINA's Response to the Turin Event and ISL's Cancellation of the Event Gave Rise to This Lawsuit ................................................. 14

III.  THE DISCOVERY CONFIRMED THAT THIS COURT LACKS PERSONAL JURISDICTION OVER FINA ................................................. 15

    A.  FINA Did Not Purposefully Direct Any Conduct at the United States .............................................................................................. 16

        1.  Absent An Actual "Planned Las Vegas Event," FINA's Conduct Was Not—and Could Not Be—"Expressly Aimed" at the United States ............................................................... 17

        2.  Any Claimed Harm by ISL in the United States Could Not Have Been Caused by FINA's June 5 Memo ....................................... 19

    B.  ISL's Claims Arise Entirely out of FINA's Conduct with Respect to the Turin Event, Not Any U.S.-Related Contacts ............................ 19

IV.  CONCLUSION ................................................................................................ 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alcabes v. Capella Hotel Group LLC*,
  No. 14-CV-7650 DMG MRWX, 2015 WL 12697714 (C.D. Cal. July 8, 2015)................. 18

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ............................................................... 1, 4, 16, 19

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) ....................................................................... 19, 20

*Calder v. Jones*,
  465 U.S. 783 (1984)....................................................................................... 1, 16

*City of Oakland v. BP p.l.c.*,
  No. C 17-06011 WHA, 2018 WL 3609055 (N.D. Cal. July 27, 2018) ............................. 20

*Electronic Frontier Foundation v. Global Equity Management (SA) Pty Ltd.*,
  290 F. Supp. 3d 923 (N.D. Cal. 2017) ................................................................. 16

*Gilmore-Webster v. Bayou City Homebuyers Inc.*,
  No. 18-CV-05702-JSC, 2019 WL 1100492 (N.D. Cal. Mar. 8, 2019).......................... 19, 20

*Jagen Investments LLC v. Cannon Financial Institute, Inc.*,
  No. 2:13-CV-00868 GMN NJK, 2016 WL 11485896 (D. Nev. June 27, 2016)................. 18

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................................... 17

*Rojas v. Hamm*,
  No. 18-CV-01779-WHO, 2019 WL 3779706 (N.D. Cal. Aug. 12, 2019) .......................... 20

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................... 16, 19, 20

*Walden v. Fiore*,
  571 U.S. 277 (2014)........................................................................... 1, 2, 16, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

# APPENDIX OF KEY INDIVIDUALS

| **Name** | **Title(s) / Role(s)** |
|---|---|
| Barelli, Paolo | *President, Federazione Italiana Nuoto (Italian Swimming Federation)* |
| | *President, Ligue Européene de Natation (LEN)* |
| | *Vice President, FINA* |
| Buckner, Jack | *Chief Executive Officer, British Swimming* |
| Forbes, Chris | *Former Interim CEO and Chief Commercial Officer, Swimming Australia* |
| Grigorishin, Konstantin | *Ukrainian founder and funder of ISL* |
| Khan, Ali | *Chief Executive Officer, ISL* |
| Hinchey, Tim | *Chief Executive Officer, USA Swimming* |
| Marculescu, Cornel | *Executive Director, FINA* |
| Neuburger, Dale | *Vice President, FINA* |
| | *U.S. Aquatic Sports Representative, FINA* |
| | *Ex-officio Board Member, USA Swimming (through 2018)* |
| Rouger, David | *Consultant for ISL and main ISL contact for USA Swimming* |
| Unger, Mike | *Chief Operating Officer, USA Swimming* |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

## I.       INTRODUCTION

Jurisdiction over FINA turns on whether FINA's own "suit-related conduct … create[s] a substantial connection with" the United States, from which Plaintiffs' claims arise.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017).  The Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789 (1984), referred to this as whether the forum was the "focal point both of the [unlawful conduct] and of the harm suffered."  *See also Axiom Foods*, 874 F.3d at 1070–71 (quoting *Calder*, 465 U.S. at 789).  Regardless of the language used, the Court is required to:  (1) identify "contacts that the 'defendant *himself*' creates with the forum State, not the defendant's conducts with persons who reside there,'" and then (2) find that this particular conduct in, or expressly aimed at, the forum gives rise to the plaintiff's claims.  *Id.* at 1068 (quoting *Walden*, 571 U.S. at 284).

Plaintiffs' jurisdictional allegations failed because they described a dispute that does not arise out of any conduct that FINA "purposefully directed" at this forum, as the alleged conduct by the Swiss defendant targeted a worldwide "market for the promotion and organization of top-tier international swimming competitions," Compl. ¶ 4, and the United States was implicated simply because USA Swimming was among the many national federations FINA wrote and spoke to about ISL.  MTD Order[1] at 11–12.  There were only two brief references to the possibility of a Las Vegas event in the Complaints, and in contrast, Plaintiffs acknowledged that the flashpoint of this dispute occurred in relation to Italy:  in October 2018, ISL partnered with the Italian swimming federation on a meet that was to be held in Turin, Italy, claiming this was permissible under FINA rules because it was a "national" competition when in every respect it was an international competition.  The legal claims that ISL's current U.S. counsel threatened and advanced in an October 30, 2018 letter to FINA arise entirely out of that event in Turin and FINA's actions relating to it; there was absolutely nothing about USA Swimming, Las Vegas or even the United States.

Since that story undermines personal jurisdiction, Plaintiffs now comprehensively rewrite history.  They present a fabricated narrative that this case arises out of efforts by FINA to boycott a supposedly "planned" ISL event in Las Vegas.  But jurisdictional discovery confirmed what

---

[1] *Shields*, Dkt. 38; *ISL*, Dkt. 37.

1    Plaintiffs *originally* alleged:  that there was a fundamental dispute between FINA and ISL over

2    the *governance* of international swimming competitions—one over whether ISL could partner with

3    FINA national federations for its events, but without complying with FINA rules.  ISL eventually

4    convinced the Italian federation to do so, precipitating the dispute that led to this litigation.  But

5    because this dispute is about *how*—not *where*—ISL would be able to stage its international swim

6    meets, only a distortion of the evidence allows ISL to argue for U.S. jurisdiction.  It is beyond

7    reasonable dispute that the FINA actions upon which Plaintiffs' base their injury claim occurred

8    outside the U.S., were intended to ensure all FINA federations were aware of and complied with

9    FINA policies, and that there is a U.S. component to this story only because USA Swimming was

10   one of numerous federations ISL contacted as a potential co-host for its competitions.  That is not

11   enough to establish specific personal jurisdiction over FINA.  *See Walden*, 571 U.S. at 291 ("[I]t

12   is the defendant, not the plaintiff or third parties, who must create contacts with the forum.").

13        Most of what follows corrects the record.  That has to be, because the new U.S.-centric

14   version of the facts ISL presents is so misleading.  This is what the evidence actually shows:

15        *First*, from late 2017 until October 2018, FINA and ISL were negotiating on and off over

16   a potential relationship whereby ISL could host international club swimming competitions

17   pursuant to FINA's rules and as part of FINA's calendar.  Throughout, FINA had concerns that

18   ISL was seeking to partner with FINA's national member federations directly, circumventing

19   FINA and FINA's rules.  FINA's concern with ISL related to *governance*, an issue with no

20   particular geographic focus, and not with *where* ISL wanted to host its swim meets.

21        *Second*, FINA's suit-related conduct concerns its governance rights, generally, throughout

22   what the Complaint characterizes as "the swimming world."  There were two primary acts:  the

23   dissemination of a June 5, 2018 memorandum about ISL and the actions taken in October 2018 to

24   challenge (ISL would say "scuttle") the Turin meet co-hosted by the Italian federation.  Plaintiffs

25   emphasize the June 5 memo, arguing that it was specifically intended to disrupt a supposedly

26   "planned" Las Vegas event.  That is false.  The evidence shows that the June 5 memo—sent to all

27   209 of FINA's members—was conceived and drafted because of indications that ISL was talking

28   to numerous FINA members.  In fact, by the time the letter was sent, the Italian federation, which

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

received a draft, had advised FINA in writing that it was working with ISL on an event in Europe and that any efforts by FINA to interfere would violate European competition law.  Furthermore, on its face the June 5 memo is about governance generally.  It informed all FINA members that at that point in time, ISL was not recognized by FINA, and that there could be certain rules consequences if a federation or its affiliated swimmers participated in unsanctioned ISL events.

*Third*, FINA's suit-related conduct was not meaningfully influenced or motivated by events in the United States.  USA Swimming ("USAS") was one of the FINA members interested in ISL's concept; of that there is no doubt.  But unlike the Italian federation, USAS made clear to both ISL and FINA from early 2018 that, as a FINA member (and consistent with its legal obligations under the Ted Stevens Olympic & Amateur Sports Act), it was not in any position to partner with ISL in any way, let alone to host a U.S.-based event, without ISL *first* receiving FINA's approval.  There was therefore never anything like the contentious relationship FINA had with the Italian federation, which threatened to and then actually worked with ISL outside of FINA's governance rules.  FINA never had to, and never did, direct its conduct at the U.S. specifically, because there was never any risk that USAS would circumvent FINA's governance.

*Last*, events in Europe precipitated this dispute.  A concrete location and plan for ISL's inaugural event did not materialize until October 2018, when ISL and the Italian federation advised FINA that they would go forward with an inaugural event in Turin, irrespective of FINA's approval.  It was FINA's response to the Italian federation's attempt to circumvent FINA's rules with respect to that Turin Event, and the subsequent decision by ISL to cancel it, that gave rise to the claims and injuries Plaintiffs assert here.  This is exactly what Plaintiffs' counsel asserted in a pre-suit letter to FINA and also what Plaintiffs alleged in their Complaints.  *See* Compl., Section IV.5 ("FINA Threatens Swimmers And Compels The Aid Of Member Federations To Boycott The Turin Event And Thereby To Force Its Cancellation").

In short, discovery confirmed the international, forum-agnostic nature of this dispute, and that FINA did not "purposefully direct" any conduct at the U.S. in particular, let alone that which gives rise to Plaintiffs' claims.  There was a global governance issue that became contentious only because of the actions of the Italian swimming federation.  Nothing that FINA did in or directed

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1   at the U.S. is "the but-for cause of [Plaintiffs'] claims and purported injuries." *Axiom Foods*, 874

2   F.3d at 1068.

3      On this developed factual record, Plaintiffs' Complaints should be dismissed with

4   prejudice.

5   **II.    OVERVIEW OF THE JURISDICTIONAL FACTS**

6      **A.    ISL and FINA's Initial Negotiations Regarding a Potential MOU**

7      FINA and ISL were not always in conflict.  In late 2017, ISL (then operating as the Energy

8   Standard Group) and FINA began negotiating a potential Memorandum of Understanding

9   ("MOU") for ISL to host a series of international club swimming competitions over a ten-year

10  period.[2]  The parties exchanged drafts of an MOU over several months, which at all times

11  recognized FINA as the world governing body for international and Olympic aquatic sports, and

12  provided that ISL's proposed international club competitions would operate according to FINA's

13  rules, guidelines, and standards.  *See* Exs. 1–7; 9; 11.[3]  The parties' disagreements tended to be

14  over issues of governance.  For example, FINA was concerned with ISL's proposal that it be called

15  the "International Swim Association," which FINA viewed as a potential conflict with FINA's

16  position as the international federation for aquatic sports.[4]  *See* Ex. 2.

17     These negotiations dragged on for nearly a year.  They would stall, resume, and stall again,

18  until matters finally broke down in October 2018, as described below.

19     **B.    ISL Attempts to Solicit Support from FINA's Member Federations in the
20            Spring of 2018**

21     Since at least January 2018, ISL was also reaching out directly to FINA member

---

22  [2] Contrary to Plaintiffs' assertions, ISL's proposed club-based competitions were hardly
23  innovative.  *See* Unger Dep. at 9:7–18 ("Q: "Did you come to the opinion that it was a new
    competition product?  A:  I've been at USAS for 26 years.  I thought to myself, we have done that
24  before.  We—we started a new product in 2003 called Duel in the Pool.  And, honestly, the league
    that they were talking about, team versus team, country versus country, club versus club, was
25  something we had done before in this country.").

26  [3] All Exhibit cites are to those attached to the declaration of Aaron T. Chiu filed with this brief.

27  [4] FINA later discovered that in March 2018, ISL had registered as a company in the Swiss
    Commercial Register with the same stated objectives as FINA: ███████████████████████████

28  ████████████████████████████████████████████████████████████████████████████████████████
                   Ex. 57.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1   federations.   FINA learned of some of these contacts through its members.   For example, in

2   February of 2018, representatives from USAS met with FINA in Lausanne and discussed (among

3   many other subjects) the prospect of USAS participating in ISL's events. *See* Ex. 8; Unger Dep.

4   at 24:23–25:1.   FINA did not object to USAS' potential participation, provided that the ISL events

5   were "███████████████████████," per FINA rules—which at the time was exactly

6   as contemplated by the MOU that FINA had been negotiating with ISL.   Ex. 10.

7          In March 2018, ISL circulated promotional materials to various member federations about

8   its proposed international swim series, hoping to hold its inaugural event in December 2018.   *See*

9   Exs. 13, 16.   Notably, ISL's materials indicated that the location for this inaugural event was still

10   "████" (*id.*), contradicting Plaintiffs' claims that there were "plans" of any sort for the inaugural

11   event to be hosted in the U.S. at this time, or that FINA's reaction to the materials had any

12   connection to a specific location for the event.   Pls.' Br. at 6.

13          On March 15, 2018, a Dutch swimmer forwarded ISL's materials to Mr. Neuburger, who

14   brought them to the attention of Mr. Marculescu.   Exs. 12; 19.   The Singaporean federation also

15   forwarded these materials to FINA, indicating that ISL had contacted them about hosting ISL's

16   inaugural event in December.   *See* Ex. 18.   Given the recent MOU negotiations, FINA was

17   surprised to see ISL pursuing the event series behind its back and without any reference to FINA.

18   *See* Exs. 13; 19.   This was disconcerting not because ISL's proposed swim events would

19   "compete" with FINA's events, but because ISL's surreptitious outreach to FINA's members

20   resonated with the recent efforts of the WSA to replace FINA as the IOC-recognized international

21   federation for aquatic sports.   *See* Neuburger Dep. at 95:21–96:23; Unger Dep. at 31:2–3, 9–12;

22   46:15–21 ("I think [Mr. Marculescu] felt that there might be some question about whether [ISL]

23   w[as] trying to infiltrate, take over the sport").

24          Plaintiffs make much of an email in which Mr. Marculescu told Mr. Neuburger that FINA

25   needed to "████████." Ex. 19.   The action taken occurred on March 28, when Mr. Marculescu

26   reached out *to ISL's CEO* in London*,* Ali Khan, explaining that ████████████████████

27   ████████████████████████████████████████████." Ex. 21.   Mr. Khan

28   responded that despite FINA's request that ISL change its name, ISL would be proceeding with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1   their concept and maintaining the name "International Swimming League." *Id.*

2       **C.      USAS' Participation in ISL was Always Conditioned upon FINA's Approval**

3       Mr. Neuburger (of FINA) also contacted Mr. Unger (of USAS) to see whether USAS had

4   received ISL's promotional materials and if it had plans to have swimmers participate in the

5   potential December event, explaining that FINA was concerned that ISL had been untruthful about

6   its partnership with FINA. *See* Exs. 15; 20.  Mr. Unger was similarly "███████" because USAS

7   had "███████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████"  Ex. 20.  Mr.

9   Unger explained that USAS had been under the impression that throughout this time, "ISL ha[d]

10  been working with FINA, in order to garner support from [Mr.] Marculescu" for the ISL event

11  series. Ex. 22.  For USAS, participation in an ISL event without FINA approval was a nonstarter.

12      In fact, notwithstanding Plaintiffs' extensive effort to argue that FINA prevented USAS

13  from working with ISL, USAS made clear to ISL from the beginning of their discussions that any

14  USAS participation in ISL events or partnership with ISL to host events in the U.S. was contingent

15  on FINA's approval. *See* Unger Dep. at 38:21–22; *id.* at 173:10–17 ("Q … You made clear to ISL

16  from the beginning of your discussions with them that USA Swimming's position was that any

17  ISL events needed to be approved by FINA, correct? A. That is correct. Q. And that position was

18  a precondition for USA Swimming to partner with ISL to host an event in the U.S., too, correct?

19  A. Yes.").  There is unequivocal confirmation of this in a June 4 internal email from ISL's CEO,

20  stating:  "To be fair to Mike [Unger], when I met him in New York, he was pretty clear that FINA

21  support was important and relevant and without FINA his support was unlikely." Ex. 37.  British

22  Swimming, Swimming Australia and other federations also took the position that they would work

23  with ISL only if and when it worked out its relationship with FINA. *See* Exs. 34, 38.

24      Given USAS' stance, all discussions between USAS and ISL regarding a potential U.S.

25  venue for ISL's inaugural event were subject to USAS' understanding that ISL was working to

26  obtain FINA's approval for the concept.  And because ISL did not obtain that approval, contrary

27  to Plaintiffs' characterizations, at no point during this period did USAS finalize an "intent to host

28  ISL's first competition in the United States."  Pls.' Br. at 7.  The unequivocal testimony and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1  documents from USAS make this clear.  For example, while USAS expressed interest in hosting

2  ISL's inaugural event on April 4 (*see* Ex. 23), days later, on April 9, USAS CEO Tim Hinchey

3  indicated to Mr. Unger that he would like to "see more progress on … FINA approval [and] [a]

4  financial offer to [USAS from ISL]" before Mr. Unger agreed to travel to the ISL meeting that

5  ultimately took place in Turkey in late May (Ex. 24).

6        USAS was transparent not only with ISL, but with FINA, repeatedly telling FINA that it

7  would only work with ISL subject to FINA's approval.  *See* Unger Dep. at 16:7–10.  The evidence

8  thus undercuts Plaintiffs' theory that FINA had to "apply[] pressure against[] USA Swimming's

9  desire to put on the ISL-USA Swimming event." Pls.' Br. at 7.  USAS never moved forward with

10  ISL to solidify plans for a U.S. event because, as Mr. Unger "███████████████████████████

11  ███████████████████████████████████████████████████████████████" Ex.

12  36; *see also* Unger Dep. at 17:19–18:1 ("[W]e told FINA on countless occasions, 'You must get

13  to the table with ISL.'  And we told ISL on more occasions, 'You must get to the table with

14  FINA.'").

### D.   FINA's June 5 Memorandum Was Intended to Inform All of Its Member Federations Regarding Its General Position on ISL

17        The discovery also confirmed that FINA's June 5 memorandum regarding ISL was not

18  intended to "scuttle" any particular ISL event, but rather to inform all 209 of its members that ISL

19  was not recognized by FINA.  According to Plaintiffs' own timeline, FINA began drafting the

20  June 5 memorandum on May 15, 2019.  At this time, there was no "planned" event *anywhere*

21  capable of being "targeted" by FINA's memorandum.  And the other links that Plaintiffs attempt

22  to draw between the memorandum and a U.S.-based ISL event are refuted by the evidence.

####       1.   The June 5 Memorandum Was Not Motivated by Any Specific ISL Event

24        FINA intended the June 5 memorandum to be a global, informational message that advised

25  all FINA's 209 member federations about its position with respect to ISL *generally*—that at that

26  time, ISL was an "unauthorized body" under FINA's rules.  Plaintiffs' revisionist theory that the

27  memorandum was intended as a "████" and a "███████" "███████████████████" who

28  "██████████████████," (Marculescu Dep. at 171:11–15), was rejected unequivocally by Mr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1    Marculescu, who testified repeatedly that the memorandum was "███████████████

2    ████████████████" that was "██████████████████████████" but the "████

3    ████" (*id.* at 171:5; 171:21–172:4) and that FINA ███████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████ (*id.* at 177:1–4). Mr. Neuburger corroborated this with

6    testimony that the "████████████████████████████████████████████████

7    ████████████████████████████████." Neuburger Dep. at 117:22–118:2; *see also id.*

8    at 201:24–203:3. USAS also understood FINA's memorandum not as a threat to USAS, but as a

9    message intended to inform "[a]ll nations, all athletes" wanting to participate with ISL. Unger

10   Dep. at 92:15–25; *see also id.* at 92:21–93:7 ("Q: Why do you keep saying 'all nations, all

11   athletes'? … A. [I]t was a worldwide problem. It was not just a U.S. problem."). Note this is

12   entirely consistent with what Plaintiffs *originally alleged*:

> 65. Focusing on its plans for a December 2018 competition … ISL worked to obtain the support of FINA's member federations. To that end, on May 4, 2018, ISL entered into a memorandum of understanding with Ligue Européenne de Natation, the FINA-recognized "continental federation" comprising the European national federations. ISL also, during a May 23-24, 2018, meeting in Turkey, presented its plans to representatives of the federations from the United States, Australia, United Kingdom, Brazil, France, Russia, and Ukraine. [ … ]
>
> 66. In response to ISL's outreach effort, however, and on or about June 5, 2018, FINA's Mr. Marculescu circulated a letter to every FINA member designed to cripple ISL's plans.

19   Compl. ¶¶ 65–66.

20        Plaintiffs also inaccurately attempt to construe Mr. Neuburger's *ex officio* presence at a

21   May 11 USAS International Relations Committee meeting as the triggering event for FINA's

22   drafting of the June 5 memorandum, simply because Las Vegas and London were listed as potential

23   ISL host venues in the meeting minutes. *See* Pls.' Br. at 11–12. Plaintiffs tested that theory, but

24   Mr. Unger testified that Las Vegas was *not* discussed specifically at this meeting; rather, the

25   conversation focused on the whole ISL-FINA "situation." Unger Dep. at 41:3–12, 43:3–9. Mr.

26   Neuburger testified that "████████████████████████████████████████████

27   ████████████████████████████," (Neuburger Dep. at 102:16–18) and that "████

28   ████████████████████████████████████████████████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1  ████████████████████████████████████████████" (*id.* at 103:12–15).  Mr. Neuberger

2  unequivocally denied "████████████████████████████████████████████

3  ███████████████████████████."  *See id.* at 101:19–24.[5]  Other than casting aspersions on

4  Mr. Neuburger,[6] Plaintiffs have not identified any evidence for their theory that FINA knew of an

5  actual event in Las Vegas before it began drafting the June 5 memorandum on May 15.

6          2.    <u>There Was Never a "Planned Las Vegas Event"</u>

7        The notion that a Las Vegas event motivated the June 5 memorandum is refuted further by

8  evidence from USAS that such an event was never in fact "planned."  The lynchpin of Plaintiffs'

9  argument is that "[b]y May 24, ISL was clear that it was coming to Las Vegas."  Pls.' Br. at 7.  That

10  is absolutely false.  Mr. Unger testified to the exact *opposite*—that while ISL indicated interest in

11  Las Vegas, "it was never a finalized we are definitely coming to Las Vegas."[7]  Unger Dep. at

12  114:5–11 (in response to Plaintiffs' question:  "Does this refresh your recollection that by May 24

13  ISL was clear with you that they wanted to have the meet in Las Vegas?").  As Mr. Unger

14  explained, "I don't believe I said [that ISL's event was going to be in Las Vegas].  We had not

15  signed any deal yet.  *We were strictly investigating at that point.* … [T]here were still a lot of

16  _____

17  [5] *See also id.* at 202:6–19 (█████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████).

20  [6] Plaintiffs' attempts to cast Mr. Neuburger as FINA's "enforcer" and attacks on his credibility
given his roles as an *ex-officio* board member of USAS, the representative for US Aquatic Sports

21  on the FINA Bureau, and a FINA Vice President are unfounded and belied by the evidence.  Mr.
Neuburger was elected by US Aquatic Sports to serve as a voluntary member of the FINA Bureau,

22  and has done so since 2000.  Neuburger Dep. at 13:3–16; 28:3–10.  Mr. Unger never considered
Mr. Neuburger's multiple roles as presenting a conflict, and "always thought [Mr. Neuburger] was

23  looking out for USAS in general to not become a target of GR4"—the FINA rule that contemplated
sanctions for unauthorised relations with unrecognized entities like ISL.  Unger Dep. at 49:19–

24  50:20; *see also id.* at 50:21–51:1.  USAS understood that when Mr. Neuburger spoke about FINA,
"he was giving advice or comments from FINA, but with a U.S. perspective."  *Id.* at 57:23–58:11.

25  [7] The contention that ISL had definitely settled on Las Vegas by this date is belied further by ISL's
own documents, which indicate that throughout the May 2018 timeframe, ISL had been

26  concurrently meeting with British Swimming about potentially hosting the inaugural event in
London.  *See* Ex. 25A (indicating that Mr. Khan of ISL and Jack Buckner of British Swimming

27  would be meeting "to go through the *details of a London bid*" for the inaugural event on May 14,
2018) (emphasis added).  And, on May 29, ISL reached out to British Swimming to set up a

28  meeting between ISL, British Swimming, and Paolo Barelli, the FINA Bureau Member and
President of the Italian federation who was openly in support of ISL.  *See* Ex. 33.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1    details that had to be worked out if—if Las Vegas was going to be the city." Unger Dep. at 14:17–

2    15:13 (emphasis added); *see also id.* at 38:15–18 ("Q. [ISL] was planning on coming [to Las

3    Vegas], no? A. No."). Thus, contrary to Plaintiffs' mischaracterizations, there was no "planned

4    Las Vegas event" that FINA could place "on 'life support.'" Pls. Br. at 11. No contract was ever

5    signed between ISL and USAS for such an event; nor did USAS ever execute any contracts with

6    any U.S.-based venues or the vendors who—if the event were to be held *at a casino* in Las Vegas—

7    would need to *construct the pools*. *See* Unger Dep. at 260:22–261:11. Even as of June 4—just

8    one day before FINA issued the memorandum—Mr. Unger testified that "[USAS] didn't know *at*

9    *this point* that [ISL's inaugural event] was going to be Las Vegas." Unger Dep. at 38:8–9.

10         Plaintiffs' arguments about a "planned" ISL Las Vegas are refuted most directly by ISL's

11   own admissions that it had moved away from considering the United States as a potential location

12   for its inaugural event *well before* the May/June 2018 timeframe. On June 4, after receiving an

13   email from Mr. Unger reiterating that USAS had "stated many times" that it "care[s] about [its]

14   relationship with FINA and want[s] to make sure it approves of this competition/series," ISL CEO

15   Ali Khan circulated Mr. Unger's email internally at ISL, admitting that:

> USA priority is not ISL commercial terms but FINA['s] position. [¶] To be fair to
> Mike [Unger], when I met him in New York, he was pretty clear that FINA support
> was important and relevant and without FINA his support was unlikely. [¶] This
> is why at the time through consultation with [Konstantin Grigorishin, funder of
> ISL], we dropped USA region from Sportcel host-city process.

19   Ex. 37.[8]

20                  3.      FINA Had Indications That ISL Was Considering Various Potential Venues
21                          for Its Inaugural Event When It Circulated the June 5 Memorandum

22         Plaintiffs' contention that FINA had "no knowledge" of any "other planned ISL events as

23   of June 5" is also false. Prior to circulating the June 5 memorandum, FINA had indications of as

24   many as five potential venues for ISL's inaugural event.

25         A key, undisputed fact is that on May 23, 2018, the day after FINA circulated an initial

27   [8] Sportscel was the ██████████████████████████████████████████
     ███████████████████████████" Ex. 46. And Mr. Unger recalled that the New York
28   meeting referred to by Mr. Khan occurred *before* May 2018 (*see* Unger Dep. at 200:2–4), when
     Plaintiffs claim that "ISL was clear that it was coming to Las Vegas," (Pls.' Br. at 7).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

draft of the June 5 memo to its Executive Committee, Paolo Barelli, president of the Italian Federation as well as a member of FINA's Executive Committee, informed FINA that the European continental swimming federation (LEN) ██████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████"[9] Ex. 27. Mr. Barelli's express declaration that LEN would be organizing an ISL meant the event would likely take place in Europe, LEN's territory. *See* Marculescu Dep. at 234:19–235:20.

Two days later, on May 25, 2018, FINA learned that ISL had hosted a meeting in Turkey with representatives from the Ukraine, Australia, Brazil, Russia, England, France, Germany, and USAS. Ex. 30. Plaintiffs emphasize emails indicating that Mr. Marculescu learned that Las Vegas was mentioned at this meeting, leading to conversation between Mr. Marcelescu and Mr. Unger. But they skip over the fact that Mr. Marculescu also learned that other European countries were discussed as potential venues. *See* Marculescu Dep. at 107:24–108:8 ("██████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████.") And again, just two days earlier on May 23 Mr. Barelli had said in writing that LEN, a European entity, would be organizing the event.

Despite all of this, Plaintiffs maintain that "[i]t was the ISL competitive threat of the Las Vegas event that led to the June 5 letter." Pls.' Br. at 11. We understand why Plaintiffs say that— their jurisdictional arguments depend on it. But the evidence directly contradicts that there was any unique, or even important, U.S. focus to this memorandum and the decision to send it. The memorandum was intended to provide information to all 209 of FINA's members regarding the general situation between FINA and ISL. *See* Ex. 39; *see also* Marculescu Dep. at 172–76; Neuburger Dep. at 117–18; 202–03; Unger Dep. at 92:15–25. It was drafted and definitely sent at

---

[9] This is not the first time Mr. Barelli partnered with ISL (or its predecessor ESG) to host an event. In 2017, Italian Swimming received FINA's sanction to host an international event in 2017. ISL's documents also indicate that Mr. Barelli was working in tandem with ISL to recruit member federations to support ISL's inaugural event. *See* Ex. 33.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT FÉDÉRATION INTERNATIONALE DE NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

a time when a European event appeared to be ISL's likely strategy, if only because *the Italian federation and LEN had told FINA they were working on such an event.*  The memorandum simply is not the "U.S.-specific and Las Vegas-specific anticompetitive conduct" (Pls.' Br. at 11) that Plaintiffs need to establish jurisdiction.

### E.    ISL Continued to Explore Potential Venues and Negotiated with FINA after the June 5 Memorandum

Discovery also confirmed that the June 5 memorandum did not have the effect of "boycotting" or "scuttling" ISL's inaugural event.  In fact, ISL continued to have conversations with member federations and negotiations with FINA from June through October 2018.  If there was any lull in ISL's interactions with USAS, it was because mere days after FINA's circulation of the June 5 memorandum, David Rouger (of ISL) informed USAS that "ISL will be the sponsor of the event organized by British Association."  Ex. 42.  Shortly thereafter, the CEO of British Swimming sent Mr. Unger of USAS a draft ISL agreement specifying that British Swimming would host the December 2018 event in London.  *See* Ex. 43.

The only tangible effect of the June 5 memorandum with respect to USAS was to have Mr. Unger reiterate that USAS would not participate absent FINA's approval—so ISL should go get it.  *See* Ex. 45.  Despite this, ISL did not take any steps until July to talk with FINA about its events.  Instead, ISL asked *USA Swimming* to set up an introduction with FINA on ISL's behalf. *See id.*[10]  In response, USAS' CEO Mr. Hinchey expressed disbelief that ISL had not made more headway with FINA, noting in an email to Mr. Unger that ISL's request "ma[de him] question what they've been telling us about FINA."  *Id.*

In July 2018, ISL finally reached back out to FINA to renew discussions about ISL's proposed event series.  Ex. 47.  On August 17, 2018, ISL sent a letter to FINA, announcing that its inaugural event, an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" would take place "▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[10] ISL documents indicated that this was intentional;  rather than reaching out to FINA on their own to resolve their issues, ISL planned to first create "small alliance" with "UK Swim as the organizing body, ISL as the concept owner and commercial partner," and "US+AUS Swimming as participating teams" before going into any meeting with FINA.  Ex. 44.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT FÉDÉRATION INTERNATIONALE DE NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1      ███████████████ .” Ex. 49.  This was the *first instance* when ISL itself informed FINA of

2 a potential location for its inaugural event.  FINA responded on August 24, noting that because

3 ISL would be sponsoring an international swimming competition, under FINA Rule BL 12.3 the

4 European member federation hosting the event needed to apply for FINA's sanction.  *See* Ex. 50.

5      On September 26, 2018, FINA and ISL met in Lausanne, Switzerland.   The parties

6 negotiated and reached an agreement whereby ISL's international club swimming competition

7 series would be sanctioned by FINA and featured on FINA's international calendar.  *See* Ex. 54.

8 The draft MOU also provided that ISL would "███████████████████████████████████

9 ██████████████████████████████  *Id.*  Based on the negotiations at the meeting,

10 FINA believed that an agreement had been reached for ISL to stage its competitions within FINA's

11 framework.  Mr. Neuburger, who attended the meeting, even told Mr. Unger afterward that "████

12 ████████████ ," given that FINA and ISL had just worked out the necessary approvals for

13 USAS to participate in ISL's proposed events.  Ex. 53.

14      **F.**     **After ISL Refused to Finalize an MOU with FINA, the Italian Federation**
**Announced That ISL's Inaugural Event Was Planned for Turin, Italy**

15      Everything fell apart *after* the September 26 meeting.

16      ISL and FINA continued to exchange drafts of the MOU, debating particular terms while

17 hoping to finalize the details of the December 2018 event.  Then on October 14, Mr. Grigorishin

18 (the Ukrainian billionaire backing ISL) suddenly rejected FINA's revisions to the MOU and

19 unilaterally demanded that either ████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████████████

21 ██████████████████████████████ " Ex. 59.  That same day, unbeknownst to

22 FINA, Mr. Grigorishin and Mr. Barelli executed an agreement for the Italian federation to host

23 ISL's inaugural event in Turin, Italy on December 20–21, 2018.  *See* Ex. 60.  Contrary to FINA's

24 rules, the Italian Federation had not sought a sanction from FINA to host ISL's event.  *See* Ex. 50.

25      Days later, on October 17, Mr. Barelli relayed this information to FINA, but claimed the

26 Turin Event was a "███████████████ " that did not require advance notice or approval from

27 FINA.  Ex. 64.  Mr. Barelli's position was specious.  It was not only a blatant attempt to circumvent

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1   FINA's rules, but also a complete reversal from ISL's proposal—maintained ever since it first

2   began negotiating with FINA in 2017—that its events would be *international* swimming

3   competitions.  It was also obviously an international swimming competition; as Mr. Neuburger

4   explained to USAS, "█████████████████████████████████

5   ████████████████████████████████████████

6   ████████████████████████████████████████

7   ████████████████████████ Ex. 63.

8        The Italian federation also sent invitations for the Turin Event to FINA national federations

9   and swimmers that same day, giving the false impression that FINA had approved the event.  *See*

10  Ex. 62; *see also* Ex. 71 (Plaintiff Michael Andrew noting: ██████████████████

11  ██████████████████."); Ex. 69

12  (Mr. Neuburger noting that the Italian federation "███████████████████ Mr.

13  Unger responding: █████).

14       On October 19, ISL's counsel emailed FINA's Swiss counsel, demanding FINA "████

15  ████████████████████████████████████████

16  ████" Ex. 65.  There was no mention of FINA having "blocked the Las Vegas event" (Pls.' Br. 3)

17  or any purported "anti-competitive strategy directed at the United States" (*id.* at 7).  Rather, the

18  email indicated, in relevant part:

19       ████████████████████████████████████

20       ████████████████████████████████████

21       ████████████████ Ex. 65.

22

23  **G.    FINA's Response to the Turin Event and ISL's Cancellation of the Event Gave Rise to This Lawsuit**

24       On October 26, 2018, Mr. Marculescu asked the FINA Bureau to clarify whether, under

25  FINA Rule BL 12.3, competitions like the Turin Event "█████████████████████

26  ███████████ were international competitions requiring FINA's sanction.  Ex. 66. The

27  Bureau confirmed that the Turin Event was an international competition, and on October 30, FINA

28  issued a memorandum expressly addressing that the Italian federation's attempts to cast the Turin

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

Event as a "███████" competition circumvented FINA Rule BL 12.3.  Ex. 68.  Because the Turin

Event was an international competition requiring FINA's advance approval—which the Italian

federation did not obtain—it was neither "███████████████████████████████████████████

███████████████████" and "███████████████████████████████████████████████████."

*Id.*

On October 30, FINA received a formal cease and desist letter from ISL's counsel

demanding that FINA sanction the inaugural event or otherwise face a lawsuit.  *See* Ex. 70.  Again,

ISL's letter did not include a single reference to any "planned" ISL event in the United States, Las

Vegas, or even the June 5 memorandum.  *See id.*  Rather, over 5 pages, the letter meticulously

detailed a theory of an "███████████████████████" that began and ended with FINA's "████

████" over the application of Rule BL 12.3—"███████████████████."  *Id.*

On November 15, 2018, ISL unilaterally cancelled the Turin Event, citing the "████████

███████████████████████████████████████████."  *See* Ex. 74.  On

December 7, 2018, Plaintiffs filed this lawsuit against FINA.  *See* Compl.[11]

## III.   THE DISCOVERY CONFIRMED THAT THIS COURT LACKS PERSONAL JURISDICTION OVER FINA

The evidence uncovered during jurisdictional discovery proved fatal to Plaintiffs' theory

of jurisdiction.  The most important point is that this turned out to be the case Plaintiffs said it was

before everything was recast to address jurisdiction: a dispute between two foreign entities

concerning ISL's overall relationship with FINA, precipitated by FINA's alleged scuttling of the

Turin Event, not from any U.S.-related conduct.

Furthermore, as to the new, U.S.-optimized version of the case, FINA did not direct any

conduct at the United States *as a forum* in a way that can confer specific personal jurisdiction.  At

most, FINA's alleged conduct affected residents of the U.S., not the U.S. itself, and clearly it is

---

[11] Plaintiffs' attempts to establish jurisdiction through allegations and arguments relating FINA's
Champions Swim series fail.  FINA's conduct, including any U.S.-related contacts, relating to its
Champion Swim series events arose *after* the filing of this lawsuit, and therefore cannot serve as
conduct that "*gives rise*" to the lawsuit for the purposes of establishing jurisdiction. *See Shields*,
Dkt. 38 at 15–16; *ISL*, Dkt. 37 at 15–16.  If post-litigation conduct were to be considered, it
establishes that ISL hosted events in the United States in 2019.  *See* Unger Dep. at 178:4–179:12.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1    not the U.S. aspects of this dispute that were the but-for cause of the alleged injuries.

2        **A.    FINA Did Not Purposefully Direct Any Conduct at the United States**

3            To assess whether there is specific jurisdiction over a foreign defendant, the Ninth Circuit

4    applies a three-element test, the first two of which are the plaintiff's burden to establish:  (1) the

5    defendant must "purposefully direct" its activity toward the forum; (2) the plaintiffs' "claim must

6    be one which arises out of or relates to the defendant's forum-related activities," and (3) the

7    exercise of jurisdiction must be reasonable.  *Axiom Foods*, 874 F.3d at 1068.  Establishing that the

8    defendant "purposefully directed" its conduct at the forum requires satisfying what is known as

9    the *Calder* "effects" test, under which the defendant must have (1) committed an intentional act;

10   (2) expressly aimed at the forum; that (3) causes harm that the defendants knows is likely to be

11   suffered in the forum."  *Id.*

12           With respect to "purposeful direction," the relevant inquiry "focuses on the relationship

13   among the defendant, the forum, and the litigation."  *Walden*, 571 U.S. at 284.  The defendant's

14   "suit-related conduct must create a substantial connection with the forum state," *id.*, and the

15   litigation 'must arise out of contacts that the 'defendant *himself*' creates with the forum State, not

16   the defendant's contacts with persons who reside there." *Axiom Foods, Inc.*, 874 F.3d at 1068

17   (quoting *Walden*, 571 U.S. at 284).  Thus, the defendant must have aimed its conduct at a *forum*

18   *itself*, not at forum residents, or third parties with connections to the forum.  *See Walden*, 571 at

19   289; *Axiom Foods*, 874 F.3d at 1069–70.  That can be an elusive distinction, which is why courts

20   use phrases such as "focal point" or "epicenter" to capture the necessary "substantial connection."

21   *See Calder*, 465 U.S. at 789 (holding that personal jurisdiction existed in California when it was

22   the "focal point both of the [libelous] story and of the harm suffered"); *Axiom Foods*, 874 F.3d at

23   1070–71 (quoting *Calder*, 465 U.S. at 789); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

24   797, 807 (9th Cir. 2004) (same); *see also Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty*

25   *Ltd.*, 290 F. Supp. 3d 923, 936 (N.D. Cal. 2017) (finding jurisdiction under *Walden* given that

26   "California may properly be said to be the epicenter of the parties' dispute").[12]  These metaphors

27   —————————————

28   [12] Plaintiffs' suggestion that this "'focal point' authority" is "new" (at Pls.' Br. at 2 n.1) is incorrect. It harkens back to the Supreme Court's foundational decision in *Calder*.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

do not change the inquiry; they are just a helpful way to understand and explain what it means to say that the defendant's contacts with the forum and the plaintiffs' resulting injury are "tethered" in a "meaningful" way.[13]  *Walden*, 571 U.S. at 291.

One thing that is clear is that no "meaningful" connection to the forum exists if the plaintiff would have suffered the same injury notwithstanding the defendant's forum contacts.  *See id.*; *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).  That is why Plaintiffs' effort to "turn up the volume" on the U.S. components of this story are ultimately unavailing.  "Scuttling" the Turin event, not anything directed to the U.S. specifically, was the cause of Plaintiffs' alleged injury.

1.    <u>Absent An Actual "Planned Las Vegas Event," FINA's Conduct Was Not— and Could Not Be—"Expressly Aimed" at the United States</u>

Plaintiffs' theory of jurisdiction centers upon a "planned Las Vegas event" that FINA "scuttled" with its June 5 memorandum.  The Court previously indicated that "FINA's June 2018 letter to its member federations could conceivably establish 'purposeful direction' if the impetus for the letter was to scuttle the Las Vegas event," MTD Order at 11, and therefore that is precisely what Plaintiffs claim.

The evidence, however, confirmed that the June 5 memo was not focused on the U.S. in particular, but was written and issued in an environment where FINA understood that ISL was speaking with numerous FINA national federations, and one—the Italian federation—had stepped forward to say that it ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████."  Ex. 27.  The record shows that London, Singapore, Italy, Australia, and France were also rumored to be in consideration for ISL's December 2018 event.  *See supra* Section II.D.3.  USAS also understood that Las Vegas was not the only potential location for ISL's inaugural event (Unger Dep. at 92:6–95:4; 243:13–244:2), and learned just a few days after the

---

[13] *Walden* clarified that focusing on a defendant's "knowledge" of a plaintiff's "strong forum connections," rather than the defendant's "own contacts" with the forum "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  571 U.S. at 289.  Critically, after *Walden*, individualized targeting—*i.e.*, conduct by a defendant "targeted at a plaintiff whom the defendant knows to be a resident of the forum state"—can no longer "on its own" establish purposeful direction. *Axiom Foods*, 874 F.3d at 1069–70.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT FÉDÉRATION INTERNATIONALE DE NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

June 5 memo that ISL would be partnering with the *British* federation.  *See* Ex. 42.

We also now know that USAS had told ISL repeatedly and *before the June 5 memo* that it would only work with ISL if FINA approved, and that USAS said so to FINA.  It therefore makes no sense to continue entertaining the notion that USAS was the secret, specific target of the memo because FINA thought that USAS might "go rogue."  That is a specious proposition.

The factual premise of the argument that a Las Vegas event was "planned" is also false.  Las Vegas was still very much in the "investigation" stage when FINA drafted and sent its June 5 memorandum.  Mr. Unger so testified, explaining among other things that USAS faced significant logistical obstacles and had serious concerns with building Olympic-sized pools in a Las Vegas casino the week before Christmas.  *See* Unger Dep. at 208:13–210:22.  And no contract with ISL or contracts with any venues were ever signed.  *See id.* at 210:13–15.  We also now know, based on Mr. Khan's June 4 email, that before the June 5 memo was issued ISL had already "dropped USA region from Sportcel host-city process" in light of Mr. Unger's many past statements that USAS required a FINA-ISL deal as a condition to moving forward. Ex. 37.  That alone disproves the notion that there was an existing "Las Vegas event" that FINA could have been targeting when it circulated the memorandum.

This Court's motion to dismiss decision drew a clear distinction between was "the Las Vegas event" and "ISL's broader outreach efforts to FINA's member federations" as "the impetus for the [June 5] letter."  MTD Order at 11.  It is now clear that the memorandum was written and sent to advise all 209 federations of the "████████████████████████████," rather than of any "████████████."  Marculescu Dep. at 177:1–4.  Factually and legally, the June 5 memorandum could not have been "expressly aimed" at the United States.  *See, e.g.*, *Jagen Investments LLC v. Cannon Fin. Inst., Inc.*, No. 2:13-CV-00868 GMN NJK, 2016 WL 11485896, at *6 (D. Nev. June 27, 2016) (the "untargeted nature" of an email "widely distributed across the United States" insufficient to confer specific jurisdiction in Nevada); *Alcabes v. Capella Hotel Grp. LLC*, No. 14-CV-7650 DMG MRWX, 2015 WL 12697714, at *4 (C.D. Cal. July 8, 2015) ("email blasts" failed to constitute express aiming under the *Calder* "effects" test).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

2.      Any Claimed Harm by ISL in the United States Could Not Have Been Caused by FINA's June 5 Memo

Plaintiffs must also establish that FINA's forum-specific contacts are those that caused harm to them in the forum.  *See Axiom Foods*, 874 F.3d at 1068; *Schwarzenegger*, 374 F.3d at 802–03; *see also* MTD Order at 16.  Because (a) there was never an actual "planned" ISL Las Vegas event as of June 5, (b) USAS had already moved on from the "USA region" by June 5, and (c) the acknowledged cause of that was what USAS had *already told* ISL about FINA approval, neither ISL nor any U.S. swimmer can credibly claim that any harm that occurred to them was caused by FINA having sent the June 5 memo to USAS.  Plainly, it was USAS' independent decision, from the outset, that it would neither participate in ISL nor host a U.S.-based event unless ISL had a stamp of approval from FINA that hampered ISL's U.S. efforts.  *See* Exs. 20, 35, 37, 51; *see also* Unger Dep. at 38:20–22; 158:18–159:1; 173:10–17.  Plaintiffs repeatedly tested the theory that FINA's contacts somehow influenced USAS' position, but the evidence and testimony confirmed that USAS, as the NGB for swimming, independently determined that it would not violate FINA's rules (and thus its obligations under the Ted Stevens Act) by partnering with an unauthorised body.

B.      **ISL's Claims Arise Entirely out of FINA's Conduct with Respect to the Turin Event, Not Any U.S.-Related Contacts**

The final and critical shortcoming to Plaintiffs' jurisdictional case confirmed by the evidence is that we know that Plaintiffs' claims and alleged injury arose out of non-U.S. events and conduct, not any of FINA's U.S.-related contacts.  This is the same causation issue just noted.  Plaintiffs must show that their claim is "one which arises out of or relates to [FINA's] forum-related activities."  *Axiom Foods*, 874 F.3d at 1068.  Simply put, FINA's U.S. contacts must be the "but for" cause of ISL's injury.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("We rely on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction."); *see also* MTD Order at 16.  "The principal question of the but-for test is: but-for the defendant's contacts with the forum state, would the claims against the defendant have arisen."  *Gilmore-Webster v. Bayou City Homebuyers Inc.*, No. 18-CV-05702-JSC, 2019 WL 1100492, at *5 (N.D. Cal. Mar. 8, 2019) (citing *Ballard*,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1 | 65 F.3d at 1500).[14]

2 | Plaintiffs' claims and alleged injury stem from the events leading to the cancellation of the

3 | Turin Event, which was the only time that FINA ever took the position that something ISL was

4 | doing was improper and would lead to consequences. Plaintiffs' October 30 cease desist letter and

5 | the Complaint put it well: this entire lawsuit "arise[s] out of" FINA's purported "successful

6 | measures to scuttle the Turin Event." Compl. ¶ 59.

7 | The June 5 memorandum did not stop ISL. ISL continued to plan an event (in London and

8 | then in Turin) and eventually found a federation that was willing to ignore FINA's rules: the

9 | Italian federation. That is what led to the October 2018 breakdown in negotiations between FINA

10 | and ISL, the Italian federation's subsequent announcement of ISL's Turin Event, and finally the

11 | FINA actions that supposedly required the cancellation of that event and gave rise to Plaintiffs'

12 | claims and alleged injury. That conduct, as ISL itself articulated in contemporaneous, unequivocal

13 | letters from Plaintiffs' counsel, had nothing to do with the U.S., but instead was premised entirely

14 | on FINA's response to the attempt by the Italian federation to claim that the Turin Event was a

15 | "national" rather than an "international" competition that did not require a sanction from FINA. It

16 | is this conduct, which as ISL described as an ██████████████████████ " involving a " ████

17 | ██████ " over FINA Rule BL 12.3 " ████████████████████ " that gave rise to Plaintiffs' claims and

18 | this lawsuit. Ex. 70; *see also* Compl. ¶ 133 ("Plaintiffs have been harmed by FINA's unlawful

19 | conduct in that FINA effectively forced the cancellation of the Turin Event.").

20 | That means conduct in or directed at the U.S. specifically was not the but for cause of

21 | Plaintiffs' claims, which is fatal to their ability to establish specific jurisdiction over FINA. *See*

22 | *Schwarzenegger*, 374 F.3d at 802–03; *Gilmore-Webster*, 2019 WL 1100492, at *6.

23 | **IV.   CONCLUSION**

24 | FINA respectfully requests this Court to dismiss Plaintiffs' Complaints with prejudice.

25 |

26 | [14] *See also Rojas v. Hamm*, No. 18-CV-01779-WHO, 2019 WL 3779706, at *8 (N.D. Cal. Aug. 12, 2019) (allegedly tortious contacts with the forum were not the but-for cause of the plaintiffs'

27 | injury because the plaintiffs were not injured from those precise contacts); *City of Oakland v. BP p.l.c.*, No. C 17-06011 WHA, 2018 WL 3609055, at *3 (N.D. Cal. July 27, 2018) (the question is

28 | "whether or not plaintiffs' alleged harm ... would have occurred even absent each defendant's respective [forum]-related activities").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC

1    Dated:  November 21, 2019                Respectfully submitted,

2                                             LATHAM & WATKINS LLP
                                                  Daniel M. Wall
3                                                 Christopher S. Yates
                                                  Aaron T. Chiu
4

5                                             By _____

6                                                 Daniel M. Wall

7                                             Attorneys for Defendant
                                              Fédération Internationale de Natation
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S SUPP. BR. RE : JURISDICTION
CASE NO. 3:18-CV-07393-JSC, CASE NO. 3:18-CV-07394-JSC