Richard J. Frey (SBN 174120)
Carlos Becerra (SBN 273833)
Brock J. Seraphin (SBN 307041)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, CA 90067
Tel: 310.556.8861
rfrey@ebglaw.com
cbecerra@ebglaw.com
bseraphin@ebglaw.com

Attorneys for Nonparty
WASSERMAN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERNATIONAL SWIMMING LEAGUE, LTD. , <br><br> Plaintiff, <br><br> v. <br><br> FEDERATION INTERNATIONALE DE NATATION, <br><br> Defendant. | Case No.: 3:18-CV-07394-JSC <br> Hon. Jacqueline Scott Corley <br><br> **DECLARATION OF CARLOS BECERRA IN SUPPORT OF WASSERMAN'S MOTION TO QUASH INTERNATIONAL SWIMMING LEAGUE, LTD.'S SUBPOENA FOR THE DEPOSITION OF CASEY WASSERMAN** <br><br> Date Filed: 12/07/2018 |

**DECLARATION OF CARLOS BECERRA**

I, Carlos Becerra declare as follows:

1. I am an attorney licensed to practice law in the State of California and am an Attorney in the law firm of Epstein Becker and Green, P.C., attorneys for nonparty Wasserman ("Wasserman") in the foregoing action. I have personal knowledge of the facts stated herein and if called upon to do so, I could and would competently testify thereto.

2. Ryan Murray ("Mr. Murray") is the Senior Vice President & Corporate Counsel for Wasserman. Mr. Murray engaged in extended meet and confer efforts with counsel for International Swimming League, Ltd. ("ISL") in regards to the nonparty discovery ISL seeks from Wasserman in relation to this action. ISL's refusal to confer with Mr. Murray in good faith forced Mr. Murray to retain this firm as outside litigation counsel in relation to the nonparty discovery seeks from Wasserman and its current and former employees, including its founder and chief executive officer, Casey Wasserman ("Mr. Wasserman").

3. Accompanying this declaration as **Exhibits A, B, C, D and E** are true and correct copies of correspondences Mr. Murray exchanged with ISL's counsel – i.e., Hillary Krase ("Ms. Krase") and Neil Goteiner ("Mr. Goteiner") – and attachments to those correspondences. Ms. Krase separately sent the documents in **Exhibits B, C, and E** to our office once our representation of Wasserman commenced.

4. On April 28, 2020, ISL served Wasserman with a subpoena requesting nine categories of documents including, but not limited to, all Wasserman documents from 2017 to the present referring or relating to ISL and/or FINA. Accompanying this declaration as **Exhibit A** is a true and correct copy of the document subpoena ISL served dated April 28, 2020 with a production date of May 28, 2020.

5. On June 19, 2020, Wasserman produced 639 documents in response to ISL's subpoena, which Mr. Murray requested be designated "Confidential" pursuant to the protective order in this action.

6. Accompanying this declaration as **Exhibit B** is a true and correct copy of e-mail correspondences between Mr. Murray and ISL's counsel from June 18, 2020 through July 10,

1  2020. Accompanying this declaration as **Exhibit E** is a true and correct copy of e-mail
2  correspondences between Mr. Murray and ISL's counsel from July 13, 2020 through July 15,
3  2020. The correspondences in **Exhibits B and E** reveal that ISL's counsel misrepresented the
4  urgency of the discovery it seeks from Wasserman. They also demonstrate that ISL's counsel
5  disingenuously represented that it was willing to negotiate regarding the method and scope of
6  discovery ISL seeks from Wasserman while simultaneously insisting on scheduling Mr.
7  Wasserman's apex deposition before ever receiving or reviewing alternative offers of proof
8  proposed by Mr. Murray.

9        7.      For example, on June 26, 2020, Ms. Krase e-mailed Mr. Murray stating that ISL
10  "cannot wait until August" to take the depositions of Mr. Holmes, Mr. Wasserman, and
11  Wasserman's 30(b)(6) representative because: "**We need those depositions to occur in July**.
12  Our schedule is not arbitrary, but is related to our discovery of other parties such as the IOC." Ex.
13  B at 10. She further stated: "if you are saying that you are confident that the depositions would
14  produce no recollections relating to the suggestion of the Maglione/Bach email regarding contacts
15  with Mr. Wasserman or his Wasserman colleagues, to any contacts with any third parties
16  regarding ISL, and to nothing of interest regarding the reasons for the timing and the facts
17  surrounding Wasserman's termination of ISL, **we would consider such a written proffer in**
18  **determining our need for depositions. You could provide a written proffer on these subjects**
19  **and what any testimony on those topics would be. You could also provide a sworn**
20  **declaration of the witnesses for us to consider. You could also make the witnesses available**
21  **for an informal zoom conference call**." *Id.* (emphasis added).

22        8.      On June 30, 2020, Mr. Murray responded to Ms. Krase noting that Mr. Wasserman
23  "does not have a recollection of specifics relating to his decision to inquire to Chris Holmes on
24  November 30, 2018 regarding the status of the relationship with ISL" other than a general
25  recollection regarding his concern that ISL was "overstating its affiliation with Wasserman,"
26  which he anticipated would require him "to regularly explain the actual scope of the association
27  to other individuals within the international sports community." *Id.* at 9. After explaining that
28  Wasserman's decision to end its engagement with ISL was not influenced by any third parties,

3

1  Mr. Murray offered to furnish ISL with a declaration from Mr. Holmes providing a complete
2  narrative of the relationship between Wasserman and ISL. *Id.*

3        9.    Ms. Krase's July 1, 2020 response recanted ISL's prior offer to consider a
4  declaration before seeking depositions of Wasserman employees, asserting that ISL is entitled to
5  cross-examine Wasserman witnesses based on perceived inconsistencies between Mr. Murray's
6  representation of the facts and ISL's interpretation of Wasserman's document production.
7  Without receiving or reviewing a declaration from Mr. Holmes, Ms. Krase asserted that Mr.
8  Holmes' declaration will not satisfy ISL's discovery requests because he "has neither the personal
9  knowledge nor basis to speak, or declare, to Mr. Wasserman's knowledge and intent in
10 terminating the Wasserman/ISL relationship." *Id.* at 7. Despite apparently indicating that ISL was
11 entitled to cross-examine Wasserman witnesses, Ms. Krase stated Mr. Wasserman, not Mr.
12 Holmes, should submit a declaration if he "has no knowledge as to why he terminated the
13 relationship." *Id.* at 8. She asserted, "I can provide a lot more detail as to why your narrative is
14 not consistent with our read of Wasserman's documents and our other sources. But I don't see the
15 benefit of so doing since you know all the facts." *Id.* She concluded her e-mail by "assuming" Mr.
16 Holmes had availability to be deposed in July, and suggesting that ISL is available "24/7" to take
17 Mr. Wasserman's remote deposition. *See id.*

18       10.    Mr. Murray's July 1, 2020 response explained that Mr. Holmes was the person
19 responsible for wrapping up the relationship between Wasserman and ISL. *Id.* at 6. Mr. Murray
20 also rejected ISL's offer to take Mr. Wasserman's apex deposition "24/7," explaining that ISL's
21 request was premature because ISL had not exhausted less intrusive means of discovery. *Id.* He
22 further noted that forcing Mr. Wasserman's deposition on an expedited basis without first
23 exhausting less intrusive means "would result in multiple days of disruption of [Mr. Wasserman's]
24 and others' schedules." *Id.*

25       11.    On July 1, 2020, Ms. Krase repeated her request for Mr. Holmes' availability for
26 a deposition in July and further offered to limit Mr. Wasserman's deposition to four hours if
27 Wasserman stipulated to limiting its objections during the deposition. *Id.*

28

4

Firm:51123592v3                                                               DECLARATION OF CARLOS BECERRA
                                                                                         3:18-CV-07394-JSC

1  12. On July 2, 2020, Mr. Murray reiterated his proposal that ISL accept and review
2 Mr. Holmes' declaration before insisting on any further discovery. However, he offered to make
3 Mr. Holmes available on July 24 or 31, 2020 should such deposition be necessary. Mr. Murray
4 suggested that ISL's request for Mr. Wasserman's deposition could be revisited after ISL had the
5 opportunity to review Mr. Holmes' declaration, and if necessary, proceed with his deposition. *Id.*
6 at 5.

7  13. Ms. Krase's July 2, 2020 response stated, "[g]iven the number of busy players, it's
8 critical to set dates for depositions." She agreed to proceed with Mr. Holmes' deposition on July
9 24, 2020, but asserted, without supporting evidence or explanation, that "we have strong reason
10 to believe [Mr. Wasserman] has relevant facts and memory." Ms. Krase represented that ISL
11 would cancel Mr. Wasserman's deposition if Mr. Holmes' deposition satisfied ISL's discovery
12 needs. However, she insisted that Mr. Wasserman's be scheduled "as soon as possible after [Mr.
13 Holmes'] given our deadlines and **belief** that [Mr. Wasserman's] deposition **will probably be**
14 **necessary**." *Id.* at 5. Ms. Krase also inquired whether Mr. Murray consulted with FINA's counsel
15 to confirm whether they would accept a declaration from Mr. Holmes in lieu of a deposition. *Id.*

16  14. On July 2, 2020, Mr. Murray responded by noting that FINA's counsel had
17 informed him the discovery cut off deadline in this action is in November. In light of this new
18 information, Mr. Murray inquired why ISL's misrepresented that it needed to take Mr. Holmes
19 and Mr. Wasserman's depositions in July. He further stated: "Given the apparent abundant
20 available time to still determine the necessity of any depositions, I will endeavor to provide a
21 declaration to you and FINA counsel for Holmes next week. If after reviewing the declaration
22 from Holmes, you believe you have remaining questions that are not answered, we can discuss
23 additional proffers that can be made, whether in the form of deposition or other live questioning
24 of Holmes, or in the form of a separate declaration from Casey." *Id.* at 4. Thus, he reiterated that
25 the parties had sufficient time to resolve any outstanding discovery concerns after ISL's receipt
26 and review of Mr. Holmes' declaration. *Id.*

27  15. On July 3, 2020, Ms. Krase denied representing "that discovery concluded in July,"
28 asserting that her insistence on expediting the depositions pertained to "deadlines and sequences

5

that require [ISL] to proceed in July, including whether to name additional parties." *Id.* at 3. Ms. Krase rejected Mr. Murray's proposal to wait to review Mr. Holmes' declaration before securing his deposition date, noting ISL would subpoena Mr. Holmes to appear on July 24, 2020 (a date Mr. Murray initially proposed before learning of the discovery cutoff deadline in this matter and ISL's misrepresentations regarding the urgency of its discovery requests). *Id.* Ms. Krase also repeated her demand that Wasserman furnish deposition dates for Mr. Wasserman. *Id.* at 3-4.

16. On July 8, 2020, Ms. Krase indicated that she would send a deposition subpoena for Mr. Holmes in his individual capacity and for his 30(b)(6) deposition, and attached a list of topics for the Wasserman 30(b)(6) deposition. *Id.* at 3. Later that day, she sent a second email asserting, "If we don't hear back by tomorrow at 10 a.m. confirming that you will accept service on behalf of Chris Holmes, we will be constrained to serve Chris at his home." *Id.* at 3. Accompanying this declaration as **Exhibit C** is a true and correct copy of the Rule 30(b)(6) deposition topics Ms. Krase e-mailed to Mr. Holmes, and subsequently e-mailed to our office.

17. Mr. Murray responded on July 8, 2020, agreeing to "accept service of any subpoenas for Holmes or to Wasserman," but noting that Wasserman would move to quash any subpoena ISL served before reviewing Mr. Holmes' forthcoming declaration in light of ISL's misrepresentations regarding the urgency of the requested discovery. *Id.* at 2. He also noted that Mr. Holmes was no longer available for deposition on July 24, 2020.

18. Ms. Krase's July 9, 2020 response purportedly agreed to reschedule Mr. Holmes' deposition for early August, but conditioned that agreement on Wasserman furnishing deposition dates for Mr. Wasserman. *Id.* at 1.

19. On July 10, 2020, Mr. Murray responded by stating that Mr. Holmes' declaration was forthcoming. He further agreed to present Mr. Holmes for deposition on August 21 or 28, 2020, subject to ISL's agreement to limit that deposition length to four hours. *Id.* at 1. Mr. Murray reiterated that Mr. Wasserman does not have any recollection of facts relevant to ISL's case, but suggested that Mr. Wasserman could respond to written discovery or submit an affidavit if Mr. Holmes' declaration and/or deposition did not satisfy ISL's discovery requests. *Id.* Later that evening, Mr. Murray e-mailed Mr. Holmes' declaration to ISL and FINA. Accompanying this

declaration as **Exhibit D** is a true and correct copy of Mr. Holmes' declaration and the accompanying Exhibits 1-26 (included as supplemental attachments to **Exhibit D**).

20. On July 13, 2020, Ms. Krase e-mailed Mr. Murray, stating: "Mr. Holmes' declaration confirms that we will be deposing at least Casey Wasserman, **after which** we will probably be deposing Mr. Holmes." Ex. E at 3-4 (emphasis added). The e-mail withdrew prior offers by ISL to consider a declaration or interrogatory responses from Mr. Wasserman, and attached a subpoena to depose Mr. Wasserman on July 29, 2020. *Id.* Ms. Krase argued that ISL's change of position was warranted because, according to her: (1) Mr. Holmes' assertion that Mr. Wasserman was not directly involved in Wasserman's relationship with ISL was contradicted by documents produced by Wasserman; (2) Mr. Holmes' declaration failed to "address communications that Mr. Wasserman had with others," including communication Mr. Wasserman may have had about ISL with Mr. Bach, USOPC representatives, FINA representatives, and others; and (3) "Mr. Holmes' declaration intentionally avoided addressing core 30(b)(6) topic." Ms. Krase then raised eight speculative arguments in support of ISL's asserted need for Mr. Wasserman's deposition and characterized Mr. Holmes' declaration as gratuitously criticizing Wasserman's former client, ISL. *Id.* Since that time, ISL has not sought to confirm the veracity of Mr. Holmes' declaration or the extent of his knowledge by taking his deposition.

21. On July 15, 2020, Mr. Murray advised ISL's counsel that Wasserman would be engaging outside litigation counsel in light of ISL's refusal to consider his repeated proposals to conduct sequenced discovery through less intrusive means. *Id.* at 2-3. Later that day, Ms. Krase and Mr. Murray exchanged additional e-mails debating ISL's interpretation of the facts and its stated need for Mr. Wasserman's deposition. *Id.* at 1-2.

22. On July 24, 2020, I sent a letter to ISL's counsel requesting that ISL take Mr. Wasserman's July 29, 2020 off calendar so that lead counsel for the parties could meet and confer regarding Wasserman's outstanding objections to the deposition of Mr. Wasserman, including Wasserman's objection regarding ISL's refusal to pursue discovery in accordance with the law

1  governing nonparty apex depositions (as Mr. Murray repeatedly suggested).[1] Accompanying this
2  declaration as **Exhibit F** is a true and correct copy of the e-mail I sent to ISL's counsel on July
3  24, 2020, and the meet and confer letter attached thereto, dated July 23, 2020. The attached letter
4  stated in no uncertain terms, "At the outset, we note that Mr. Wasserman and our office are not
5  available to participate in a deposition on the date unilaterally scheduled by your office."

6       23.    On the afternoon of July 24, 2020, I participated in a video conference with Ms.
7  Krase, Mr. Goteiner, and my colleagues, Mr. Frey and Mr. Seraphin, to meet and confer regarding
8  ISL's pending subpoena seeking Mr. Wasserman's deposition. During the call, ISL's counsel
9  agreed to take Mr. Wasserman's deposition off calendar and to send evidence supporting ISL's
10  purported needs to depose Mr. Wasserman without adhering to the apex rules. At that time and
11  based on our discussions, I understood that ISL's counsel intended to meet and confer with our
12  office in good faith in order to find a mutually agreeable resolution to ISL's discovery requests in
13  accordance with the applicable law and relevant facts.

14       24.    Following our video conference, Ms. Krase sent two e-mails, attaching: (1) the
15  joint letter brief regarding a discovery dispute between ISL and FINA (Dkt. 122-3); (2) a
16  December 3, 2018 e-mail exchange between Thomas Bach and Julio Maglione mentioning Mr.
17  Wasserman (Dkt. 125-7); (3) Ms. Krase's prior correspondences with Mr. Murray (Exs. B and E);
18  (4) a July 2018 e-mail exchange between ISL and Mr. Holmes bates numbered ISL03301-
19  ISL03303; (5) the 30(b)(6) topics ISL proposed to Wasserman; and (6) ISL's Administrative
20  Motion to file documents under seal and accompanying exhibits (Dkt. 132).

21       25.    After reviewing the documents furnished by ISL's counsel and considering their
22  stated position, my colleagues and I did not find the facts furnished by ISL's counsel sufficiently
23  compelling to warrant ISL's insistence on taking Mr. Wasserman's deposition in contravention
24  of the rules applicable to nonparty apex deponents. Accordingly, on July 28, 2020, I sent a letter
25  to ISL's counsel explaining the factual and legal basis for Wasserman's request that ISL proceed
26
27
28  ---
[1] To ensure the litigation counsel had adequate time to meet and confer with ISL regarding Wasserman's outstanding objections to the subpoena of Mr. Wasserman, Wasserman's July 23, 2020 also raised procedural deficiencies in ISL's subpoena, including ISL's failure to pay witness fees at the time of service. However, our office agreed to waive the witness fee requirement in any subsequent subpoena seeking Mr. Wasserman's deposition.

1  with discovery in accordance with the rules applicable nonparty apex depositions. My letter also
2  proposed dates for Mr. Wasserman's deposition that would allow the parties sufficient time to
3  engage in additional meet and confer efforts. Specifically, it proposed: "To allow the parties
4  sufficient time to confer in good faith regarding alternative means by which Wasserman can
5  satisfy ISL's discovery requests and obviate the need for Mr. Wasserman's deposition, we
6  propose that ISL tentatively schedule Mr. Wasserman's deposition on one of the following dates:
7  September 29, 2020, 2pm-4pm; October 5, 2020, 8:30am-10:30am or October 12."
8  Accompanying this declaration as **Exhibit G** is a true and correct copy of the July 28, 2020 letter
9  I sent to ISL's counsel.

10      26.  As of the date of this filing, Mr. Wasserman has kept his schedule open to appear
11  for a deposition on the above-referenced dates, if such depositions proves necessary or is ordered
12  by this Court.

13      27.  On July 29, 2020, Ms. Krase served my office with a subpoena that unilaterally
14  noticed the deposition of Mr. Wasserman for August 14, 2020. Accompanying this declaration as
15  **Exhibit H** is a true and correct copy of the subpoena Ms. Krase served on July 29, 2020.

16      28.  Later in the afternoon of July 29, 2020, Ms. Krase e-mailed me a letter from Mr.
17  Goteiner responding to the factual and legal positions set forth in my July 28, 2020 letter.
18  Accompanying this declaration as **Exhibit I** is a true and correct copy of Mr. Goteiner's meet and
19  confer letter dated July 29, 2020.

20      29.  On August 4, 2020, I sent a letter responding to Mr. Goteiner's letter dated July
21  29, 2020, which sought to confirm the scope of the deposition ISL sought from Mr. Wasserman
22  based on the assertions in Mr. Goteiner's July 29, 2020 letter. Specifically, Mr. Becerra inquired
23  whether the scope of such deposition was limited to: "(1) Communications Mr. Wasserman
24  potentially had with the IOC and/or FINA about ISL and which no other Wasserman employee
25  has personal knowledge from November, 2018 to December, 2018; and, (2) Whether Mr.
26  Wasserman's intent surrounding any direction he may have given concerning Wasserman's
27  relationship with ISL between the end of November 2018 and December 2018 resulted from
28  and/or was directed by any conversation with IOC and/or FINA." Ex. J. That letter further

1  suggested that if the parties agreed regarding the proposed scope of the discovery ISL sought from
2  Mr. Wasserman, the only outstanding issue to resolve pertained to ISL's exhaustion of less
3  intrusive means of discovery. Accompanying this declaration as **Exhibit J** is a true and correct
4  copy of the meet and confer letter I sent to ISL's counsel, dated August 4, 2020.

5        30.    On August 5, 2020, Ms. Krase responded to my August 4, 2020 letter. In her
6  response, she rejected my attempt to characterize of the scope of discovery ISL seeks from Mr.
7  Wasserman and argued that the apex doctrine does not apply in this context. *See* Ex. K.
8  Accompanying this declaration as **Exhibit K** is a true and correct copy of Ms. Krase's e-mail
9  response, dated August 5, 2020.

10       31.    After receiving Ms. Krase's August 5, 2020 e-mail, I participated in a video
11 conference with Mr. Goteiner, Ms. Krase, and my colleague, Mr. Seraphin, which lasted more
12 than ninety minutes. During the call, ISL's counsel refused to provide any additional clarity
13 regarding the scope of the discovery it seeks from Mr. Wasserman, asserting that Wasserman is
14 not entitled to a "road map" of ISL's discovery. *Id.* Based on the tone taken by ISL's counsel
15 during the call and their refusal to agree to any meaningful limitations in length or scope of the
16 deposition it sought from Mr. Wasserman, I began to have serious doubts regarding whether ISL
17 and Wasserman would be able to reach an amicable resolution to this discovery dispute without
18 the need for judicial intervention. Nevertheless, I made one final effort to clarify Wasserman's
19 position and attempt to find common ground by preparing a summary of our video conference.

20       32.    On August 7, 2020, I sent a letter to ISL's counsel summarizing the topics we
21 discussed on August 5, 2020, as well as my understanding of our respective factual and legal
22 positions. In the letter, I invited ISL to clarify any misstatements or misconceptions I may have
23 had with respect to ISL's contentions and positions. However, I indicated that Wasserman would
24 be forced to move to quash the deposition subpoena and seek a protective order if ISL's counsel
25 refused to further clarify the scope and length of the nonparty apex deposition it sought from Mr.
26 Wasserman. Accompanying this declaration as **Exhibit L** is a true and correct copy of the August
27 7, 2020 letter I sent to ISL's counsel summarizing our video conference.

28

1       33.     On August 7, 2020, Mr. Goteiner responded to my letter by e-mail stating, "So it
2   does seem that Wasserman is proceeding to file a motion to quash. **We'll proceed accordingly**.
3   And so we'll let [Mr. Becerra's] mischaracterizations and misinterpretations pass for now." Ex.
4   M (emphasis added). Mr. Goteiner's response did not explain how my August 7, 2020 summary
5   of our video conference contained "mischaracterizations and misinterpretations" regarding ISL's
6   positions. Accompanying this declaration as **Exhibit M** is a true and correct copy of the August
7   7, 2020 e-mail Mr. Goteiner sent in response to my letter on the same date.

8       34.     Accompanying this declaration as **Exhibit N** is a true and correct copy of the
9   document bates numbered ISL003301-ISL003303, which Ms. Krase sent to my office on July 24,
10  2020.

11      35.     Accompanying this declaration as **Exhibit O** is a true and correct copy of the e-
12  mail exchange between Thomas Bach and Julio Maglione, produced in this litigation and filed at
13  Dkt. 125-7.

14      36.     Accompanying this declaration as **Exhibit P** is a true and correct copy of e-mail
15  correspondences between my office and ISL's counsel dated August 4, 2020 through august 20,
16  2020.

17      I declare under penalty of perjury under the laws of the State of California that the
18  foregoing is true and correct.

19      Executed this 13th day of August 2020, in Los Angeles, California.

21                                              */s/Carlos Becerra*
                                                Carlos Becerra