Neil A. Goteiner (State Bar No. 083524)
ngoteiner@fbm.com
C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
Joshua W. Malone (State Bar No. 301836)
jmalone@fbm.com
Hilary Krase (State Bar No. 318762)
hkrase@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiff International Swimming
League, Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNATIONAL SWIMMING LEAGUE, LTD., | Case No. 3:18-CV-7394-JSC |
| Plaintiff, | **PLAINTIFF INTERNATIONAL SWIMMING LEAGUE, LTD.'S OPPOSITION TO NONPARTY WASSERMAN'S MOTION TO QUASH THE DEPOSITION SUBPOENA OF CASEY WASSERMAN, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER** |
| vs. | |
| FEDERATION INTERNATIONALE DE NATATION, | |
| Defendant. | |
| | The Hon. Jacqueline Scott Corley |
| | **Date:** October 1, 2020<br>**Time:** 9:00 a.m.<br>**Location:** Video Conference |
| | REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

36144\13569054.6

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND ............................................................2

        A.      FAC Wasserman Allegations, Documents, And FINA's Denial and
                Defenses, All Make the Casey Wasserman Deposition Highly Relevant. .................2

        B.      Wasserman's Counsel and the Holmes' Declaration Confirmed that Only
                Casey Wasserman Is Capable of Testifying on His External
                Communications About ISL and Why He Directly Terminated ISL. ......................4

        C.      Wasserman's Bad Faith Assertion is Demonstrably False.........................................6

III.    ADDITIONAL FACTUAL BACKGROUND .....................................................................7

        A.      Mr. Wasserman's ISL Conflict is Discoverable........................................................7

        B.      FINA Intended to Pressure Casey Wasserman to Terminate the
                Wasserman/ISL Relationship. ...................................................................................9

        C.      Mr. Wasserman Ignores the Evidence of his External Communications – the
                Main Focus of His Deposition – But Instead Asserts Pretextual
                Justifications for Why He Terminated the Wasserman/ISL Contract. .....................11

IV.     LEGAL STANDARD FOR THIRD PARTY AVOIDING DISCOVERY .........................12

V.      LEGAL ARGUMENT ......................................................................................................13

        A.      Mr. Wasserman's Non-Party Status Does Not Help Him Under Apex. ..................14

        B.      The Apex Doctrine Does Not Apply Here to Mr. Wasserman. ...............................15

        C.      Assuming Arguendo That The Apex Doctrine Applies, It Does Not Prevent
                Mr. Wasserman's Deposition. .................................................................................16

                1.      Mr. Wasserman Has Unique Knowledge Relevant to ISL's Claims
                        in the Underlying Action. ............................................................................16

                2.      Exhaustion of Additional Discovery Methods Is Not Required and
                        Will Be Fruitless, as Wasserman and Holmes Have Admitted. ...................21

        D.      Mr. Wasserman Protective Order Suggestion is Without Merit. .............................24

VI.     CONCLUSION .................................................................................................................25

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH          i
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

36144\13569054.6

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Affinity Labs of Texas v. Apple, Inc.*,
No. C 09-4436 CW JL, 2011 WL 1753982 (N.D. Cal. May 9, 2011) ..............................15, 24

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
282 F.R.D. 259 (N.D. Cal. 2012) ....................................................................................12, 13

*Arminak v. Arminak & Associates, LLC*,
No. CV 16-3382 JAK (SSX), 2017 WL 10402987 (C.D. Cal. Mar. 30, 2017) .......12, 13, 15, 22

*Dart Indus. Co., v. Westwood Chem. Co., Inc.*,
649 F.2d 646 (9th Cir. 1980) ..................................................................................................15

*DR Sys., Inc. v. Eastman Kodak Co.*,
No. 08CV669-H (BLM), 2009 WL 2973008 (S.D. Cal. Sept. 14, 2009) ...............................16

*Empire Lumber Co. v. Indiana Lumbermens Mut. Co.*,
No. 3:10-CV-00533-REB, 2012 WL 6203722 (D. Idaho Dec. 12, 2012) ..........................18, 23

*Everlight Elecs. Co. v. Nichia Corp.*,
No. C 13-80251 WHA, 2013 WL 6252530 (N.D. Cal. Dec. 3, 2013)......................................15

*Finisar Corp. v. Nistica, Inc.*,
No. 13-CV-03345-BLF(JSC), 2015 WL 3988132 (N.D. Cal. June 30, 2015) .............12, 17, 18

*First National Mortgage Co. v. Federal Realty Investment Trust*,
2007 WL 4170548 (N.D.Cal.2007)....................................................................................16, 17

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
No. C 03-5340 JF (RS), 2006 WL 2578277 (N.D. Cal. Sept. 6, 2006),
*objections overruled*, No. C 03-5340-JF (RS), 2006 WL 3050866 (N.D. Cal.
Oct. 23, 2006)...................................................................................................................21, 22

*In re Google Litigation*,
No. C 08-03172 RMW PSG, 2011 WL 4985279 (N.D. Cal. Oct 19, 2011).................20, 21, 22

*Grateful Dead Prods. v. Sagan*,
No. C 06-7727 (JW) PVT, 2007 WL 2155693 (N.D. Cal. July 26, 2007)....................16, 20, 24

*Hardin v. Wal-Mart Stores, Inc.*,
No. 08-CV-0617 AWI BAM, 2011 WL 6758857 (E.D. Cal. Dec. 22, 2011) ..........................15

*Haworth, Inc. v. Herman Miller, Inc.*,
998 F.2d 975 (Fed. Cir. 1993) ................................................................................................15

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

*Hunt v. Cont'l Cas. Co.*,
    No. 13-CV-05966-HSG, 2015 WL 1518067 (N.D. Cal. Apr. 3, 2015) ....................................21

*Karr v. Napolitano*,
    No. C 11-02207 LB, 2012 WL 2196343 (N.D. Cal. June 14, 2012) .........................................13

*Minter v. Wells Fargo Bank, N.A.*,
    258 F.R.D. 118 (D. Md. 2009) ...............................................................................................13

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ...........................................................................................15

*Neravetla v. Virginia Mason Med. Ctr.*,
    705 F. Appx. 520 (9th Cir. 2017) ...........................................................................................14

*Neravetla v. Virginia Mason Med. Ctr.*,
    No. 13-1501-JCC, 2015 WL 13673809 (W.D. Wash. Jan. 6, 2015) ........................................15

*Novoa v. Geo Group, Inc.*,
    No. 5:17-cv-02514-JGB, 2020 WL 2501382 (C.D. Cal. Jan. 2, 2020)....................................20

*Opperman v. Path, Inc.*,
    No. 13-CV-00453-JST, 2015 WL 5852962 (N.D. Cal. Oct. 8, 2015) (Tigar, J) ...........16, 22, 23

*Ray v. BlueHippo Funding, LLC*,
    No. C-06-1807 JSW (EMC), 2008 WL 4830747 (N.D. Cal. Nov. 6, 2008)............................23

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
    No. C-07-05634 CRB (DMR), 2014 WL 939287 (N.D. Cal. Mar. 6, 2014) ...............13, 21, 22

*WebSideStory, Inc. v. NetRatings, Inc.*,
    No. 06CV408 WQH(AJB), 2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) ....................13, 18, 22

## FEDERAL RULES AND REGULATIONS

Local Rule 30-1 .........................................................................................................................6

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

iii

36144\13569054.6

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

This Court is aware from recent discovery motions of the case significance of FINA's late 2018 attempts to use the International Olympic Committee ("IOC") President and the United States Olympic and Paralympic Committee ("USOPC") to pressure Casey Wasserman, the LA 2028 Olympics Chairman, to terminate his firm's consulting relationship with ISL. The presidents of FINA and the IOC had been discussing how ISL threatened the FINA/IOC amateur model as background to FINA's request that the IOC president pressure Mr. Wasserman. Mr. Wasserman moves to quash ISL's subpoena on this and related topics. He makes three arguments. The first is that notwithstanding the timing of the FINA-IOC-USOPC emails and then Mr. Wasserman's hands-on termination of ISL's contract, and ISL's FAC's allegation that FINA pressured Mr. Wasserman to terminate his ISL relationship, Mr. Wasserman asserts that ISL's theory is speculative and unsubstantiated. Wasserman's first argument collapses because it denies facts.

Mr. Wasserman's second argument is that his deposition is disproportionate to ISL's case. This argument is similarly meritless. FINA's hidden deployment of the IOC and the USOPC to harm ISL and the swimmers demonstrates both FINA's intent to monopolize and to tortuously interfere with Plaintiffs' economic relations, as alleged in the FAC. FINA's purposeful conduct directed toward Wasserman in California also by itself establishes U.S. jurisdiction, which FINA still opposes as a defense. Further, the hidden nature of FINA's Wasserman caper also demonstrates why there is no reason to believe FINA's core narrative that its antitrust conduct ended with its public termination of the boycott in January 2019.

Mr. Wasserman grounds his third argument in the apex doctrine. This apex argument also fails for several reasons. **First**, the apex doctrine does not apply because the above solid case reasons for his deposition preclude Wasserman's harassment only snipe. **Second**, Mr. Wasserman undisputedly possesses unique, first-hand knowledge of the allegations and facts. **Third**, ISL does not seek his testimony on issues for which other, lower level company personnel can adequately testify. Rather, ISL seeks Mr. Wasserman's testimony about ISL-related communications that he personally had with leading sports stakeholders who influenced his decision to terminate ISL.

**Fourth**, Wasserman's argument that other "less intrusive" discovery will suffice is

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

1

36144\13569054.6

1   disingenuous at best.  ISL has already collected documents from Wasserman and others, and have

2   reviewed the declaration of former Wasserman employee Chris Holmes that Wasserman supplied.

3   That information only underlined the need for Mr. Wasserman's testimony.  Holmes confirmed

4   that Mr. Wasserman directly terminated ISL, and that Holmes did not have critical case

5   information which ISL seeks from Mr. Wasserman.  Only Mr. Wasserman can trace his conduct

6   from his communications about ISL to his direct termination of ISL.  Thus, Wasserman's fourth,

7   and longest, argument about first deposing other Wasserman employees reduces to a strawman.

8       Mr. Wasserman's remaining arguments similarly fail.  Mr. Wasserman cannot hide behind

9   his unverified schedule[1], which ISL has unsuccessfully tried to accommodate on multiple

10  occasions[2].  Mr. Wasserman also improperly attempts to force ISL to provide a script to the

11  deposition.  ISL has provided specific deposition topics.  That's enough.  In any event, ISL cannot

12  provide detailed, written questions *before* ISL determines what Mr. Wasserman knows or recalls.

13  ## II.   PROCEDURAL AND FACTUAL BACKGROUND

14      **A.   FAC Wasserman Allegations, Documents, And FINA's Denial and Defenses,**
       **All Make the Casey Wasserman Deposition Highly Relevant.**

15

16      In December 2019 after limited jurisdictional discovery, the Court denied FINA's motion

17  to dismiss.  *ISL,* Dkt. 86.  ISL and the Swimmer Class filed amended complaints in January 2020

18  summarizing such jurisdictional discovery and how it related to the merits and to FINA's intent

19

20  [1] Mr. Wasserman does not submit a declaration attesting to his busy schedule.  Mr. Murray (Senior
    Vice President and Counsel for Wasserman) details Mr. Wasserman's commitments, although he
21  notably fails to explain or attest to Mr. Wasserman's unavailability.  *See generally*, Murray Decl.
    (Dkt. 159-5).
22
    [2] ISL has offered to depose Mr. Wasserman on the weekend, at night, and in installments.  Ex. U
23  to Krase Decl. (Krase email to Murray dated June 26, 2020 at p. 9); Ex. Z (Krase email to
    Seraphin dated August 12, 2020).  ISL has also tried to accommodate Mr. Wasserman's schedule
24  by offering to change the date of the first noticed deposition on July 29 and then again of the
    August 14 subpoena to another time, within reason.  Ex. V (Goteiner July 29, 2020 letter at p. 1).
25  However, Mr. Wasserman's counsel only offers dates at the end of September and in October, less
    than a month prior to the discovery cut-off.  It is imperative for ISL to depose Mr. Wasserman
26  before then to identify whether additional depositions of non-Wasserman individuals or entities
    need to be taken or additional discovery of non-Wasserman individuals or entities need to be
27  pursued.  Ex. U (Krase email to Murray dated June 26, 2020) (also included as Ex. B to Becerra
    Decl.).
28

PLAINTIFF'S OPP. TO MOTION TO QUASH     2     36144\13569054.6
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

and scheme to monopolize.  *ISL,* Dkt. 100 ("ISL FAC"), *Swimmer Class*, Dkt. 83.  The FACs

alleged relevant to this Motion that upon information and belief  FINA either directly, or through

the IOC, directed Wasserman to terminate its relationship with IOC to further FINA's monopoly

and monopsony over the swimmers and to interfere with ISL's business relationships.  ISL FAC,

¶ 24.  FINA denied that allegation for lack of knowledge or information.  *ISL*, Dkt. 104 ("FINA

Answer"), ¶ 24).  Merits discovery produced documents contradicting FINA's denial and showing

that FINA was aware of its efforts through the USOPC (via FINA Executive Director Marculescu)

and through President Bach of the IOC (via FINA President Maglione) to convince Casey

Wasserman to terminate Wasserman's  relationship with ISL.  Ex. A to Krase Decl.[3] (FINA

00000729-30); Ex. B (USOC-0000056-57); Ex. C (FINA 00005695-96).  Casey Wasserman, the

founder and head of the Wasserman firm, is also the Chairman of the LA 2028 Olympic Games.

As Wasserman swears through its in house counsel, Casey Wasserman is privy to confidential

communications with sports leaders, such as the conversations which the emails indicate took

place between Mr. Wasserman and the USOPC and IOC.  *See* Murray Decl. (Dkt. 159-5), ¶¶ 8-9.

 The Court is aware of these IOC/FINA and USOPC/FINA emails from recent discovery

motions, both ruled on (*ISL* Dkt. 125-3 ) and still under submission (*ISL* Dkt. 155-3).   These

FINA emails seeking to influence Wasserman to terminate its ISL contract by themselves

demonstrate FINA's purposeful illegal conduct directed at California and this Court's jurisdiction

over FINA.  But FINA is still disputing jurisdiction, so that Casey Wasserman's testimony on

these FINA efforts is highly relevant to this case for that reason alone.

 These emails also demonstrate how FINA conducted its hidden efforts to hobble or destroy

ISL by using FINA's contacts with sports leaders.  FINA, however, claims that when it ended its

public threats and boycott in January 2019, FINA did not further inhibit, interfere with or block

ISL from staging any competitions.  This is a core FINA defense pervading its pleadings[4] and

discovery opposition.   FINA more recently used this argument in its oppositions to ISL's

---

[3] Unless otherwise noted, all exhibits are to the Krase Declaration submitted herewith.

[4] *E.g., ISL* Dkt. 28; *ISL* Dkt. 104 at p. 26-27 (FINA's Answer to ISL's FAC) ("ISL's claims . . .
are moot. . . ."); *ISL* Dkt. 122-3.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

3

36144\13569054.6

1  discovery motions, particularly in FINA's opposition to produce financial documents.  *ISL* Dkt.

2  132-3.  And thus Casey Wasserman's testimony is highly relevant to show a FINA pattern of

3  conduct and how FINA attempted to harm ISL and the swimmer class with FINA's less public

4  tactics, irrespective of time period.

5     These emails and Casey Wasserman's testimony are also relevant to FINA's intent to

6  monopolize swimming competition, to conspire with others such as the IOC and the USOPC, and

7  to engage aiders and abettors in FINA's scheme, as well as to interfere with ISL's business; the

8  parties have also addressed elsewhere the relevance of FINA's intent and scheme regarding the

9  Ring of Fire documents which the Court ordered to produce.  *ISL* Dkt. 135 (Joint Letter Brief); *ISL*

10  Dkt. 151, 163 (Court Order and Minute Entry Amending Order).

11     Thus, what Casey Wasserman heard and discussed about ISL from his confidential and

12  high power sources, including the USOPC and the IOC, as well as FINA, is highly relevant to this

13  case and directly proportional to Plaintiffs proving their case and defeating FINA's affirmative

14  defenses and false denial of FINA's anticompetitive conduct aimed at the U.S.

15     **B.  Wasserman's Counsel and the Holmes' Declaration Confirmed that Only
        Casey Wasserman Is Capable of Testifying on His External Communications
16      About ISL and Why He Directly Terminated ISL.**

17     On April 28, 2020, ISL subpoenaed documents from Wasserman.[5]  Ex. R (April 28, 2020

18  document subpoena).  On May 27, the day before the date for Wasserman to respond to the

19  subpoena and produce documents, Ryan Murray, Senior Vice President and Corporate Counsel for

20  Wasserman, contacted ISL's counsel seeking an extension, to which ISL agreed.  Ex. S (Murray

21  email May 27, 2020); Krase Decl. ¶ 7.  Wasserman completed its document production, save any

22  physical documents which ISL has yet to receive, on July 10, 2020[6].  Ex. T (Murray email July

23

24  [5] Despite Wasserman's new complaint that the document subpoena was too broad (Mot. at 12),
   Wasserman did not formally object to the subpoena.  As for the document requests with which
25  Wasserman informally raised concerns (e.g., athlete contracts with ISL obtained solely because
   Wasserman independently represents an athlete), ISL worked with Wasserman to narrow the
26  scope and exclude certain categories.  Krase Decl. ¶ 8.

27  [6] Wasserman designated every document as "Confidential" pursuant to the protective order.  *See*
   Becerra Decl. ¶ 5.  Wasserman , however, publicly filed documents that it initially designated as
28  confidential.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

4

36144\13569054.6

10, 2020).  Despite multiple requests, Wasserman has yet to provide a privilege log, as required pursuant to the subpoena.[7]  Krase Decl. ¶ 22.

ISL has explored additional means to obtain discovery, as discussed herein (pp. 4-6), which diligence has confirmed Mr. Wasserman's unique knowledge and, therefore, the need to depose him personally.  Mr. Murray, however, first maintained that ISL should accept a declaration from a Wasserman employee which would cover all the 30(b)(6) topics and thereby, according to Wasserman, eliminate the need for Mr. Wasserman's deposition.  Ex. U (Murray email June 30, 2020 at pp. 8-9).  While skeptical, on July 8, ISL's counsel sent Mr. Murray a list of 30(b)(6) topics to guide Mr. Holmes' declaration.  Ex. CC (Krase email July 8, 2020 attaching 30(b)(6) topics).  Mr. Murray assured ISL that the Holmes declaration would "comprehensively address[] every aspect of the relationship Wasserman had with ISL, including the topics in your 30b6 list . . ."  Ex. U (Murray email July 10, 2018 at p. 1).

In fact, the Holmes' July 10 declaration did *not* cover ISL's July 8 30(b)(6) topics addressing  Mr. Wasserman's external communications with others about ISL.  Indeed, Mr. Holmes' declaration totally omitted several 30(b)(6) topics.[8]  Ex. T (Holmes Decl. July 10, 2020).

Further, Mr. Murry also made clear that no one else at Wasserman had any information beyond the Holmes' Declaration:  "Outside of the information in the [Holmes'] declaration, there is ***no additional knowledge or recollection that Holmes or anyone else could speak to*** that is of relevant evidentiary value."  Ex. U. (Murray email July 10, 2018 at p. 1) (emphasis added).  Thus, Wasserman's in house counsel established beyond cavil that ISL needed to depose Mr. Wasserman for his external communications, as discussed further below 16-20.

---

[7] Mr. Wasserman's other argument that ISL has not been diligent in its discovery is as false as it is irrelevant to its Motion.  First, Wasserman stalled in its production of documents.  And, second, Mr. Wasserman seeks to avoid a deposition, arguing ISL needs to wait longer to depose him.

[8] *See* Ex. CC. For instance, these 30(b)(6) topics unanswered with the Holmes' declaration include: Wasserman's communications with the IOC, National Olympic Committees, the USOPC, and FINA regarding ISL including ISL's relationship with Wasserman; Wasserman's communications with any person regarding the naming of ISL's events and/or the naming of FINA's Champions Swim Series; and communications between Wasserman and the IOC, USOPC, or LA 2028 regarding the commercialization of Olympic sports.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

5

36144\13569054.6

1    ISL twice subpoenaed Mr. Wasserman's deposition.  It was initially scheduled for July 29,

2    2020, but in an attempt to work with Mr. Wasserman's counsel, ISL rescheduled and reissued the

3    subpoena for August 14, 2020.  Ex. AA; Ex. BB.  On August 12, Mr. Wasserman's counsel

4    informed ISL's counsel that it would not produce Mr. Wasserman for the August 14 deposition.

5    Ex. Y (Seraphin email August 12, 2020).[9]

6    **C.     Wasserman's Bad Faith Assertion is Demonstrably False.**

7    Holmes' declaration breached Mr. Murray's assurances that the declaration would cover

8    Mr. Wasserman's external communications about ISL.  Nonetheless, and contrary to Wasserman's

9    assertions, the record amply demonstrates that  ISL continued to meet and confer in good faith.

10   For example, Wasserman contends that ISL's counsel acted in bad faith because ISL "insist[ed] on

11   scheduling Mr. Wasserman's . . . deposition before ever receiving the offers of proof propose by

12   Mr. Murray." (Mot. at 12-13).  False.  There was nothing bad faith about scheduling a deposition

13   in the event that Wasserman's proffer didn't meet Mr. Murray's promise, as ISL counsel's

14   communications demonstrated.  *See* Ex. U (Krase email July 9, 2020 at p.1) ("As agreed, ***we can***

15   ***cancel these depositions*** [(Chris Holmes and Casey Wasserman)] should we find the declaration

16   sufficient, but it is imperative that we get them on calendar . . .") (emphasis added).

17   Similarly there was no ISL bad faith in refusing to waste limited depositions when Mr.

18   Murray was emphatic that no one had information in Casey Wasserman's head.  That's

19   particularly true since FINA has refused to agree to more than ten depositions in aggregate for

20   both the ISL and the Swimmer Class.[10]

21   And, despite Wasserman's professed umbrage, ISL's "unilateral" selection of a deposition

22   date falls squarely within the rules, when as here, ISL has meet and conferred with the other

23   party(s) after the non-party subpoena is served.  *See* Local Rule 30-1; *see also* Malone Decl. ¶ 2.

24   Furthermore, ISL was forced to unilaterally notice Mr. Wasserman's deposition because he would

25   _____

26   [9] Mr. Wasserman unilaterally and directly canceled the deposition that ISL had contracted for
     even before filing the instant motion at 5:34 p.m. on the eve of the deposition.  Krase Decl. ¶ 21;
27   Ex. Z (Goteiner email August 13, 2020).

28   [10] Plaintiffs disagree with FINA's 10 deposition limit.  Plaintiffs reserve their right to move for
     Court guidance after additional document productions.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

6

36144\13569054.6

1   not agree to a date until late September or early October.  But fact discovery cut off is October 23,

2   2020 and Casey Wasserman's testimony will determine whether Plaintiffs depose others on

3   information known to him.  Further, on numerous occasions, ISL offered to reschedule Mr.

4   Wasserman's deposition to another date soon after August 14 or to depose Mr. Wasserman in

5   shorter installments to accommodate his claimed busy schedule.  Ex. X (Goteiner email August 5,

6   2020 at pp. 3-4); Ex. V (Goteiner letter July 29, 2020 at p. 3).

7   **III.**   **ADDITIONAL FACTUAL BACKGROUND**

8         **A.**     **Mr. Wasserman's ISL Conflict is Discoverable.**

9         On June 29, 2018, ISL and Wasserman entered into a contract by which Wasserman would

10  assist with sponsorship and media broadcast rights.  Ex. D (WASS_00498_0001,

11  WASS_00499_0001-12).  The contract was to run through December 2018.  Ex. D

12  (WASS_00499_0007).  However, as of November 30 (when Mr. Wasserman ordered the

13  termination), Wasserman and ISL were in talks regarding if and how to move forward.  Ex. E

14  (WASS_00634_0001); Ex. F (WASS_00444_0002).

15        Based on discovery to date, Wasserman's counsel's admissions and Holmes' sworn

16  admissions, Wasserman and Casey Wasserman had a high-profile potential conflict between their

17  work for, and collaboration with, the IOC, the USOPC, FINA and LA 2028 (of which Mr.

18  Wasserman is the chairman) on the one hand and ISL on the other.   Ex. T (Holmes Decl. July 10,

19  2020 at ¶ 9),  ("Given Mr. Wasserman's role with respect to the LA2028 Olympics, there was

20  some concern as to whether bringing on ISL as a client would pose potential conflict issues in

21  light of the agency's association with the Olympics.").[11]  In fact, Casey Wasserman himself was

22  involved in evaluating and clearing any potential conflicts and in having external communications

23  about those conflicts.  On July 13, ████████████████████████████

24

25  [11] In an email to ISL's counsel, Mr. Murray further described the conflict: "The 'conflict of

26  interest . . . related to a conflict between current and future needs of Wasserman and the
    relationship with ISL—specifically, Wassermann not materially benefiting from the relationship

27  with ISL . . . and there was considerable concern from *multiple parties* that the efforts of ISL to
    promote itself via its association with Wasserman would continue to cause unnecessary

28  *explanations to outsiders*, including international sporting officials and journalists."  Ex. U
    (Murray email from July 1, 2020) (emphasis added).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

7

36144\13569054.6

1  ██████████████████████████████████████ Ex. G

2  (WASS_00415_0002).   That same day, ███████████████████

3  ███████████████████████████ and stated: ████████████████████

4  ███████████████████████████████████████████ Ex. H

5  (WASS_00638_0001).

6        Less than a week later, on July 17, ████████████████████

7  ████████████████████████████████ Ex. G

8  (WASS_00415_0002).  That same day, ████████████████████████

9  ████████████████ and ████████████████████████████

10  ████████ Ex. I (WASS_00432_002).

11        But the ISL-Wasserman partnership nonetheless continued to create for Mr. Wasserman

12  very public conflict issues given his high profile LA Olympics 28 chairmanship and ████████████

13  ██████████████████████████████ Ex. J (WASS_00452_001).  Indeed, there

14  is evidence that during this period of the ISL-Wasserman contract, FINA was complaining to the

15  USOPC and to the IOC about Wasserman's consulting relationship with ISL and wanting

16  Wasserman to end it.  *See infra* at pp. 9-10.  Ultimately, Mr. Wasserman's ISL/IOC-FINA conflict

17  came to a head.  On November 30, Mr. Wasserman emailed Mr. Holmes, personally terminating

18  the ISL relationship:

19        **November 30, 2018, Mr. Wasserman to Mr. Holmes:** "Are we
           still doing work for them [ISL]??"

20        **November 30, 2018, Mr. Holmes response to Mr. Wasserman:**
21        "Yes, our scope runs through the end of the year.  (With about $20k
           in fees still coming our way).  Although, as you've probably heard,
22        they cancelled their event for next month [(the Turin Event)] and
           their future is up in the air.  We are in talks if/how to move forward.
23        Obviously want to be sensitive to their battle with FINA.  Anything
           I should consider from our side moving forward?
24

25        **November 30, 2018, Mr. Wasserman to Mr. Holmes:** "Yes, we
           need to end our work for them immediately."

26        **November 30, 2018, Mr. Holmes to Mr. Wasserman:**

27

28  [12] Upon information and belief, Danny Koblin was the Chief Bid Officer and had an LA2028
     email address.  He is also Chief Operating Officer of USOPC.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

8

36144\13569054.6

"Understood.  I assume this is because of their conflict with FINA. Is there any specific messaging I should relay?  Technically we have fulfilled our scope and they should pay their outstanding balance but if we need to walk away completely, just let me know."

**December 1, 2018, Mr. Wasserman to Mr. Holmes:** "Bad folks and they are using us, and it will start to cause problems."

Ex. E (WASS_00634_001).  However, just one day earlier, November 29, ████████████

████████████████████████████  On November 29, ████████████████

████████████████████████████████████  Ex. K

(WASS_00156_001).[13]

      Mr. Wasserman ██████████████████████████████████

██████████████████████████████  Ex. L

(WASS_00626_001).  Mr. Holmes replied: ████████████████████████

████████████████████████  Ex. L (WASS_00626_001) (emphasis added).

**B.     FINA Intended to Pressure Casey Wasserman to Terminate the Wasserman/ISL Relationship.**

      At a minimum, the IOC and the USOPC, at FINA's direction, attempted to pressure

Mr. Wasserman to terminate Wasserman's relationship with ISL.  For example, ████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████  Ex. A (FINA 00000729-30) (emphasis added).  ████

████████████████████████████████████████

_____

[13] On December 2, Mr. Holmes communicated to his team at Wasserman that they needed to terminate the relationship with ISL.  "*I received an email from Casey* over the weekend stating we need to end our relationship with ISL immediately . . . their ongoing battle with FINA is something we no longer can be associated with." Ex. M (WASS_00304_001) (emphasis added). On December 5, Mr. Holmes emailed Mr. Nitz terminating the relationship. Ex. N (WASS_00152_001).   Mr. Nitz recalled, and swore under penalty of perjury, that according to Holmes, Wasserman terminated the engagement because of "politics." *ISL*, Dkt. 32-1, ¶ 8 (Declaration of Artem Nitz ISO Plaintiffs' Opposition to FINA's Motion to Dismiss).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

9

36144\13569054.6

1   ████████████████████████████████████   Ex. A (FINA

2   00000729-30).  A week later, on September 21, 2018, Mr. Marculescu corresponded again in

3   Romanian with Mr. Ciorosian, with the subject line "ISL":  [Translated] "*See Wasserman*.  CM,"

4   and "Yes.  *I'll inquire.*"  Ex. B (USOC-0000056-57) (emphasis added).

5          Later, on December 3, 2018, Mr. Maglione, President of FINA, wrote to Mr. Bach,

6   President of the IOC: "Through this correspondence, I also ***come back to*** the serious problem that

7   our FINA is facing – the existence of a doubtful commercial group, aiming at dividing our Sport

8   and create a professional league.  ***We understand that in USA, [ISL] is supported by Mr. Casey***

9   ***Wasserman,*** the Chair of the Olympic Games Los Angeles 2028 Organising Committee.  ***I would***

10  ***very much appreciate any help from your side on this matter***."  Ex. C (FINA 00005695-96)

11  (emphasis added).

12         While Mr. Wasserman's counsel attempt to make much out of the dates of the emails (i.e.,

13  that Mr. Wasserman instructed Mr. Holmes prior to December 3 to terminate the ISL relationship),

14  Wasserman avoids several facts strongly suggesting that Mr. Wasserman had been speaking with

15  IOC and USOPC representatives about ISL long before he terminated ISL: (1) Mr. Maglione's

16  email demonstrates that he and Mr. Bach, or the IOC more generally, had discussed the ISL

17  commercial threat long before December 3; (2) Wasserman's representation of ISL was notorious

18  long before December 3, and as Chairman of LA 2008 he had been in contact with IOC top

19  management; it is reasonable to assume that Bach would have discussed these facts with the LA

20  2018 chair, Mr. Wasserman; (3) It was highly probable that separate from the IOC, the

21  Marculescu-USOPC September correspondence about approaching Wasserman resulted in another

22  approach to Mr. Wasserman; and (4) Mr. Wasserman did not out of the blue form the opinion on

23  November 30 that ISL were "bad folks," as he wrote Holmes.  There is no serious indication that

24  anyone at the Wasserman firm formed that "bad folks" view since in their own words Wasserman

25  was "proud" to be working with ISL and viewed ISL as a Wasserman "partner."  Mr. Wasserman

26  in forming his "bad folks" view was apparently receiving external information about ISL's

27  commercial objectives from people and institutions threatened by ISL.

28         Independently and irrespective of Wasserman's attempt to avoid the raindrops, if an IOC

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

10

36144\13569054.6

1 representative, Mr. Bach or otherwise, or USOPC representative contacted Mr. Wasserman,

2 whether before or after ISL's termination, such communication has direct relevance to ISL's

3 claims against FINA anticompetitive and business interference conduct.

4 **C.    Mr. Wasserman Ignores the Evidence of his External Communications – the Main Focus of His Deposition – But Instead Asserts Pretextual Justifications for Why He Terminated the Wasserman/ISL Contract.**

5

6 Casey Wasserman does not address the above facts and strong inferences of FINA

7 pressure on Mr. Wasserman and of Mr. Wasserman's external communications about ISL – the

8 core objective of the subpoena.  Instead and to distract the Court from why ISL needs to depose

9 Mr. Wasserman, he offers Chris Holmes' declaration's parade of strawmen justifications (other

10 than external pressure on Mr. Wasserman) for why Mr. Wasserman terminated ISL.

11 In any event, the Holmes' justifications are all pretext.  First, the justifications are

12 inherently contradictory.  In one instance, the Motion claims that Mr. Wasserman knew nothing

13 about the ISL relationship, although Mr. Wasserman's question to Mr. Holmes demonstrated that

14 he did know that his firm was working with ISL: "are we still doing business with ISL?"  Ex. E

15 (WASS_00634-0001-02).

16 Second, Mr. Wasserman's explanations are revisionist.  Mr. Holmes and Mr. Wasserman

17 asserts umbrage that ISL characterized its relationship as a partnership with Wasserman and that

18 ISL was using the Wasserman name.  But Wasserman employees also described the relationship

19 with ISL as a "partnership."  Ex. O (ISL003301-03) (a draft release approved by Wasserman

20 which Holmes ▮▮▮▮▮▮▮▮▮▮ quotes Holmes as enthusiastically stating: "We are proud

21 to be partnering with ISL…").  Also demonstrating Wasserman's misdirecting argument, ISL's

22 publication of the Wasserman name *significantly* pre-dates the termination and is consistent with

23 Wasserman being proud of being ISL's partner.  *See* Ex. T (Holmes Decl. July 10, 2020 at ¶ 25)

24 (referencing an instance "[a]lmost immediately in the first few weeks of our engagement" where

25 ISL publicized its relationship with Wasserman), ¶¶ 27-28 (referencing a July 11 article where ISL

26 stated that  Wasserman was "advising" ISL on "global strategy"), ¶ 32, 34 (noting ISL's early

27 August 2018 request to Wasserman to participate in the American Swimming Coaches

28 Association's World Clinic).  Thus, there is no reason to believe, given the firm's early adoption

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH DEPOSITION SUBPOENA – Case No. 3:18-CV-7394-JSC

11

36144\13569054.6

1   of the partner label for ISL, that all of a sudden Mr. Wasserman or his colleague were offended at

2   ISL also using the partner label.

3       And, while ISL may have been behind on payment – another Wasserman pretext for

4   terminating ISL, Wasserman did not terminate the relationship because of money.  Mr.

5   Wasserman and Holmes said they were terminating ISL because of the FINA/IOC v. ISL conflict.

6   *See supra* at p. 9.

7       As for the scope of work being complete – yet another revisionist pretext – on multiple

8   occasions, Holmes mentioned that Wasserman's work for ISL may have continued but for Mr.

9   Wasserman's order terminating the relationship.  Ex. E (WASS_00634_0001) ("We are in talks

10  if/how to move forward."); Ex. F (WASS_00444_0002) ███████████████████

11  █████████.

12      The last Holmes pretext was that ISL in 2018 faced difficulties in meeting its business

13  model goals.  Ex. T (Holmes Decl. July 10, 2020 at ¶¶ 21-22, 40-50).  Notwithstanding the amount

14  of ink spilled on this pretext, if this was a serious reason for termination, Wasserman would have

15  never entered into the consultancy agreement with ISL.  And of course it was no reason to

16  terminate a relationship.  The real reason for this Wasserman pretext was to help FINA, who used

17  Holmes' demonstrably inaccurate declaration just a day or two later to oppose ISL's motion to

18  obtain FINA event financials.[14]

19  **IV.   LEGAL STANDARD FOR THIRD PARTY AVOIDING DISCOVERY**

20      The party seeking to avoid discovery faces an uphill battle;[15] this burden also applies to

21  third parties asserting the apex doctrine[16].  *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-

---

[14] The Holmes declaration was drafted with gratuitous and inaccurate opinion testimony on ISL: (1) to intimidate ISL not to depose Chris Holmes or Casey Wasserman, (2) to help FINA in the discovery motions, and (3) to assist FINA in having ISL waste its deposition allotment on superfluous depositions.  For example, Holmes evades several of the critical 30(b)(6) topics while including superfluous, irrelevant information such as ISL's marketing strategy and conversations with broadcasters/sponsors.  Ex. T (Holmes Decl. July 10, 2020 at ¶¶ 44-45).  Mr. Wasserman's gambit also demonstrates the alignment between FINA and Wasserman, and how far Mr. Wasserman was willing to go to hurt a former fiduciary of his firm.

[15] "[A] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied."  *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).

[16] *Arminak v. Arminak & Associates, LLC*, No. CV 16-3382 JAK (SSX), 2017 WL 10402987, at

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

12

36144\13569054.6

1   BLF(JSC), 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (Corley, M.J.) (citation omitted)

2   ("Even when the apex doctrine is at issue, however, 'the burden remains on the party' seeking to

3   avoid the deposition."). The test is undue burden. *Arminak*, 2017 WL 10402987, at *3   To

4   determine whether a subpoena imposes an undue burden on a specific witness, courts engage in a

5   "case specific inquiry." *Id.* (internal quotation marks and citation omitted). The party moving for

6   a protective order bears the burden of demonstrating its necessity. *Karr v. Napolitano*, No. C 11-

7   02207 LB, 2012 WL 2196343, at *5 (N.D. Cal. June 14, 2012) (Beeler, M.J.).

8         The "apex" doctrine applies to prevent the deposition of high-level executives when that

9   deposition is sought "simply because he is the CEO or agency head." *Minter v. Wells Fargo*

10  *Bank, N.A.,* 258 F.R.D. 118, 126 (D. Md. 2009); se*e also In re Transpacific Passenger Air*

11  *Transportation Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *5 (N.D. Cal.

12  Mar. 6, 2014) (Ryu, M.J.) (considering whether the deposition was sought for "purposes of abuse,

13  harassment, or undue burden"). Courts often consider the following to determine whether to allow

14  an apex deposition to proceed: "(1) whether or not the high-level deponent has unique first-hand,

15  non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the

16  deposition has exhausted other less intrusive discovery methods . . ." *WebSideStory, Inc. v.*

17  *NetRatings, Inc.*, No. 06CV408 WQH(AJB), 2007 WL 1120567, at *3 (S.D. Cal. Apr. 6, 2007).

18  "[I]t is very unusual for a court to prohibit the taking of a deposition altogether absent

19  extraordinary circumstances. When a witness has personal knowledge of facts relevant to the

20  lawsuit, even a corporate president or CEO is subject to deposition. A claimed lack of knowledge,

21  by itself it is insufficient to preclude a deposition." *Apple Inc.,* 282 F.R.D. at 263 (internal

22  quotation marks and citations omitted).

23  **V.    LEGAL ARGUMENT**

24        Mr. Wasserman's lead off argument, and therefore presumably his strongest, is that ISL's

25  deposition is to harass and unduly burden him; ISL's deposition objective, asserts Wasserman, is

26  based on a speculative and unsubstantiated theory which is not attached to a specific case need and

27  which is disproportionate to the needs of ISL's case. Mot. at 1:2, 21:22-23, 13:21-26, 19:15,

28

---

*4 (C.D. Cal. Mar. 30, 2017) (stating the same in the context of a third-party deposition).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

13

36144\13569054.6

20:21.  But Mr. Wasserman's argument evades the clear conspiratorial language of the Maglione-Bach email, the USOPC-Marculescu email, FINA's Answer's denial of knowledge of the Maglione-Bach email, and this documented  FINA intent to enlist the USOPC and the IOC to destroy ISL because ISL represented competition both to FINA and to the IOC amateur models.  *See supra* at pp. 3-4, 10-12 (summarizing relevance of  Mr. Wasserman's deposition).  Mr. Wasserman's lead off argument also sidesteps the compelling timing of his involvement in his resolution the ISL-FINA conflict and of his personal termination of the ISL-Wasserman relationship.

These facts of  the documentation, of its timing, of Mr. Wasserman's conflict, of his role at his firm and at the LA Olympics 28, of his relationship to the IOC and of his personal involvement,  knowledge, and motivation, all of it, is the opposite of speculative and unsubstantiated.  It's Mr. Wasserman's *ipse dixit*  that his testimony is disproportionate to ISL's case which is unsubstantiated, gently put.  Indeed, Mr. Wasserman's lead off argument is nonsense if not frivolous.

The majority of Mr. Wasserman's remaining argument is that his deposition constitutes an apex deposition and therefore should not proceed.  Mr. Wasserman is wrong  for two primary reasons, as discussed below: (1) the apex doctrine does not apply, and (2) assuming that the apex doctrine applies, it does not prevent Mr. Wasserman's deposition because he, Chris Holmes and his counsel have demonstrated that Mr. Wasserman has unique knowledge that cannot be obtained through less exhaustive (or any) means.

A.      **Mr. Wasserman's Non-Party Status Does Not Help Him Under Apex.**

Mr. Wasserman claims that the apex doctrine applies "with added force in circumstances where the deponent is a nonparty to the litigation."  Mot. at 19.  Mr. Wasserman misreads his authorities.  In *Neravetla v. Virginia Mason Med. Ctr.*, 705 F. Appx. 520 (9th Cir. 2017), the Ninth Circuit merely found that the district court did not abuse its discretion in issuing a protective order preventing a deposition.  *Id.* at 523.  The district court found the deposition to be unduly burdensome because the plaintiff did not provide "any clear basis . . . for the belief that [the deponent] ha[d] any relevant information about any issue in this case that cannot be more easily

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-7394-JSC                    14                    36144\13569054.6

discovered from another source." *Neravetla v. Virginia Mason Med. Ctr.*, No. 13-1501-JCC, 2015 WL 13673809, at *1 (W.D. Wash. Jan. 6, 2015). The opposite is true here. Further, none of Wasserman other decisions concern an apex deposition and most relate to a document subpoena.[17] Wasserman cites no case stating or suggesting that the apex doctrine applies differently, or "with added force," to non-parties.

Indeed, Mr. Wasserman contradicts established law. In *Arminak*, *supra*, 2017 WL 10402987, plaintiffs sought to depose three non-party deponents. The court granted in part and denied in part the motion to quash, allowing the deposition of Mr. Brooks to proceed. The court wrote: "It is not entirely clear from the information provided that Mr. Brooks qualifies as a 'high-ranking' official for purposes of the apex doctrine. However, even assuming that Mr. Brooks qualifies as a high-ranking official, Plaintiffs have adequately demonstrated that Mr. Brooks has material, first-hand knowledge about the facts of this case sufficient to warrant his deposition." *Id.* *4. Not only did the court apply the same standard with the same force, but the court focused on the first prong without any discussion of exhaustion after having found that Mr. Brooks possessed unique, first-hand knowledge.

**B.     The Apex Doctrine Does Not Apply Here to Mr. Wasserman.**

Courts have declined to apply the apex doctrine in similar situations. In *Hardin v. Wal-Mart Stores, Inc.*, No. 08-CV-0617 AWI BAM, 2011 WL 6758857, at *2 (E.D. Cal. Dec. 22, 2011), the court granted defendant's request to produce the deponent and declined to apply the apex doctrine. "As this deponent may have relevant information concerning the policies triggering the challenged employment decisions impacting Hardin, and the policies implemented relevant to Hardin's case, the Court finds that this deposition falls outside of the realm of the 'apex deposition' doctrine and Ms. Chambers must be produced for deposition." *Id.* at *2; *see also Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *2 (N.D. Cal. May 9, 2011) (Larson, M.J.) ("However, that doctrine [(referring to the apex doctrine)] does

---

[17] *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975 (Fed. Cir. 1993); *Moon v. SCP Pool Corp.,* 232 F.R.D. 633 (C.D. Cal. 2005); *Dart Indus. Co., v. Westwood Chem. Co., Inc.,* 649 F.2d 646 (9th Cir. 1980); *Everlight Elecs. Co. v. Nichia Corp.,* No. C 13-80251 WHA (misc), 2013 WL 6252530 (N.D. Cal. Dec. 3, 2013) (Alsup, J.).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

15

36144\13569054.6

1    not apply to individuals with firsthand knowledge of relevant information.").  Similarly, in

2    *Grateful Dead Prods. v. Sagan*, No. C 06-7727 (JW) PVT, 2007 WL 2155693, at *1 (N.D. Cal.

3    July 26, 2007) (Trumbull, M.J.), the court found: "Further, protection from 'apex' depositions is

4    not appropriate where, as here, there is a factual dispute as to whether the deponent has first-hand

5    knowledge of relevant facts."  The purpose of the apex doctrine is to prevent harassment of

6    executives who have limited knowledge.  *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2015

7    WL 5852962, at *2 (N.D. Cal. Oct. 8, 2015) (Tigar, J.).

8         At bar, Mr. Wasserman has not indicated that he lacks relevant information about his

9    external discussions about ISL, and particularly confidential information from IOC and FINA

10   about very sensitive information pertaining to ISL's threat to FINA and the Olympic model.  He

11   has not submitted a declaration disclaiming his knowledge which ISL seeks, which would in any

12   event be subject to cross examination.  Indeed, he strongly suggests that he does have such high

13   level and confidential information.  Mr. Wasserman's counsel states that Mr. Wasserman:

14   "possesses substantial confidential and proprietary commercial information about Wasserman's

15   clients within the world of sports."[18]  Mot. at 8.

16   **C.    Assuming Arguendo That The Apex Doctrine Applies, It Does Not Prevent
         Mr. Wasserman's Deposition.**

17

18        **1.    Mr. Wasserman Has Unique Knowledge Relevant to ISL's Claims in
              the Underlying Action.**

19        There can be no dispute that Mr. Wasserman has unique, highly relevant knowledge.[19]  Mr.

20

21   [18] Mr. Wasserman's "proprietary" knowledge label gives Mr. Wasserman no refuge.  The focus of
     the deposition will be "on Mr. Wasserman's personal conversations and knowledge regarding ISL
22   with entities including but not limited to the IOC and FINA" and why he ordered the immediate
23   termination of the Wasserman/ISL relationship.  Ex. X (Krase Aug. 5, 2020 email).  It is also
     irrelevant to this motion that Mr. Wasserman's testimony could embarrass him by implicating him
24   in the apparent IOC/ FINA conspiracy, as he may fear.  Mot. at 8:9-11.

25   [19] Mr. Wasserman's attempt to arbitrarily limit questioning to conversations in which no other
     Wasserman employee has personal knowledge also fails.  "As one court stated, '[t]he mere fact . . .
26   that other witnesses may be able to testify as to what occurred at a particular time or place does
     not mean that a high level corporate officer's testimony would be 'repetitive.'  Indeed, it is not
27   uncommon for different witnesses to an event to have differing recollections of what
     occurred.'"  *DR Sys., Inc. v. Eastman Kodak Co.*, No. 08CV669-H (BLM), 2009 WL 2973008, at
28   *3 (S.D. Cal. Sept. 14, 2009) (quoting *First National Mortgage Co. v. Federal Realty Investment*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC                                    16                              36144\13569054.6

Wasserman's counsel conceded such in their August 4, 2020 letter to ISL's counsel: "Assuming our characterization of ISL's position is accurate, we agree that any discovery confined to these narrow categories would satisfy the *first* prong of the apex deposition test."   Ex. W (Becerra Letter Aug. 4, 2020 at p. 3) (emphasis in original).  These conceded apex categories were: (1) "Communications Mr. Wasserman potentially had with the IOC and/or FINA about ISL and which no other Wasserman employee has personal knowledge from November, 2018 to December, 2018; and" (2) "Whether Mr. Wasserman's intent surrounding any direction he may have given concerning Wasserman's relationship with ISL between the end of November 2018 and December 2018 resulted from and/or was directed by any conversation with IOC and/or FINA."   *Id.* at 2.  While ISL disagrees with Wasserman's narrow characterization,[20] ISL agrees that a deposition of Mr. Wasserman will include the unique knowledge that even Mr. Wasserman's counsel describes.

But  ISL need not even conclusively establish that Mr. Wasserman has unique knowledge. *See Finisar Corp.,* 2015 WL 3988132, at *2.  Nonetheless, on the face of the record, it is obvious that Mr. Wasserman has unique knowledge.  Courts have found that a deponent has unique personal knowledge in similar instances.

For example, in *Finisar Corp.*, this Court compelled the apex deposition of the plaintiff's CEO.  *Id.* at *1, 5.  The defendant sought to depose the CEO regarding the valuation of patents in question, his conversations with defendant's employees, and "his personal opinion about and motives regarding competition with [defendant] based on an email."  *Id.* at * 3.  The Court acknowledged, first, that the party seeking the deposition "need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, 'where a corporate officer *may* have *any* first-hand knowledge of relevant facts, the deposition should be allowed.'"  *Id.* at *2 (citations omitted) (emphasis added).  Second, the Court recognized that formal exhaustion is not

*Trust,* 2007 WL 4170548, *3 (N.D.Cal.2007) (Seeborg, M.J.)).

[20] ISL specified in an email to Wasserman that the apex categories would also include communications Mr. Wasserman potentially with other external entities and explained that such communications were not limited to November to December 2018.  Ex. X (Krase Aug. 5, 2020 email).

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

17

36144\13569054.6

1   an "absolute requirement" and is not "dispositive." *Id.* Third, "[a] claimed lack of knowledge, by

2   itself, or the fact that the apex witness has a busy schedule, are both insufficient bases to foreclose

3   otherwise proper discovery." *Id.*; *see also WebSideStory, Inc. v. NetRatings, Inc.*, No. 06CV408

4   WQH(AJB), 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007) (internal quotation marks and

5   citation omitted) ("[T]he fact that the apex witness has a busy schedule is simply not a basis for

6   foreclosing otherwise proper discovery.").

7        Applying those principles, the Court concluded that there was a sufficient basis to find that

8   the CEO had unique first-hand knowledge, as he was CEO at the time of the merger. *Finisar*

9   *Corp.,* 2015 WL 3988132, at * 2.  And, significantly, the Court found that the defendant was

10  entitled to depose the CEO regarding his particular, personal motivation for initiating the lawsuit.

11  *Id.* at * 3.  While other depositions had occurred, the Court acknowledged that the defendant had

12  not propounded interrogatories requesting such information. *Id.*  "As there is no strict requirement

13  that a party exhaust every type of discovery request before seeking to compel a deposition,

14  [defendant's] efforts to date do not defeat its request at this time." *Id.*

15       Similarly, in *Empire Lumber Co. v. Indiana Lumbermens Mut. Co.*, No. 3:10-CV-00533-

16  REB, 2012 WL 6203722, at *2 (D. Idaho Dec. 12, 2012)[21], the court denied defendant's motion

17  for a protective order to prevent an apex deposition, in part, because the apex deponent had

18  personal knowledge and involvement, as evidenced by the fact that he instructed the vice president

19  of claims to "prepare the initial reinsure report."  The court there agreed with the discovery master

20  that the motion for protective order should be denied. *Id.* at *1.  The discovery master had found:

21  "'it is reasonable to believe that Mr. Wolf has unique personal knowledge of matters in issue

22  which, as a practical matter, ***may only be ascertainable through the taking of his deposition***, as

23  opposed to other methods of discovery.'" *Id.* (emphasis added).

24  _____

25  [21] In its August 4 letter, Mr. Wasserman's counsel contended that in *Empire Lumber Co.* the court
    allowed an apex deposition "because prior testimony from three corporate witnesses demonstrated
26  that a 30(b)(6) deposition would be fruitless."  Counsel, however, misconstrued the court's
    reasoning.  There, individuals with relevant information had been deposed and those depositions
27  revealed that the apex deponent had relevant knowledge as well and was personally involved. *Id.*
    at *2-3.  Here, discovery thus far has shown that Mr. Wasserman alone possesses relevant, first-
28  hand knowledge as discussed *infra* at pp. 5, 16-20.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

18

36144\13569054.6

1    Turning to Mr. Wasserman's personal knowledge, first, ████████████

2    ██████████████████████████ *See* Ex. P (WASS_00606_001) (Chris Holmes

3    writing: ████████████████████████████████████

4    ████████████████████ (emphasis added).  Mr. Wasserman's

5    involvement in the conflict resolution, including external discussions about ISL, necessarily means

6    that Mr. Wasserman had unique knowledge of ISL and of his external conversations dealing with

7    any conflicts or related issues pertaining to ISL.

8    Second, Mr. Wasserman personally directed the termination of Wasserman's relationship

9    with ISL.  *See supra* at pp. 9-10 (discussing internal Mr. Wasserman decision).

10   Third, based on discovery to-date, Mr. Wasserman probably personally had conversations

11   with the IOC and USOPC concerning  ISL.  Mr. Wasserman, in instructing Mr. Holmes to

12   terminate the Wasserman/ISL relationship, stated that ISL were "bad folks and they are using us,

13   and it will start to cause problems."  Ex. E (WASS_00634_001).  Mr. Wasserman apparently

14   spoke with stakeholders external to Wasserman, such as executives in the IOC and USOPC in

15   coming to this opinion.  *See supra* at pp.10-12.

16   Fourth, the record here demonstrates that only Mr. Wasserman, and no one else at the firm,

17   has the unique information which ISL seeks.  Holmes, the proffered company 30(b)(6) witness,

18   obviously does not have Mr. Wasserman's unique knowledge, or Holmes and Wasserman's

19   counsel would have included it in the Holmes declaration.  *See*, *supra* p. 5 (quoting Mr. Murray's

20   representations that there is no other information outside of Holmes' declaration responsive to

21   ISL's topics.).  Irrespective of  Wasserman's situational claims now to block Mr. Wasserman's

22   deposition, Wasserman demonstrated with Holmes' declaration that it can be only Mr. Wasserman

23   who possesses the unique knowledge that ISL seeks.  There is no longer any reason after Holmes

24   declaration to make ISL waste time and its limited number of depositions on other Wasserman

25   witnesses.

26   To the extent Mr. Wasserman's attorneys nonetheless protest in the face of these facts and

27   its admissions that Mr. Wasserman has no knowledge or recollection of the events described

28   above and therefore should not be deposed, that argument still fails.  "[A] claimed lack of

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC                    19                    36144\13569054.6

1  knowledge or recollection does not provide sufficient grounds for a protective order, since the

2  opposing party is entitled to test that lack of knowledge or recollection." *Grateful Dead Prods.*,

3  2007 WL 2155693, at *1 n.5.

4      Against these indisputable facts, Mr. Wasserman offers easily distinguishable authorities

5  for its proposition that ISL has not met the standard of relevant, unique knowledge.  In *Novoa v.*

6  *Geo Group, Inc.*, No. 5:17-cv-02514-JGB (SHKx), 2020 WL 2501382, at *3 (C.D. Cal. Jan. 2,

7  2020), plaintiff wanted to depose the defendant's CEO regarding discussions the CEO may have

8  had with the City of Adelanto, claiming that such discussions related to defendant's immunity

9  defenses.  The court determined that "it is difficult to understand how [the CEO's] discussions

10  with the City of Adelanto's officials will impact the legal analysis regarding Defendant's

11  immunity defenses." *Id.* at *4.  By contrast, here, FINA's interference through Wasserman's CEO

12  with the ISL/Wasserman relationship to promote ISL's inaugural event and facilitate its entrance

13  into the market directly supports all of ISL's claims against FINA and possible claims against the

14  IOC.  And, Wasserman concedes that the FINA/ISL dispute weighed on Wasserman's business

15  decisions.  *See, e.g.*, Mot. at 10:20-23.

16      Similarly, Mr. Wasserman's reliance on *In re Google Litigation* fails.  In *In re Google*

17  *Litigation*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *1 (N.D. Cal. Oct 19, 2011)

18  (Grewal, M.J.), plaintiff sought to depose Google's CEO and President.  The court ordered the

19  CEO's deposition because it found that he had "unique knowledge of facts that [could not] be

20  secured by other less intrusive means of discovery." *Id.* at *2.  As to the President, Mr. Brin, the

21  court was "not yet convinced that [Brin] has unique and first-hand knowledge of the facts of this

22  case[.]" *Id.*  Here, ISL has demonstrated, in part through Wasserman's internal statements and in

23  part through Holmes' declaration, that Mr. Wasserman has unique knowledge.  Furthermore,

24  Wasserman's argument that "the plaintiff previously deposed **six other Google employees** before

25  seeking the depositions of Page and Brin" (Mot. at 18) (emphasis in Mot.), while true, is

26  misleading.  The court's decision did not rest on plaintiff  previously deposing other lower-level

27  employees; instead, the court based its ruling on the unique knowledge the CEO possessed.  *In re*

28  *Google Litigation*, 2011 WL 4985279, at *2.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

20

36144\13569054.6

## 2. Exhaustion of Additional Discovery Methods Is Not Required and Will Be Fruitless, as Wasserman and Holmes Have Admitted.

It appears that the heart of Mr. Wasserman's argument lays with exhaustion. But both the facts at bar and law make exhaustion inapplicable. The Holmes declaration has by itself ended the exhaustion argument. *See supra* at pp. 5-6. Holmes was Wasserman's 30(b)(6) witness (Ex. U (Murray email June 19, 2020 at p. 11)), whose testimony Wasserman proffered as having the Casey Wasserman information ISL sought (Ex. U (Murray July 10, 2020 email )). But Holmes did not have the required information – Wasserman's knowledge of external communications regarding ISL and of the FINA/IOC conduit. That was no surprise. But the surprise is that Wasserman is still pushing exhaustion after Wasserman's 30(b)(6) declaration demonstrates that there is no other witness but Casey Wasserman capable of testifying on the relevant topics.[22]

Even without these singular facts precluding the exhaustion analysis, exhaustion, while a consideration, is not required or dispositive. *See, e.g.*, *Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) (Gilliam, J.) ("Nor has formal 'exhaustion' been viewed as an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion."); *In re Transpacific,* No. C–07–05634 CRB (DMR), 2014 WL 939287 at *5 (N.D. Cal. Mar. 6, 2014) (Ryu, M.J.) (explaining that exhaustion is an "important consideration" but not a necessary precondition for an apex deposition). The exhaustion requirement is intertwined with whether the deponent has first-hand knowledge and aims to prevent abuse and harassment; Mr. Wasserman clearly has personal knowledge of the events at issue, and there is no credible evidence that a deposition would be harassing. *See, e.g.*, *In re Transpacific*, 2014 WL 939287; *Opperman*, 2015 WL 5852962; *see also* Mot. at 21:8-10

_____

[22] *See Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006) (Seeborg, M.J.), *objections overruled*, No. C 03-5340-JF (RS), 2006 WL 3050866 (N.D. Cal. Oct. 23, 2006) (Fogel, J.), (citations omitted) (emphasis in original) ("Courts generally refuse to allow the immediate deposition of a high level executive, often given the sobriquet 'apex deponent,' before the testimony of lower level employees with more intimate knowledge of the case has been secured. . . . Here, American Blind is seeking to depose Page only *after* learning from Google's designated 30(b)(6) witnesses that he may have relevant first- hand information.")

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-7394-JSC

21

36144\13569054.6

1    ("the threshold requirement of showing that Mr. Wasserman, a third party to this action, has any

2    unique or superior knowledge relevant to ISL's claims by exhausting less intrusive means of

3    discovery").

4         The *In re Transpacific* court aptly explained the exhaustion consideration and how at bar

5    the Holmes declaration demonstrated why ISL need not engage in further exhaustion efforts.

6    There, defendant argued that plaintiffs failed to exhaust less intrusive means.  *In re*

7    *Transpacific,* 2014 WL 939287, at *5.  The court denied the defendant's motion for a protective

8    order and granted the plaintiffs' motion to compel.  The court wrote:

9         ***Requiring that a party exhaust other discovery sources before***
    ***taking an apex deposition creates a burden-shifting analysis not***
10   ***mandated by the Federal Rules of Civil Procedure or the relevant***
    ***case law.*** *WebSideStory* itself only refers to the "exhaustion" of
11   other discovery routes as a consideration, not a requirement.
    *WebSideStory*, 2007 WL 1120567, at *2.  But it is an important
12   consideration nonetheless.  The history of the propounding party's
    efforts to obtain the information through other discovery, or lack of
13   such efforts, can shed considerable light on whether the party is
    seeking the apex deposition for appropriate purposes.  Therefore, to
14   safeguard against abuse, harassment, and undue burden, the court
    should consider whether and how the party seeking the deposition
15   has attempted to use other less intrusive discovery methods, in
    addition to whether the deponent possesses unique, firsthand
16   knowledge.  See *In re Google Litig.*, No. C 08–03172 RMW PSG,
17   2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (***prohibiting***
    ***apex deposition until party seeking deposition had used other***
18   ***discovery methods to determine whether proposed deponent had***
19   ***unique, firsthand knowledge of case's facts***).

20

21   *Id.* at *5 (emphasis added); *see also Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C

22   03-5340 JF (RS), 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006) (Seeborg,

23   M.J.), *objections overruled*, No. C 03-5340-JF (RS), 2006 WL 3050866 (N.D. Cal. Oct. 23, 2006)

24   (Fogel, J.); *Arminak*, 2017 WL 10402987, at *4 (concluding that the deponent Mr. Brooks had

25   unique, first-hand knowledge and thus should be deposed).

26        *Opperman,* 2015 WL 5852962,  is also instructive.  There, the court found that the

27   potential deponent, Mr. Morin, had personal knowledge.  *Id.* at *2.  The court explained: "'[T]he

28   purpose behind the apex doctrine is to prevent harassment of a high-level corporate official where

PLAINTIFF'S OPP. TO MOTION TO QUASH     22     36144\13569054.6
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

he or she has little or no knowledge.'" *Id.* (quoting *Ray v. BlueHippo Funding, LLC*, No. C-06-1807 JSW (EMC), 2008 WL 4830747, at *2 (N.D. Cal. Nov. 6, 2008) (Chen, M.J.)). "A reasonable inference from the evidence submitted to the court is that he personally participated in the decision to take corrective action regarding Path's upload of its users' address books, and oversaw the implementation of that action.  It appears that he also may have been involved in the original decision to upload the address books in the first place.  In other words, Mr. Morin is a percipient witness." *Id.* at *2 (internal citations omitted).  While the court recognized the two considerations (personal knowledge and exhaustion), after concluding that the potential deponent had unique knowledge, the court did not discuss whether the party seeking the deposition exhausted less intrusive means and instead overruled the objections to the deposition.  *Id.*

Here, too, discovery, including the Holmes declaration, has confirmed that Mr. Wasserman is a unique percipient witness with first-hand knowledge and that no lower level employee has the intimate knowledge that Mr. Wasserman possesses.  *See supra* pp. 4-6.  And Plaintiffs *have* conducted more than sufficient discovery from multiple sources – including by obtaining documents from Wasserman, FINA, and other third parties – which confirms that Mr. Wasserman has unique knowledge.

Mr. Wasserman argues that ISL should nonetheless exhaust other discovery, such as seeking 30(b)(6) testimony or answers to interrogatories on top of Holmes' 30(b)(6) declaration which Wasserman attorneys prepared specifically to address the topics for Casey Wasserman.  Obviously if Wasserman's 30(b)(6) witness with attorney help could not answer the unique Wasserman topics, no one else could.

Illustrative of these singular facts is *Empire Lumber Co.,* 2012 WL 6203722, at *3, *supra* at p. 18. The *Empire Lumber Co.* court found that a 30(b)(6) witness would not have the unique knowledge that the apex deponent possessed because the plaintiff was not "seeking information about an organizational policy or practice but, rather, matters particular to [the CEO] that only he [could] address." Here, too, a 30(b)(6) deposition would be fruitless as only Mr. Wasserman possesses knowledge of the details of his communications, including his intent behind his emails terminating the Wasserman/ISL relationship.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

23

36144\13569054.6

1    Second, Mr. Holmes can only speculate or offer hearsay as to why Mr. Wasserman

2  terminated the Wasserman/ISL relationship.  Mr. Holmes' declaration intentionally avoided

3  addressing core 30(b)(6) topics while implicitly conceding that Mr. Wasserman does have relevant

4  knowledge.[23]  *See supra* at p. 5.

5    Third, for Mr. Wasserman to submit a declaration or respond to interrogatories would not

6  alleviate the need for a deposition.  ISL has a right to cross-examine Mr. Wasserman.  "[A]

7  claimed lack of knowledge or recollection does not provide sufficient grounds for a protective

8  order, since the opposing party is entitled to test that lack of knowledge or recollection."  *Grateful*

9  *Dead Prods.*, 2007 WL 2155693, at *1 n.5.[24]  Additional discovery, beyond what has already been

10  conducted, would not address or help to refine questions of Mr. Wasserman.

11    Lastly, Wasserman's claim that ISL's subpoena  is just another example of  ISL's "abusive

12  discovery tactics," is a wishful Wasserman view of  Plaintiffs' several meritorious discovery

13  motions which FINA necessitated.  Mot. at 14.  Plaintiffs also respectfully submit that Wasserman

14  badly misinterprets and misapplies this Court's August 6 and other discovery rulings.

15    **D.**     **Mr. Wasserman Protective Order Suggestion is Without Merit.**

16    Should the Court deny Wasserman's Motion to Quash, Wasserman seeks a protective order

17  prohibiting ISL from deposing Mr. Wasserman without first deposing Mr. Holmes and "other

18  relevant party litigants or nonparties with more direct knowledge[.]"  Mot. at 26.  Wasserman

19  _____

20  [23] For example, the 30(b)(6) topics seek information about Wasserman's external communications
    with third parties, including IOC, LA 2028, USOPC, and FINA.  But Mr. Holmes' skirts the

21  question by stating merely that he reached out to "stakeholders" or engaged in "external"
    communications.  Ex. T (Holmes Decl. July 10, 2020 at ¶¶ 2,7.)  Similarly, while Mr. Holmes

22  alludes to conflicts between work for the IOC, the USOPC, or LA 2028 on the one hand and ISL
    on the other, he fails to elaborate on any communications or concerns surrounding such conflicts,

23  which must have occurred and surely involved Mr. Wasserman.  Additionally, Mr. Holmes
    completely ignores ISL's topic seeking information surrounding the naming of ISL events and/or

24  FINA's Champions Swim Series—unsurprisingly the same name that was already suggested by
    Wasserman to ISL.  Ex. Q (WASS_00102_0001).  These are merely the tip of the iceberg.

25  [24] Wasserman relies on *Affinity Labs of Texas,* 2011 WL 1753982, at *6  is readily distinguishable.

26  (see p. 17 of motion).  In *Affinity Labs*, the plaintiff's *only* asserted grounds for deposing Apple's
    CEO was several public statements Mr. Jobs had made.  *Affinity Labs of Texas,* 2011 WL

27  1753982, at *16 (explaining that the plaintiff's contention that the CEO possessed relevant first-
    hand knowledge was based "only on Mr. Jobs' public statements regarding Apple products or

28  other patents or lawsuits").

PLAINTIFF'S OPP. TO MOTION TO QUASH          24
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

36144\13569054.6

1  further requests that the Court limit the scope of inquiry, place reasonable time constraints on the

2  deposition, and require ISL to identify specific topics on which it seeks to depose Mr. Wasserman.

3        As ISL has explained above, see pp. 5, 16-20, only Mr. Wasserman in the U.S. has the

4  direct, first-hand knowledge from multiple parties that ISL seeks.  Further, ISL has already

5  identified and limited the scope of inquiry about which it plans to depose Mr. Wasserman.  *See*

6  *supra at* p. 19.  And, lastly, regarding time limits on the deposition, Mr. Wasserman's 45 minutes

7  suggestion is neither reasonable nor proportional to the importance of the FINA/IOC/USOPC

8  conduit by which FINA attempted to injure ISL and the swimmers.  Further, Mr. Wasserman

9  provides no declaration demonstrating his unavailability.  Mr. Wasserman also ignores ISL's offer

10  to start out with a 4 hour deposition either in the evening or on a weekend, if necessary to

11  accommodate Mr. Wasserman.  Ex. U (Krase email July 1, 2020 at pp. 5-6); Ex. V (Goteiner letter

12  July 29, 2020); Ex. X (Goteiner email August 5, 2020 at pp. 3-4); Ex. Z (Krase email August 12,

13  2020 at p. 1).  Mr. Wasserman's counsel rejected ISL's offers, flatly maintaining that he would not

14  be deposed at all.  *See, e.g.*, Ex. U (Murray email July 10, 2020 at p. 1).

15  **VI.     CONCLUSION**

16        For the foregoing reasons, ISL respectfully requests that the Court deny Wasserman's

17  Motion to Quash and, in the alternative, Motion for a Protective Order.

18

19  Dated:  August 27, 2020         FARELLA BRAUN + MARTEL LLP

20

21             By:    */s/ Neil A. Goteiner*
              Neil A. Goteiner

22             Attorneys for Plaintiff International Swimming League,

23             Ltd.

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S OPP. TO MOTION TO QUASH
DEPOSITION SUBPOENA – Case No. 3:18-CV-
7394-JSC

25

36144\13569054.6