1 | Neil A. Goteiner (State Bar No. 083524)
ngoteiner@fbm.com
2 | C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
3 | Joshua W. Malone (State Bar No. 301836)
jmalone@fbm.com
4 | Hilary Krase (State Bar No. 318762)
hkrase@fbm.com
5 | FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
6 | San Francisco, California 94104
Telephone: (415) 954-4400
7 | Facsimile: (415) 954-4480

8 | Attorneys for Plaintiff International Swimming
League, Ltd.

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

| INTERNATIONAL SWIMMING LEAGUE, LTD., | Case No. 3:18-CV-7394-JSC |
|---|---|
| Plaintiff, | **REQUEST TO THE CENTRAL AUTHORITY IN SWITZERLAND (TRIBUNAL CANTONAL VAUD) FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS (LETTERS ROGATORY)** |
| vs. | |
| FÉDÉRATION INTERNATIONALE DE NATATION, | |
| Defendant. | |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

36144\13810146.1

THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION, UNITED STATES OF AMERICA presents its compliments to the appropriate judicial authority of Switzerland, and requests international judicial assistance to obtain evidence to be used in a civil proceeding before this court in the above captioned matter.

This Court requests international assistance described herein as necessary in the interests of justice.  The assistance requested is that the appropriate judicial authority of Switzerland compel the International Olympic Committee ("IOC") to produce the responsive documents specified herein, and to allow the oral examination of an IOC witness, for use in a civil proceeding before this Court in the above-captioned matter:

| | | |
|---|---|---|
| **1.** | **Sender:** | The United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco California, 94102 |
| **2.** | **Central Authority of the Receiving State:** | Tribunal Cantonal Vaud Division Entraide judiciaire Palais de justice de l'Hermitage Route du Signal 8 1014 Lausanne ADM cant VD, Switzerland |
| **3.** | **Person to whom the executed request is to be returned** | Farella Braun + Martel Neil A. Goteiner 235 Montgomery Street, 17th Floor San Francisco, CA 94104 USA Telephone: (415) 954-4400 Facsimile: (415) 954-4480 Email: ngoteiner@fbm.com |
| **4.** | **Specification of the date by which the requesting authority requires receipt of the response of the Letter of Request** | |
| | **Date** | As soon as practicable. |
| | **Reason for urgency** | The Court has set a the deadline for dispositive motions as August 12, 2021, and the parties anticipate a trial date in early 2022. |
| **5.** | | |
| | **a.** **Requesting judicial** | The Honorable Jacqueline Scott Corley |

|   |   | authority (Article 3, a) | United States District Court for the Northern District of California, San Francisco Division 450 Golden Gate Avenue Courtroom E—15th Floor San Francisco California, 94102 |
|---|---|---|---|
|   | b. | To the competent authority of (Article 3, a) | Tribunal Cantonal Vaud Division Entraide judiciaire Palais de justice de l'Hermitage Route du Signal 8 1014 Lausanne ADM cant VD, Switzerland |
|   | c. | Names of the case and any identifying number | *International Swimming League, Ltd. v. Fédération Internationale De Natation*, Civil Action No. 3:18-cv-07394-JSC (N.D. Cal.) |
| 6. | | Names and addresses of the parties and their representatives (including representatives in the requested State (Article 3, b) | |
|   | a. | Plaintiff | International Swimming League, Ltd. |
|   |   | Representatives | Farella Braun + Martel LLP 235 Montgomery Street, 17th Floor San Francisco, CA 94104 |
|   |   |   | BÜHLMANN KOENIG & PARTNER Alfred-Escher-Strasse 17 CH-8002 Zürich |
|   | b. | Defendants | Fédération Internationale de Natation |
|   |   | Representatives | Latham & Watkins LLP 505 Montgomery Street, Suite 2000 San Francisco, CA 94111 |
|   | c. | Other parties | Not applicable. |
|   |   | Representatives | Not applicable. |
| 7. | | | |
|   | a. | Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article 3, c) | The requested documents will be used in a civil trial involving antitrust and tort claims. Plaintiff International Swimming League, Ltd. ("ISL") filed a complaint against Defendant Fédération Internationale de Natation ("FINA") on December 7, 2018 in the United States District Court for the Northern District of California.  On December 16, 2019, the Court denied FINA's motion to dismiss.  On January 17, 2020, ISL filed its First Amended Complaint, alleging (1) violation of Section 1 |

1    of the Sherman Act, 15 U.S.C. § 1;
     (2) violation of Section 2 of the Sherman Act,
2    15 U.S.C. § 2; and (3) tortious interference
     with prospective economic relations.

3

4         **b.  Summary of complaint**        ISL is a nascent professional swimming
                                              league.  FINA is the world's governing body
5                                             for all aquatics sports and the authorized
                                              gatekeeper to the Olympic Games' aquatic
6                                             events.  FINA uses its control over access to
                                              the Olympic Games to monopolize the
7                                             organization and promotion of all international
                                              swimming competitions to enrich itself,
8                                             including by restricting the ability for
                                              swimmers to participate in competitors'
9                                             swimming events.  Specifically, in early 2018,
                                              ISL began to plan for its inaugural event.  USA
10                                            Swimming and ISL were nearing terms for
                                              USA Swimming, the U.S. national swimming
11                                            federation, to host the inaugural ISL event, but
                                              FINA became aware of the potential
12                                            cooperation and in late May 2018 forced USA
                                              Swimming to withdraw from further
13                                            negotiations with ISL.  *See* **Exhibit A** (USAS-
                                              000773).[1]  FINA also intimidated with
14                                            threatened sanctions all national federations
15                                            and the world elite swimmers not to partner
                                              with ISL, as reflected in a June 5, 2018
16                                            emailed communication to the swimming
                                              community.  FINA's June 5 letter (*see* **Exhibit
17                                            B**) warned swimmers and federations around
                                              the world that they faced sanctions for
18                                            violating FINA's "unauthorized relations" rule
                                              (stating that "[n]o affiliated Member shall have
19                                            any kind of relationship with a non-affiliated or
20                                            suspended body") by affiliating with ISL – an
                                              outcome that would have disqualified those
21                                            federations' swimmers from participating in
22                                            the Olympic Games.  FINA applied similar
                                              pressure to force British Swimming, the UK
23                                            national swimming federation, to back away
                                              from ISL a few months later.  *See* **Exhibit C**
24                                            (ISL014834).

25

26   _____

27   [1] Due to the number and length of the exhibits cited within, ISL will translate into French those exhibits
     that are specifically quoted within this Letter.  ISL will translate all other exhibits into French at the request
28   of the Court.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

36144\13810146.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ultimately, and notwithstanding FINA's continued pressure and publicized attacks against ISL, ISL forged a partnership with the Italian swimming federation to host ISL's inaugural event in Turin, Italy, shortly before Christmas 2018 (the "Turin Event"). However, less than two months before the Turin Event, FINA reinterpreted its Rule BL 12 (which did not require FINA approval for events, like ISL's, "in which foreign clubs or individuals not representing their Member Federation participate") solely to prevent the Turin Event from going forward.  FINA, both directly and through its member federations, including USA Swimming, informed competitive swimmers worldwide that if they participated in the Turin Event or any other ISL competition, FINA would ban them from participating in the Olympic Games. *See* **Exhibit D** (FINA's October 30, 2018 letter). Reaction to that directive—which was mandatory on all FINA member federations— was swift.  Swimming organizations around the world, including those that were otherwise supportive of ISL, like USA Swimming and British Swimming, stated they would have no choice but to succumb to FINA's threatened swimmer ban. *See* **Exhibit E** (ISL001651). ISL and the Italian federation were thus forced to cancel the event. *See* **Exhibit F** (ISL021061)

As alleged in the Amended Complaint, FINA purported  to take these actions pursuant to its "unauthorized relations" rule that mirrors a similar rule of the International Speed Skating Union and that the European Commission struck down as a violation of European competition law. *See* European Commission, Case AT.40208.  FINA thus knew when it took these actions that it was flaunting antitrust law. Further proving the point, and as alleged in the Amended Complaint, FINA withdrew its threatened swimmer ban once ISL filed its action, demonstrating that FINA recognized

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

LETTERS ROGATORY                                   5                                   36144\13810146.1

the ban as legally indefensible.[2]

Shortly after the lawsuit was filed, the FINA Bureau approved its copycat events, Champions Swim Series to be held in international venues, which looked almost exactly like ISL's planned league format. *See* **Exhibit G** (ISL000672). Around the time FINA announced its copycat events, and despite its prior explicit instruction to the swimming world to the contrary, FINA claimed in a press release that it had never actually threatened to ban from the Olympic Games any swimmers who participated in ISL. *See FINA Statement*, FINA press release (Dec. 20, 2018), available at http://fina.org/news/pr-1-fina-meets-nfs-athlete-participation-international-competitions.

Discovery has further revealed that the IOC was complicit in FINA's illegal conduct which delayed ISL's entrance into the market. In particular, documents produced by FINA show that FINA's President Julio Maglione sought the IOC's assistance in interfering with ISL's relationship with Wasserman (a sports marketing consultant whose Principal is Chairman of the 2028 Los Angeles Olympics). *See* **Exhibit H**. Wasserman had contracted with ISL to provide sports and broadcasting consultation in relation to ISL's 2018 inaugural event, and ISL relied on Wasserman's expertise and knowledge of the swimming industry. On December 3, 2018, FINA's President, Julio Maglione wrote to IOC's President Thomas Bach: "Through this correspondence, I also come back to the serious problem that our FINA is facing — the existence of a doubtful commercial group, aiming at dividing our Sport and create a professional league. We understand that in USA, this group is supported by Mr. Casey Wasserman, the Chair of the Olympic Games Los Angeles 2028 Organising Committee. I would very much appreciate any help from your side on this matter." *See* **Exhibit H.** On December 5, 2018, Wasserman terminated its relationship with ISL. *See*

---

[2] http://www.fina.org/news/pr-1-fina-meets-nfs-athlete-participation-international-competitions

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

LETTERS ROGATORY

36144\13810146.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit I**.

Furthermore, President Thomas Bach, in his capacity as IOC President, has throughout 2017-2019 publicly expressed concern with and opposition to professional sports organizations such as ISL, which commercialize Olympic sports and threaten the IOC with competition. For example, Mr. Bach in 2017 and 2018 specifically criticized professional bodies like ISL as being a "serious threat" to the Olympic model that is "putting many of our sports organisations in trouble," and he also expressed concern at the EC's ruling that "unauthorized relations" rules like FINA's were anticompetitive.[3] FINA and the IOC also shared, and still share, the same Swiss lawyer, François Carrard, who represented the IOC in the European Commission proceeding about unauthorized relations rules.

FINA's interference with the ISL/Wasserman relationship through the IOC is relevant to ISL's claim for tortious interference with prospective economic relations and shows FINA's anticompetitive conduct to maintain its monopoly. Specifically, it discredits any FINA argument that it was applying its rules in a neutral, non-discriminatory manner toward ISL and without anticompetitive intent. In truth, FINA reached out to the IOC for assistance in disrupting ISL's relationship with Wasserman because both share the same hostile view towards (in FINA's president's words to the IOC) "doubtful commercial group[s]" like ISL.

Further, discovery has already revealed that FINA, and likely the IOC, have solicited the USOPC (the National Olympic Committee for the United States) to assist in the termination of the Wasserman relationship. In July 2018, Casey Wasserman (Chair of the Los Angeles 2028 Olympic Committee)'s chief of staff wrote to Mr. Wasserman about FINA's dissatisfaction with Wasserman's ISL relationship, also noting that Danny Koblin,

---

[3] *See* https://www.insidethegames.biz/articles/1072030/bach-calls-on-nocs-to-work-with-governments-to-defend-european-sports-model-from-serious-threat-of-commercial-enterprises; https://www.olympic.org/news/ioc-president-at-the-council-of-the-european-union-for-meeting-on-sport-in-the-21st-century ("It is my sincere hope that we do not lose sight of the important social role of sport by equating it with commercial sports business. We are deeply concerned about certain interpretations of . . . EU competition law with regard to sports.").

| | |
|---|---|
| | Chief Operating Officer of USOPC and at that time a member of the LA 2028 Olympic Committee, had been advised. *See* **Exhibit J** (WASS_00638).   Then, in September 2018, FINA appears to have requested the USOPC's help in terminating ISL's relationship with Wasserman. *See* **Exhibit K** (FINA_ISL-SHIELDS-00003891).  Given the USOPC's connection to the IOC (with the USOPC susceptible to pressure from the IOC, which is the governing body for all National Olympic Committees), and that FINA had appealed to both the IOC and USOPC for assistance with ISL over time, it is obvious that there were communications between the IOC and USOPC relating to ISL. |
| | A copy of the First Amended Complaint is attached as **Exhibit L**. |
| c.  **Summary of defense and counterclaim** | In response to ISL's allegations, FINA presented certain defenses including lack of personal jurisdiction, implied antitrust immunity under the Ted Stevens Olympic & Amateur Sports Act, lack of subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act, failure to state a claim, mootness, failure to mitigate, absence of damages, no multiple recoveries, business justification/no wrongful means, third party conduct, parallel conduct, lack of antitrust injury, lack of cognizable relevant market, lack of market power, lack of cognizable Section 1 claim, no willful acquisition of monopoly power, and a reservation of rights to assert additional defenses.   A copy of the Answer is attached as **Exhibit M.** |
| d.  **Other necessary information or documents** | Not applicable. |
| **8.** | |
| a.  **Evidence to be obtained or other judicial act to be performed (Article 3, d)** | It is respectfully requested that Switzerland's Central Authority compel the International Olympic Committee to produce to ISL the documents requested in **Schedule A** and to answer the questions listed in **Schedule C**, to the extent feasible via cross-examination**.** |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

**b.    Purpose of the evidence or judicial act sought**

The IOC is a not-for-profit organization headquartered in Lausanne, Switzerland.  It puts on and promotes the Olympic Games primarily through coordination with two technically separate groups of entities: (1) National Olympic Committees ("NOCs"), and (2) International Sports Federations, including but not limited to Defendant FINA.  For swimmers, the Olympic Games are the most important source of income as they enjoy maximum exposure in the media, whereas all other swimming events by far have no comparable coverage and thus do not offer comparable opportunities to earn money.

As a consequence, the IOC has great power in terms of regulating access to the Olympic Games.  Accordingly, the International Sports Federations as member of the National Olympic Committees (which are affiliated with the IOC) are required to establish "unauthorized relations" rules in their constitutions under which athletes can be banned from the Olympic Games (or qualifiers for them, respectively) if they attend events not authorized by them (cf. rule no. GR 4.5 of FINA's General Rules).[4]

Once FINA has realized, though, that it may have crossed the line by threatening swimmers and their federations, and that this may backfire, it backed off partially, but tried to hinder ISL's market entry and thus its commercial success through the back door by implicating the IOC.  Discovery thus far has revealed that FINA has sought assistance from the IOC to stifle ISL's entry to the market, specifically by requesting help from IOC President Thomas Bach to help end ISL's relationship with Wasserman, a sports marketing agency, that had valuable expertise in organizing sporting competitions and was consulting with ISL regarding organizing ISL's inaugural 2018 event in Turin, Italy.

Accordingly, the IOC must possess information relevant to ISL's claims of violations of the Sherman Act and tortious interference with prospective economic advantage, *i.e.* the intentional interference with an established business relationship between two parties through wrongful means.  ISL requires this evidence to be used at trial in order to be in a position to prove its claims,

---

[4]https://www.fina.org/sites/default/files/logo_fina_general_rules_as_approved_by_the_ec_on_22.07.2017_final_3.pdf

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

LETTERS ROGATORY                    9                    36144\13810146.1

including damages due to FINA's wrongful behavior by implicating the IOC to use its power over Wasserman to terminate its relationship with ISL.

**9.** **Identity and address of any person to be examined (Article 3, e)**

Mr. Thomas Bach, President
International Olympic Committee
Chateau De Vidy
1007 Lausanne, Switzerland

**10.** **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3, f)**

See **Schedule C** for list of questions to be put to Mr. Bach on behalf of ISL.

**11.** **Documents or other property to be inspected (Article 3, g)**

IOC will also be asked to produce the documents listed in **Schedule A**.

**12.** **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h)**

ISL requests that the testimony be taken under oath, in accordance with Swiss civil procedural rules.

**13.** **Special methods or procedure to be followed (*e.g.* oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (Article 3, i and 9)**

ISL requests that the testimony be transcribed in writing and recorded by video. ISL further requests that its Swiss counsel, Jürg Bühlmann, and (per article 173 of the Swiss Civil Procedure Code, CCP (272)) ISL's U.S. counsel identified in Paragraph 6 above, be given the opportunity to ask supplementary questions to the witness under oath and to conduct cross-examination to the extent feasible.  ISL's Swiss counsel in this regard is:

Jürg Bühlmann
BÜHLMANN KOENIG & PARTNER
Alfred-Escher-Strasse 17
CH-8002 Zürich

**14.** **Request for notification of the time and place for the execution of the Request and identity of any person to be notified (Article 7)**

ISL requests that the following party representatives be notified of the time and place for execution of this request:

Neil A. Goteiner
Farella Braun + Martel
235 Montgomery Street, 17th Floor
San Francisco, CA 94104 USA

Dan Wall
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111 USA

Jürg Bühlmann
BÜHLMANN KOENIG & PARTNER
Alfred-Escher-Strasse 17
CH-8002 Zürich

| | | |
|---|---|---|
| **15.** | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8)** | Not applicable. |
| **16.** | **Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b)** | Pursuant to the laws of the United States, a witness may refuse to provide evidence if that evidence reveals a confidential communication between the witness and his or her attorney that was made for the purpose of obtaining legal advice.<br><br>The United States also recognizes a privilege against criminal self-incrimination.<br><br>Some limited immunities are available that may restrict the giving of evidence (i.e., the limited protection afforded by the work product doctrine). |
| **17.** | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by** | Plaintiff ISL. |

Dated: _____, 2020

_____

Hon. Jaqueline Corley Scott

Magistrate Judge of the Northern District of California, San Francisco Division
450 Golden Gate Avenue
Courtroom E—15th Floor
San Francisco California, 94102

1
2

**SCHEDULE A**

**DEFINITIONS**

3     1.     "<u>DOCUMENT(S)</u>" means any document or thing and "writing and recording,"
4   including without limitation electronic documents and information in any form in which it may
5   exist.  DOCUMENTS necessarily includes all recordings of any type of any form of interpersonal
6   communication, including but not limited to any transmission, conveyance, or exchange of word,
7   statement, fact, thing, idea, document, instrument, data, or information by any medium, whether
8   written, verbal, non-verbal, or any other means, including but not limited to electronic
9   communications, electronic mail, text messages, and any communications created, stored, or
10  exchanged via any type of application available on and accessed via mobile devices.

11    2.     "<u>COMMUNICATION(S)</u>" means any form of interpersonal communication,
12  including but not limited to any transmission, conveyance, or exchange of word, statement, fact,
13  thing, idea, document, instrument, data, notes or memoranda of any meetings or conversations,
14  or information by any medium, whether written, verbal, non-verbal, or any other means,
15  including but not limited to electronic communications, electronic mail, text messages, and any
16  communications created, stored, or exchanged via any type of application available on and
17  accessed via mobile devices. COMMUNICATION(S) also means any DOCUMENT(S)
18  transmitted by, attached to, or referenced in any COMMUNICATION.

19    3.     "<u>ISL</u>" means or refers to International Swimming League, Energy Standard Group,
20  Konstantin Grigorishin, or any of their predecessors, successors, parents, subsidiaries, affiliates,
21  officers, employees, agents, consultants, attorneys, and anyone else who you understood to be
22  acting on their behalf.

23    4.     "<u>YOU</u>" and "YOUR" means or refers to International Olympic Committee ("IOC")
24  or its predecessors, successors, parents, subsidiaries, affiliates, officers, employees, agents,
25  consultants, attorneys, and anyone else who you understood to be acting on its behalf.

26    5.     "<u>FINA</u>" means or refers to Fédération Internationale de Natation or its
27  predecessors, successors, parents, subsidiaries, affiliates, officers, employees, agents,
28  attorneys, and anyone else who you understood to be acting on its behalf.

6.     "REGARDING," "REFERRING TO," "RELATING TO," "REFER TO," OR "RELATE TO" means, without limitation, concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consistent of, comprising, showing, commenting on, evidencing or otherwise describing the particular subject matter identified.

## INSTRUCTIONS

1.     If your response to a particular document request is a statement that you lack the ability to understand a word or phrase in the request, please use the common and reasonable interpretation of the word or phrase and explain your interpretation of the word or phrase.

2.     If any Document responsive to these requests is withheld for any reason, provide a detailed log that identifies each Document withheld. Use the unique identifying numbers (e.g., Bates labels) to identify the Document and provide information about the Document sufficient to allow the adjudication of the validity of your decision to withhold it from disclosure. At a minimum, the log should describe: (1) the date of the Document, (2) each and every author, (3) each and every recipient, (4) each and every person to whom the Document has been disclosed, (5) the nature of the Document (e.g., e-mail, PowerPoint presentation, handwritten notes, etc.), (6) whether the Document had any attachment, (7) the present location of the Document and all copies thereof, (8) the subject and purpose of the Document, and (9) the reason for withholding the Document (e.g., attorney-client privilege or work-product doctrine).

3.     If you contend that a portion of a DOCUMENT is subject to being withheld under a claim of privilege or immunity from production or that a portion of a DOCUMENT is non-responsive to the requests below, produce the entire DOCUMENT (including all attachments) with any necessary redactions. Include on the DOCUMENT itself notations that clearly indicate where you made any such redactions.

4.     If a DOCUMENT responsive to these Requests once existed but has been lost, destroyed, or otherwise is no longer in your possession, identify the DOCUMENT and state the details concerning the loss or destruction of such DOCUMENT. Include in this response the name and address of the present custodian of any such DOCUMENT known to you.

5.      Electronically stored information ("ESI") shall be produced in the following formats:

a.      <u>TIFF Format with corresponding native files</u>. All documents, with the exception of those specified below, should be produced as Group IV single page tiff files imaged at 300 dpi. All images are black & white except for those that require color jpg images for interpretation. Certain file types, such as Excel files, do not lend themselves to image conversion and must be produced as native files. A tiff placeholder indicating that the document was provided in native format should accompany the database record. Native file documents must be named per the BegDoc Bates number, and the full path to the file must be provided in the .dat file in a field named NativeFile.

b.      <u>Unique IDs</u>. Each tiff file should be named with a unique name matching the Bates number labeled on the corresponding page. Each tiff will contain a branded Bates number located on the lower right side of each image.

c.      <u>Load Files and Full Text</u>. An image load file (Opticon or Ipro format file) showing document boundaries must be provided. Extracted metadata and full text for each document should be produced in the form of an ASCII delimited .dat file using Concordance delimiters. If extracted text is not available for a document or if it has been redacted, OCR will be performed on each document to provide full text. The metadata fields to be produced for each document will include:

| FIELD NAME | DESCRIPTION |
|---|---|
| BegDoc | The Bates label of the first page of the document |
| EndDoc | The Bates label of the last page of the document |
| BegAtt | The Bates label of the first page of a family of documents (e.g., email and attachment) |
| EndAtt | The Bates label of the last page of a family of documents |
| PageCount | The number of pages in the document as rendered to tiff |
| SortDate | For email, the sent date of the parent message; For loose electronic files, the last modified date |
| SortTime | For email, the sent time of the parent message; For loose files, the last modified time |

| FIELD NAME | DESCRIPTION |
| --- | --- |
| SentDate | For email, the sent date of the message |
| SentTime | For email, the sent time of the message |
| DateLastMod | For efiles or attachments, the document's last modified date or operating system last modified date |
| TimeLastMod | For efiles or attachments, the document's last modified time or operating system last modified time |
| TimeZone | The abbreviation for the time zone used for processing files (e.g., PST or GMT) |
| Subject | For email: the subject line of the email; For attachments or loose files: the title of the loose native file or attachment from the document's properties |
| Author | For email: the sender of an email message; For loose files or attachments: the author |
| To | The recipients of an email message, in a semi-colon delimited, multi-value list |
| CC | The copyee(s) of an email message, in a semi-colon delimited, multi-value list |
| BCC | The blind copyee(s) of an email message, in a semicolon delimited, multi-value list |
| Custodian | The custodian in whose file the document was found, and the custodians of any duplicates, in a semi-colon delimited multi-value list |
| MD5 | The calculated MD5 hash value of the document |
| Folder | For email and attachments, the folder path for email messages (e.g., Inbox\Claims) |
| Source | The original file path where the document was stored on defendants' systems |
| NativeFile | The file path to the location of the corresponding native file in the production |
| FileName | The original file name of an attachment to an email or a loose document not attached to an email |
| FileExt | The file extension of an attachment to an email or a loose document not attached to an email |

    d. <u>Retention of Original Documents</u>. Native electronic source documents are to be retained for all ESI produced in this litigation.

    e. Paper documents will be produced as Group IV single page tiff files, and OCR will be performed on each document to provide full text.

    7. If, for any request, you do not have any responsive documents within your possession, custody or control, you shall so state in its written responses to these requests.

8.      Any documents which are ordinarily maintained in Microsoft Excel or any other spreadsheet program must be produced in native format.

9.      Use of the singular also includes the plural and vice-versa.

10.     The terms "and" and "or" should be understood either disjunctively or conjunctively as necessary to bring within the scope of any request all information that might otherwise be construed to be outside of its scope.

11.     "All" should be understood to include "all, any, each and every."

12.     As used herein, "include" and "including" shall be construed to mean "without limitations," so as to give the broadest possible meaning to requests and definitions containing those words.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

DOCUMENTS and COMMUNICATIONS from 2018 to 2019 REGARDING ISL, in particular emails to which the below mentioned email from FINA President Julio Maglione to IOC President Thomas Bach refers.

In his December 3, 2018 email to IOC President Thomas Bach, FINA President Julio Maglione wrote that he was "com[ing] back" to the serious problem" that was ISL, signaling the existence of previous communications regarding ISL.  *See* **Exhibit H**.

### REQUEST FOR PRODUCTION NO. 2:

DOCUMENTS and COMMUNICATIONS from June 2018 (when ISL formally contracted with Wasserman, *see* **Exhibit N**) through December 2018 (when FINA requested the IOC's intervention in the ISL-Wasserman relationship, *see* **Exhibit H**) REGARDING the representation of ISL by Wasserman or Wasserman Media Group and the termination of ISL's relationship with Wasserman (*see* **Exhibit I**), in particular emails exchanged between December 3 and 5, 2018 between the IOC and Wasserman or Wasserman Media Group.

A more specific description of the requested DOCUMENTS and COMMUNICATIONS (including aforementioned emails) is not possible, but it is obvious that the IOC must be in possession of such DOCUMENTS and COMMUNICATIONS; FINA President Julio Maglione's

1  December 3, 2018 email to ICO President Thomas Bach and the immediately following

2  termination by Wassermann of its contractual relationship with ISL clearly indicates that the IOC

3  has not only been involved, but actually triggered said termination. There must have been some

4  sort of communication between the IOC and Wasserman and/or Wasserman Media Group.

5  **REQUEST FOR PRODUCTION NO. 3:**

6       COMMUNICATIONS from June 2018 through December 2018 between YOU and the

7  United States Olympic & Paralympic Committee ("USOPC") REGARDING ISL.

8       In July 2018, Casey Wasserman (Chair of the Los Angeles 2028 Olympic Committee)'s

9  chief of staff wrote to Mr. Wasserman about FINA's dissatisfaction with Wasserman's ISL

10  relationship, also noting that  Danny Koblin, Chief Operating Officer of USOPC and at that time a

11  member of the LA 2028 Olympic Committee, had been advised.  *See* **Exhibit J**.   Then, in

12  September 2018, FINA appears to have requested the USOPC's help in terminating ISL's

13  relationship with Wasserman.  *See* **Exhibit K**.   A more specific description of this request is not

14  possible, however, given the USOPC's connection to the IOC (with the USOPC susceptible to

15  pressure from the IOC, which is the governing body for all National Olympic Committees), and

16  that FINA had appealed to both the IOC and USOPC for assistance with ISL over time.  *See*

17  **Exhibits H, J** and **K**.  Thus, there must be communications between the IOC and USOPC relating

18  to ISL.

19
20
21
22
23
24
25
26
27
28

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

36144\13810146.1

## SCHEDULE B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNATIONAL SWIMMING LEAGUE, LTD., | Case No. 3:18-CV-7394-JSC |
| Plaintiff, | **DECLARATION OF DOCUMENT CUSTODIAN OR OTHER QUALIFIED PERSON** |
| vs. | |
| FÉDÉRATION INTERNATIONALE DE NATATION, | Judge: Hon. Jacqueline Scott Corley |
| Defendant. | |

## DECLARATION

I, _____ (full name of declarant) declare, under penalty of perjury under Switzerland Criminal Code, as follows:

1.      I am an employee of the International Olympic Committee, located at Chateau De Vidy Lausanne, Switzerland 1007.

2.      My title is _____ (title of declarant at the International Olympic Committee).

3.      I am over the age of 18 and competent to make this declaration.

4.      The facts stated in this declaration are true and correct and are based on my personal knowledge.  I understand that this Declaration is intended to be produced in court.

5.      The following records are being produced in response to this Letter Rogatory:

_____

_____

_____

_____

6.      Each of the foregoing records is the original record or a true duplicate of the original record in the custody of the International Olympic Committee.

7.      I further certify that such records were kept in the course of a regularly conducted business activity of the International Olympic Committee.

I certify under penalty of perjury under the laws of the state of California and the United States of America that the foregoing is true and correct.  Executed on _____ [DATE] in _____ [LOCATION].


Signature:       _____

Name:           _____

Title:            _____

## SCHEDULE C

### (By way of cross-examination to the extent feasible)

1. Could you please describe where you worked prior to the IOC,  in what capacity, and for how long?

2. What is the IOC's relationship with FINA?

3. What is the IOC's relationship with Los Angeles 2028?

4. Is there overlap between FINA employees, board members, or executives and IOC employees, board members, or executives?

5. If so, please describe and identify the overlap.

6. To the extent it exists, could you please describe and identify any overlap between Los Angeles 2028 employees, members (including board members), or executives and IOC employees, board members, or executives?

7. Please describe IOC's relationship, if any, with Mr. Casey Wasserman?

8. Have you ever communicated (whether written or oral) with Cornel Marculescu, Julio Maglione, or anyone else you understood to be working on behalf of Fédération Internationale de Natation ("FINA") with regard to the International Swimming League, Ltd. ("ISL")?

9. If so, could you please describe each of those communications, including when they occurred, who was involved, and what was communicated?

10. Did FINA or anyone else you understood to be working on behalf of FINA ever discuss with the IOC (written or oral) ISL's relationship with Wasserman?

11. If so, could you please describe each of those communications, including when they occurred, who was involved, and what was communicated?

12. Do you recall this email exchange?

[GIVE WITNESS COPY OF ATTACHED EXHIBIT H]

13. In what context did you see or receive this email exchange?

14. From whom did you receive it?

15. What do you interpret "the serious problem that our FINA is facing" to mean in Exhibit H?

16. Do you understand "commercial group" in Exhibit H refer to ISL?

17. In Exhibit H, Maglione states, "I also come back…"  Did you or anyone else at the IOC have any prior conversations with FINA or any person you understood to be acting on behalf of FINA regarding ISL?

18. If so, could you please describe each of those communications, including when they occurred, who was involved, and what was communicated?

19. Did you communicate with Mr. Casey Wasserman or anyone at Wasserman regarding Wasserman's relationship with ISL?

20. If so, could you please describe each of those communications, including when they occurred, who was involved, and what was communicated?

21. If you are aware, what prompted these communications?

22. Did you communicate with the United States Olympic & Paralympic Committee, (USOPC) regarding ISL?

23. If so, could you please describe each of those communications with USOPC, including when they occurred, who was involved, and what was communicated?

24. Did you communicate with anyone at USA Swimming, the Italian Swimming Federation, or British Swimming regarding ISL?

25. If so, could you please describe each of those communications with NFs, including when they occurred, who was involved, and what was communicated?

26. Do you recall communicating (whether written or oral) internally within the IOC regarding ISL's potential impact on the IOC, FINA, or the Olympic movement?

27. If so, could you please describe each of those communications, including when they occurred, who was involved, and what was communicated?

28. In approximately November 2017, you stated in a speech: "It is my sincere hope that we do not lose sight of the important social role of sport by equating it with commercial sports business. We are deeply concerned about certain interpretations of the European treaty and EU competition law with regard to sports[.]" https://www.olympic.org/news/ioc-president-

1   at-the-council-of-the-european-union-for-meeting-on-sport-in-the-21st-century.  What did

2   you mean by that?

3   29.   When you referred in your statement above to "EU competition law," were you referring

4        at least in part to the ISU Speed Skating case (European Commission, Case AT.40208)?

5   30. What else were you referring to?

6   31. In Fall 2018, you instructed National Olympic Committees to "oppose competing models

7        that are primarily based on money and treat athletes as assets."  You claimed that their

8        model based on solidarity faced "serious threat" from commercial bodies.  "We have to

9        realise the model is under pressure, for not to say under threat."  "[T]he value of an

10       organization and an activity is not determined any more by its values and its contribution

11       to a better society. But it is determined by money and markets. . . . This is putting many of

12       our sports organizations into

13       trouble."  https://www.insidethegames.biz/articles/1072030/bach-calls-on-nocs-to-work-

14       with-governments-to-defend-european-sports-model-from-serious-threat-of-commercial-

15       enterprises.  What did you mean by that?

16   32. Does commercial bodies refer to ISL?

17   33. Does it include ISL?

18   34. Did the IOC take a formal or informal position on the International Skating Union case

19       before the European Commission (Case AT.40208)?

20   35. If so, please describe the position and when it was formed.

21   36. What was the impetus, if any, for this formal or informal position?

22   37. Why did the IOC take this position?

23   38. Do you recall communicating (whether written or oral) with anyone at FINA regarding the

24       European Commission's decision in the International Skating Union case and its impact on

25       FINA?

26   39. If so, could you please describe each of those communications, including when they

27       occurred, who was involved, and what was communicated?

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

1     40. Is there – besides you – someone else inside the IOC who handled communication with

2          FINA, any NOCs or national federations, who was dealing with matters involving ISL, or

3          who would be in any way in a better position to answer aforementioned questions?

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400