1  Neil A. Goteiner (SBN 083524)
   ngoteiner@fbm.com
2  C. Brandon Wisoff (SBN 121930)
   bwisoff@fbm.com
3  Joshua W. Malone (SBN 301836)
   jmalone@fbm.com
4  Hilary C. Krase (SBN 318762)
   hkrase@fbm.com
5  FARELLA BRAUN + MARTEL LLP
   235 Montgomery Street, 17th Floor
6  San Francisco, California 94104
   Telephone: (415) 954-4400
7  Facsimile: (415) 954-4480

8  Attorneys for Plaintiff ISL

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12
   INTERNATIONAL SWIMMING LEAGUE,          CASE NO. 3:18-cv-07394-JSC
13 LTD.,
                                           **PLAINTIFF INTERNATIONAL**
14              Plaintiff,                  **SWIMMING LEAGUE, LTD.'S**
                                           **OPPOSITION TO DEFENDANT**
15        vs.                              **FINA'S MOTION TO COMPEL, TO**
                                           **STRIKE, AND FOR SANCTIONS**
16 FÉDÉRATION INTERNATIONALE DE
   NATATION,                               Judge:   Hon. Jacqueline Scott Corley
17                                         Date:    April 8, 2021
                Defendant.                 Time:    9:00 a.m.
18                                         Crtrm.:  F—15th Floor

19

20

21                                         **REDACTED VERSION OF**
                                           **DOCUMENT SOUGHT**
22                                         **TO BE SEALED**

23

24

25

26

27

28

ISL'S OPP. TO FINA'S MOTION TO COMPEL,                    36144\14006623.2
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT.....................................................1

II. FACTUAL BACKGROUND .............................................................................................3

    A. FINA Follows In-Person MOU Negotiations by Insisting on Onerous Terms, Including a Definitive Agreement for the Future............................................3

        1. ISL Needed FINA To Agree to the MOU For ISL to Present the December 2018 Event. But the Parties Were Never Close to Agreement. ....................................................................................................4

        2. FINA Wanted Too Much Control Over ISL. ..................................................5

        3. ISL Was Clear That There Was Only Time to Agree to the December 2018 Event, and Not to All Future Principals Governing the ISL/FINA Relationship and Possibly Ending FINA's Boycott. ISL Revised the MOU Accordingly.............................................................5

        4. FINA Was Upset About ISL's MOU Changes, Including ISL's Focus Only On the December 2018 Event, and Responded By Raising FINA's   June 5, 2018 Boycott Memorandum. .................................6

    B. Consistent with the Witnesses' Post-Break Testimony, FINA Insisted on Unreasonable Terms in its Final Draft MOU and Rejected ISL's Request for a One-Event MOU; the Negotiations Collapsed. .......................................................8

        1. Mr. Grigorishin Contemporaneously Wrote to FINA What He and Mr. Nitz Testified to in Their Post-Break Depositions – That FINA's Sanction of the December 2018 Event Was Conditioned Upon Execution of a Definitive Agreement............................................................9

III. ARGUMENT ....................................................................................................................12

    A. ISL Counsel's Supposed Motive for Coaching – to Establish that FINA's MOU Terms Were So Unreasonable to Amount to a Constructive Refusal to Deal – Distorts and Minimizes ISL's Actual Conspiracy to Boycott Claims...........13

    B. Mr. Grigorishin's Post Break Testimony Was Consistent with Early Testimony and the Documents, Contrary to FINA's Assertions. ............................15

    C. Mr. Nitz's Pre-Break Testimony About Material MOU Differences Between the Parties Demonstrated that They Were Not "Very Close," Contrary to FINA's Mischaracterization.................................................................17

    D. Nitz's Post Break Testimony Regarding Concern About the MOU's "Definitive Agreement" Language Was Consistent With Earlier Testimony and the Documents. ......................................................................................................18

    E. FINA Offers No Basis in Fact or Law For Its Improper Coaching Charge, and Avoided Dispositive Evidence That Blocks FINA's Motion..........................19

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

i

36144\14006623.2

F.    ISL Counsel's On-the-Record Objections Did Not Constitute Coaching................21

G.    FINA's Counsel Has Never Identified Any Reason Under the Court's or Federal Rules Justifying Termination of Mr. Nitz's Deposition.............................23

IV.    CONCLUSION .....................................................................................................23

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

ii

36144\14006623.2

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Barajas v. Abbott Lab'ys, Inc.*,
  No. 18CV00839EJDVKD, 2018 WL 6248550 (N.D. Cal. Nov. 29, 2018)........................20, 23

*Docmagic, Inc. v. Ellie Mae, Inc.*,
  2011 WL 871480 (N.D. Cal. March 11, 2011) ..........................................................................14

*Ibarra v. Baker*,
  338 F. App'x 457 (5th Cir. 2009).............................................................................................20

*Klor's Inc. v. Broadway-Hale Stores, Inc.*,
  359 U.S. 207 (1959) .................................................................................................................13

*MetroNet Services Corp. v. Qwest Corp.*,
  383 F.3d 1124 (9th Cir. 2004)..................................................................................................14

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*,
  472 U.S. 284 (1985) .................................................................................................................13

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) .................................................................................................................13

*In re Stratosphere Corp. Sec. Litig.*,
  182 F.R.D. 614 (D. Nev. 1998).................................................................................................20

## FEDERAL STATUTE

Sherman Act § 1 ..............................................................................................................................13

## FEDERAL RULES

Fed. R. Civ. P.
  30(b)(6).................................................................................................................................1, 16
  30(c)(2)......................................................................................................................................21

## OTHER AUTHORITY

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-A .............................................20

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

iii

36144\14006623.2

## I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

FINA moves to strike testimony, to designate findings of facts and for sanctions, based on ISL founder Konstantin Grigorishin and COO Artem Nitz clarifying their earlier deposition testimony after a break.  FINA, however, recognizes that witnesses can and do clarify or correct their testimony during depositions and that attorneys speak with witnesses about the substance of their testimony.  Mot at. 13:11-14.  FINA presumably also recognizes that witnesses can correct their testimony within 30 days after the deposition.  FINA also recognizes that adverse parties can comment on such changes to challenge witnesses' credibility.  FINA counsel also stated he believes that witnesses can, and should be allowed to, consult with counsel during deposition breaks.  Thus, aside from other legal and factual deficiencies discussed below, FINA's foundational premise – that ISL counsel could not consult with clients when off the record in depositions – is meritless.

FINA nonetheless stopped Mr. Nitz's deposition and proceeded to breach Court rules and instructions: 1) by refusing to call the Court during the deposition; 2) by refusing to engage in a good-faith meet and confer; 3) by refusing to engage in an informal call with the Court prior to filing a motion;  4) by refusing to utilize the Court-ordered letter brief procedure; and 5) by instead tactically rushing to file its motion the day before the February 25, 2021 CMC.  FINA's breaching tactic during the CMC was to create a false equivalency to FINA's deposition conduct.

FINA defends its breaches and deposition conduct by advancing two demonstrably untrue, but hyped, foundational allegations as a supposed rationale for its violations and why the witnesses' testimony and FINA's motion matter.  The first is factual and the second is doctrinal.  Factually, FINA's motion first accuses ISL's counsel of coaching Mr. Grigorishin during a break on MOU negotiations regarding the canceled December 2018 Turin event.  But Mr. Grigorishin, a Rule 30(b)(6) witness, testified that he spoke with *Mr. Nitz, not with counsel*, about answering FINA's questions on the negotiations.  FINA then primarily takes issue with this portion of Mr. Nitz's testimony, which FINA also claims was coached: "[FINA's last MOU] ties [a] definitive agreement as a prerequisite for us to stage 2018 event . . . [I]f we want to stage 2018 event, we must have a definitive agreement in place as well."  Ex. 1 (Nitz Dep. at 105:11-106:23) (Mr. Nitz's mother tongue, like Mr. Grigorishin's, is Russian).  According to FINA, this so-called "conditionality"

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,   1
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

36144\14006623.2

testimony – that FINA's MOU made its sanction of the Turin event dependent on the execution of a long-term definitive agreement – was "indisputably false" and "concocted" by ISL's counsel, who supposedly coached Mr. Nitz to parrot this theory following a deposition break.  Mot. at 2:9-20.

But Mr. Nitz's and Mr. Grigorishin's testimony was consistent and true, both with the MOU language, with their pre-break testimony, and with contemporaneous documentation.  FINA counsel, however, chose not to ask relevant questions on documents going to the heart of FINA's motion's accusations.  FINA also refused to address these documents and prior testimony both in the meet and confer and in its motion; for to address this evidence would have blocked FINA's lynchpin argument that "there is no rational or credible explanation for how Mr. Nitz came up with that bogus argument other than Mr. Goteiner's intervention."  *See* Goteiner Decl. at ¶¶ 2-4; Mot. at 13:24-26.

FINA's second excuse for its rules violations is that at the Nitz deposition break, FINA was on the verge of a breakthrough on the supposedly "key," case-dispositive issue of whether "FINA's proposed terms to ISL [in the MOU] were so unreasonable as to be tantamount to a refusal to deal."  Mot. at 1:23-24.  FINA thus pushes its new false assertion that the MOU negotiations are legally at "the crux of ISL's antitrust claims[.]"  *Id.; see infra* at 13-14.  Having thus distorted ISL's actual FINA boycott claims as being a mere FINA contractual refusal to deal, FINA claims that the importance of this new issue drove ISL's counsel to "inject" his own theories into the witnesses' testimony.  Mot. at 1:11; *see also id.* at 2:12-14 (arguing that ISL's counsel coached Mr. Grigorishin because counsel "clearly understood the import of [the witness'] prior admission that FINA's terms were *not* unreasonable") (emphasis in original).

On its face, FINA's assertion about ISL's counsel understanding and motivation is nonsensical.  There could be no such motivation since both ISL's and FINA's counsel understood that the contemporaneous documents and pre-break testimony were consistent with the witnesses' post-break testimony.  Further, in addition to mischaracterizing ISL's boycott claims, FINA is factually and legally wrong with its claimed refusal to deal "breakthrough" and that the parties were "very close" to a deal.  Mot. at 4:16.  **Factually**, the ISL witnesses were clear both before and after the deposition breaks that FINA's MOU demands were unreasonable.  FINA attempts to

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

2

36144\14006623.2

brush off these material MOU disagreements as just "a few problematic terms."  Mot. at 1:15.  But FINA's motion also admits that the disagreements were "material."  Mot. at 4:15.  Also, FINA concedes that the "refusal to deal" MOU would **not** have resolved the ongoing boycott, but only would at most have permitted ISL to present the December 2018 event if ISL had agreed to FINA's terms.  Indeed, FINA specifically avoids an October 3, 2018 email from Executive Director Cornel Marculescu that confirms both that the ISL witnesses were telling the truth on their "conditionality" interpretation of the MOU language, and that the parties were far from "very close" in MOU negotiations – in that email, Mr. Marculescu explicitly re-brandished his June 5, 2018 boycott threat.  **Legally**, Mr. Marculescu's October 3 threat *as part of the MOU negotiations themselves* further re-confirms FINA's extortion/boycott scheme.  *See infra* at 7:4-13.  FINA's contractual refusal to deal theory is sheer straw to house its motion's false accusations.

Notwithstanding FINA's motion's rules violations, its false accusations of suborning perjury, and that the Court "strongly encouraged [the parties] to resolve the issues motivating FINA's sanctions motion by Plaintiffs' opposition deadline" (Dkt. 261), FINA again doubled down during the post-filing meet and confer.  In response to FINA's pronouncement that "[c]oaching a witness is not allowed at all," (Mot. at 14:12-14), ISL made an offer consistent with some case law (*see infra* at n.3): embargoing all party deposition witnesses from speaking with anyone during depositions breaks.  FINA tellingly declined.  *See* Ex. 2 (March 10 email from FINA counsel); Goteiner Decl. at ¶ 6.  FINA also refused in the meet and confer to respond to uncontroverted evidence disproving its "key" coaching allegations, to participate in an oral meet and confer, and to resume the deposition.  *See id.* (March 3 and 5 emails) and *infra* at 23:3-16.  ISL would have been well within its rights to cross-move to terminate Mr. Nitz's deposition because of FINA's deposition conduct and frivolous motion.

## II.      FACTUAL BACKGROUND

### A.      FINA Follows In-Person MOU Negotiations by Insisting on Onerous Terms, Including a Definitive Agreement for the Future.

FINA's alleges that ISL's counsel coached a portion of Messrs. Grigorishin's and Nitz's testimony relating to the parties' MOU negotiations in the September-October 2018 period.

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

3

36144\14006623.2

1  FINA's premise and representation to the Court is that that the "parties were very close" to

2  agreement in the midst of FINA's continuing 2018 boycott and ongoing threats to the swimmers

3  and national federations if they dared work with FINA.  *Compare* Mot. at 4:16 *with* Dkt. 90 at 11-

4  18 (summarizing FINA's anticompetitive conduct from June to October 2018).  FINA's

5  representation is false.  FINA also misdirects the discussion by focusing on Mr. Grigorishin's not

6  remembering relevant documents, documents which FINA chose not to show Mr. Grigorishin (or

7  Mr. Nitz, or Mr. Kahn, another witness testifying on the MOU facts), as well as on Mr.

8  Grigorishin's ambiguous testimony resulting from English limitations.  (ISL admits that Mr.

9  Grigorishin should have more frequently relied on his deposition Russian translator).

10
11      1.    **ISL Needed FINA To Agree to the MOU For ISL to Present the December 2018 Event. But the Parties Were Never Close to Agreement.**

12        First, from the beginning and throughout the MOU "negotiation" period, it is dubious

13  whether FINA was ever serious about reaching an MOU agreement minimally acceptable to ISL.

14  On September 19, 2018, the same day that ISL requested an in-person meeting with FINA to

15  discuss the MOU, ████████████████████████████████████████████

16  ███████████████████████████████████████████

17  *See* Ex. 3 (ISL078419); Ex. 4 (FINA-0000361).  FINA's goal was ████████████

18  █████████████████████████████████████████████████

19  ████████████████ Ex. 4 (FINA-0000361).  FINA ███████████████

20  ███████████████████████████ *See* Ex. 5 (FINA's Supp. Priv.

21  Log at 7) ██████████████████████████

22        ISL of course had no choice but to attempt to reach some agreement for a December 2018

23  event, which event (then Las Vegas) FINA previously derailed in late May 2018.  *See* Dkt. 86 at

24  11-19 (MTD Order).  After an in-person discussion between the parties on September 26, 2018,

25  FINA sent a draft MOU to ISL the next day that did not reflect many of the terms discussed in the

26  meeting.  *See* Ex. 6 (ISL078255) (Mr. Nitz to ISL CEO Ali Khan regarding FINA's draft: "This is

27  even worse than the previous version[.]"); Ex. 7 (K. Grigorishin Dep. at 337:24-338:6) ("And

28  when we received this letter for 10 years contract, of course, it was not like – it was not look like

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

4

36144\14006623.2

1   our agreement, oral agreement during our meeting in FINA office.  And of course, FINA didn't

2   look like a reliable partner."); Ex. 8 (A. Khan Dep. at 391:16-21) ("I would say almost every

3   meeting seemed amicable, to be honest.  It's what happened after the meetings.").

4   ## 2.   FINA Wanted Too Much Control Over ISL.

5   On September 28, 2018, Mr. Grigorishin wrote to FINA VP Husain Al Musallam

6   expressing concern about FINA's draft, noting that the MOU "is not acceptable not because of

7   some items, but because of the spirit of that agreement . . . Of course we promise to respect all

8   FINA technical rules but it doesn't mean that we should be under full control of FINA."  Ex. 9

9   (ISL109048).  By "control," Mr. Grigorishin was referring to the veto power FINA reserved for

10  itself in the September 27 draft MOU (and again in its later, final October 9 draft) over, among

11  other things, the ISL event's format, venue, and how it would be commercialized.  *See* Ex. 10

12  (ISL036999).  In essence, FINA would recognize ISL's event as part of its international calendar

13  and hopefully no longer to interfere with ISL's efforts to partner with national federations and

14  swimmers.  For that "privilege," ISL would lose naming rights over the event (*i.e.*, it would be

15  FINA-branded), be subject to FINA's whims over how the event would be structured, be wholly

16  responsible for financing the event, and still pay FINA a $50 million fee over ten years.  *Id.*[1]

17  ### 3.   ISL Was Clear That There Was Only Time to Agree to the December
18        2018 Event, and Not to All Future Principals Governing the ISL/FINA
          Relationship and Possibly Ending FINA's Boycott. ISL Revised the
19        MOU Accordingly.

20  Mr. Grigorishin understood that the parties were far apart on a long-term MOU.  ISL was

21  also in the midst of a FINA boycott that derailed the Las Vegas event and threatened ISL's access

22  _____

23  [1] FINA's motion makes much of ISL's Complaint allegation that FINA demanded $50 million to permit ISL to function.  Mot. at 1:10, 3:24.  FINA's notion is that this allegation erased ISL's allegation

24  and evidence of a boycott case, transforming the case into a pure contractual refusal to deal.  Mot. at 1:7-11.  ISL demonstrates below that FINA's legerdemain is frivolous.  *See infra* at 13-14.  Further, ISL

25  explained in discovery responses that the Complaints erred in that FINA did not make the demand for $50 million.  *See* ISL's Resp. No. 34 to FINA's RFAs, Set One.  Instead, Mr. Grigorishin thought in

26  2017 that such tribute was necessary before he better understood the law and his rights to challenge FINA's monopolistic abuses.  *See* Ex. 11 (Grigorishin Dep. at 122:7-16) ("[M]y view I changed

27  because I was – I was reading the article about European court decision about, as I remember, skating federation.  When the European court told that international governing bodies are not allowed to punish

28  the athletes if they are participating in some commercial competition.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

5

36144\14006623.2

to the US market and its overall existence, and meanwhile ISL's inaugural December event was to launch in less than three months.  Mr. Grigorishin thus expressed to FINA his desire for a binding agreement whereby FINA would sanction only the December 2018 event and delay into the future the attempt to negotiate the end of the FINA boycott with a long-term cooperation agreement.  Ex. 9 (ISL109048) (Grigorishin to Al Musallam: "My suggestion: to prepare very light document before announcement between FINA and [ISL] just about December event, that we are strategic partners and have no conflict and working seriously on long term agreement.").

A few days later, on October 1, ISL sent to FINA a stripped-down version of the agreement whereby FINA would approve only the December 2018 event, deferring to the next year work on a definitive agreement for 2019 and beyond.  Ex. 12 (ISL020195).  ISL removed from the agreement the several onerous terms that allowed FINA to retain discretion over how the event was organized and commercialized, as well as ISL's payment of any monies to FINA.  *Id.*; *see also* Ex. 7 (Grigorishin Dep. at 314:19-25) ("[Our approach was] don't pay anything in 2018 . . . and, in parallel, to negotiate with FINA about long-term agreement and to be sure that we are not in conflict with FINA, and FINA will not threaten the athletes and federation anymore.").  In its cover email attaching the MOU, Mr. Kahn for ISL writes that it has "intentionally reduced the original MOU in order *to only focus on respective responsibilities between FINA and [ISL] for [the] December 2018 event."*  Ex. 12 (ISL020195) (emphasis added).

4.    **FINA Was Upset About ISL's MOU Changes, Including ISL's Focus Only On the December 2018 Event, and Responded By Raising FINA's June 5, 2018 Boycott Memorandum.**

FINA was incensed with the changes.  *See* Ex. 13 (ISL078570) (Marculescu to ISL on October 3, 2018: "Please note that FINA cannot agree with most of the changes in the [MOU] . . . . Personally, I am not sure that Energy Standard Group really wants to have a partnership or relationship with FINA.").  FINA's October 3 response also made clear reference to its earlier June 5 Olympic-banning threat to national federations and swimmers – *i.e.*, FINA's letter stating that federations' partnerships with ISL violated FINA rules, resulting in USA Swimming backing away from hosting its Las Vegas event – in effect threatening ISL again, hammering home to ISL that FINA still had the power to force the cancellation of ISL's events if ISL did not agree to FINA's

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

6

36144\14006623.2

onerous terms.  *Id.*  ("Also we would like to underline one more time what it was specified in the FINA Memorandum of 5th of June 2018 sent to all National Federations that FINA does not recognize the International Swimming League.").

Also pithing FINA's "bogus" mischaracterization of the witnesses' testimony on the conditionality of FINA's December 2018 terms, FINA in Mr. Marculescu's October 3 letter was crystal clear about its displeasure with ISL's reduced scope to the December event.  *See id.*  The letter further disproves FINA's motion premise that FINA was ever prepared to agree to a single-event MOU.[2] (Marculescu wrote: "Now what we have received from you it changes everything of what we discussed.  Adding the new event 2018 and deleting all what was agreed to in the original agreement with FINA and your group.").  *Compare* Mot. at 4:6-8.  FINA's intent was absolutely clear given that ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████   *See* Ex. 15 (FINA-00003093); Ex. 16 (FINA-00000366).

Also consistent with Mr. Grigorishin's desire for a one-event MOU given the limited time remaining before ISL's December 2018 event, ███████████████████████████ ███████████████████████████   *Id.* ███████████████████████████████████████████████████ ██████████).

ISL sent a revised proposal the next day that attempted to address some of FINA's objections (including, for instance, that the event organizer not be named "International Swimming League," which FINA apparently considered a threat to its role as international federation for swimming).  ISL's draft was still limited to only the 2018 event and did not provide FINA the fee, naming rights, or veto power over the event's organization and commercialization, as FINA sought before.  Ex. 17 (ISL020123); Ex. 1 (Nitz. Dep. at 71:19-21) ("So we agreed to

---

[2] FINA's counsel avoided questioning Messrs. Grigorishin, Nitz and Kahn on FINA's October 3 response, presumably to try to buttress its refusal to deal theory.  Terminating Mr. Nitz's deposition without examining him on this correspondence also neatly served FINA's tactic to claim that Mr. Nitz's testimony was "indisputably false."  Mot. at 2:12.

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC
7

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

36144\14006623.2

1   name our event, as they wished, 'Energy Standard Cup,' 'Energy for Swim,' whatever.  We just

2   wanted to have that event happen.").

3        **B.**    **Consistent with the Witnesses' Post-Break Testimony, FINA Insisted on**
    **Unreasonable Terms in its Final Draft MOU and Rejected ISL's Request for a**

4               **One-Event MOU; the Negotiations Collapsed.**

5        On October 9, FINA reverted with its final MOU draft, which put the negotiations "back to

6   square one."  Ex. 1 (Nitz Dep. at 71:21-25, before the lunch break and FINA's accused coaching)

7   ("We thought we had common understanding of key terms that were laid out in our MOU – our

8   version of MOU, post the meeting, but what we had received back is back to square one.").

9   FINA's motion admits that there were "just a few *material* differences between ISL's last proposal

10  and FINA's last proposal."  Mot. at 4:15-16 (emphasis added).  That admission of material

11  differences alone destroys FINA's premise that the parties were "very close" on the MOU, even

12  without FINA's continuing boycott threats in Mr. Marculescu's October 3 email.  Mot. at 4:16.

13       And the differences were indeed material: FINA refused to relent on having the final say

14  over how ISL's event – financed completely by ISL and meant to be the showcase event for Mr.

15  Grigorishin's vision of swimming competitions – was organized and commercialized.  As Mr. Nitz

16  testified before the break about FINA's draft, "[i]t needs to be a FINA-branded event.  They

17  wanted to maintain control over which city we choose, which venue we choose.  They wanted to

18  have the right of approval of commercial partners that were checked, broadcast partners that were

19  checked, and they wanted us to pay a fee, $2 million, as far as I remember, for that fantastic

20  service . . . . [W]e found ourselves in the process that was just not going anywhere.  We didn't see

21  it as a – as they wanted to agree."  Ex. 1 (Nitz Dep. at 71:25-72:14).  And despite insisting on input

22  over the event's organization, and having already interfered with ISL's efforts to partner with

23  swimmers and federations, FINA also demanded that ISL indemnify FINA for all claims arising

24  out of the event, which ISL found highly problematic.  Ex. 8 (Khan Dep. at 450:7-13) ("I'm saying

25  decisions we have made where FINA has had input and yet FINA – and then FINA wants to be

26  indemnified from those very decisions is unacceptable.  Either you're in or you're out.").

27       Importantly, FINA's final draft MOU was *not* the "short-term, one-event version of the

28  contract" that Mr. Grigorishin and ISL requested.  Mot. at 6:8.  Consistent with Mr. Nitz's pre-

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

8

36144\14006623.2

1   break testimony and the MOU language itself, FINA conditioned its approval for the December

2   2018 event on the parties' execution of a later, definitive agreement, which Mr. Grigorishin had

3   already rejected in his late September 2018 message as impractical given the limited time to

4   organize the Turin event.  Ex. 18 (FINA-00002369) (Clause 2.1 of October 9, 2018 draft MOU

5   provided: "██████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ████████████████████████████████████ then also stating in

8   clause 5 that ISL's payment of a fee to FINA will be further defined ████████████

9   ██████████  Ex. 9 (ISL109048).  ISL's October 4 MOU noted that this definitive agreement

10  would relate only to ████████████████████████████████

11  ██████████████████████████████████ – *i.e.*, ISL's MOU would

12  have FINA agreeing to the December 2018 event, and the later  "definitive agreement" would

13  relate only to events 2019 and after.  Ex. 17 (ISL020123) (emphasis added).  FINA's responsive

14  draft MOU, however, indicated that the definitive agreement would govern *all* facets of the

15  parties' relationship, including FINA's sanction of the December 2018 event.  Ex. 18 (FINA-

16  00002369) ██████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ██████████  (emphasis added).  Not only did FINA's final MOU proposal fail to provide FINA's

19  sanction for ISL's inaugural 2018 event, but by itself it would have done nothing to halt FINA's

20  long-term boycott from continuing into the future.

21          1.      **Mr. Grigorishin Contemporaneously Wrote to FINA What He and**
22                  **Mr. Nitz Testified to in Their Post-Break Depositions – That FINA's**
                    **Sanction of the December 2018 Event Was Conditioned Upon**
23                  **Execution of a Definitive Agreement.**

24          Contrary to FINA's motion's key assertion, ISL had contemporaneously in 2018

25  interpreted FINA's agreement the same way; a few days after receiving FINA's final draft, Mr.

26  Grigorishin wrote to FINA frustrated that FINA's proposal conditioned approval of the December

27  2018 event on execution of the definitive agreement: "I thought we had already come to common

28  understanding that now we are going to sign a very simple document relating to December 2018

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,        9        36144\14006623.2
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

1   only and in parallel will start work on a definitive contract for 2019 and onwards[.]"  Ex. 19

2   (ISL109011).  Thus, Mr. Nitz's "conditionality" point about the definitive agreement, as FINA

3   branded it, was contrary to FINA's mischaracterization and obviously not "concocted" by ISL's

4   counsel; FINA plainly injected it into FINA's final draft MOU in October 2018.  It is significant

5   again that while FINA examined Mr. Grigorishin on this document, counsel declined to examine

6   him on what it says is FINA's core, newfound contractual refusal to deal theory and FINA's

7   premise for its motion.

8        But FINA nonetheless accuses that Mr. Nitz's, and presumably Mr. Grigorishin's,

9   testimony "is indisputably false[.]"  Mot. at 2:12.  FINA's accusation is critical to its key motion

10  point: *i.e.*, a witness and lawyer may communicate during breaks so long as the lawyer does not

11  structure the witness' false testimony.  Of course, FINA is right that lawyers may not suborn

12  perjury.  But contrary to its premise, FINA does not, and cannot, support its accusation that

13  Mr. Nitz's post- or pre- break testimony was false or inconsistent with either the MOU language

14  or the numerous documents exchanged between the parties.  *See* Mot. at 4:9-11.  FINA simply

15  ignores the MOU language that supports Mr. Nitz's testimony and that disproves FINA's

16  inflammatory, "indisputably false" accusation.  *Compare* Mot. at 2:9-12, *with supra* at 8-9.  At

17  most, FINA forlornly tucks its promised "see below discussion" of the so-called indisputably false

18  testimony – FINA's marquis charge – in a footnote, which still does not address Mr. Nitz's

19  testimony or the numerous dispositive documents.  Rather, FINA's footnote 1 concludes that

20  ISL's inaugural event was not "conditioned . . . on execution of the definitive agreement" –

21  ignoring that such conditionality is baked *directly* into FINA's MOU as well as reflected in the

22  October 2-3 Marculescu exchange.  *See supra* at 9:1-18.

23       FINA then dilutes and hedges its inflammatory accusation about Mr. Nitz's testimony being

24  "indisputably false" and that Mr. Goteiner suborned perjury: "But even if Mr. Goteiner's argument

25  was aligned with his client's testimony, *this is beside the point*."  Mot. at 14:11-12 (emphasis

26  added).  Obviously, if Mr. Nitz's testimony is grounded in documents and is true contrary to

27  FINA's perjury claim, that fact cannot be "beside the point."  It can only be *that allegedly false*

28  *testimony* midwifed by improper coaching that distinguishes FINA's unprecedented motion for

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

10

36144\14006623.2

1   sanctions and designated facts from what FINA acknowledges as proper run-of-the mill

2   consultations between lawyer and client-witness.  Mot. at 13:11-16 ("We are not blind to the reality

3   that . . . during breaks attorneys speak to witnesses about how the testimony is going and so forth,

4   unavoidably touching on substance.  However . . . the attorney crosses a line when she influences

5   the witness to alter testimony in a false or misleading way.") (citation omitted).  And yet knowing

6   from testimony and documents that Mr. Nitz's testimony was not false, FINA nonetheless doubles

7   and triples down on its irresponsible accusations and waste of the Court's time.

8        FINA's October 9 draft marked the end of the parties' negotiations.  FINA next initiated a

9   formal reinterpretation of its Rule BL 12.3 to require FINA's approval for any event, like ISL's

10  Turin event, where international swimmers are not competing on behalf of their respective

11  countries.  FINA's rule reinterpretation was clearly targeted at ISL's event.  *See* Ex. 20 (GE-

12  00000288) (Neuburger, regarding the BL 12.3 rule reinterpretation: ███████████████████

13  ████████████████████████  And FINA's false motion- and refusal to deal-specific claim

14  that it was always "ready to sanction" ISL's event ignores that: (1) ISL never *needed* FINA's

15  sanction under a plain reading of FINA's own rules, and (2) FINA had already gone to extreme

16  lengths earlier in the year to destroy ISL's planned events in Las Vegas and London at all costs.

17  *See, e.g.,* Ex. 21 (USAS-000720) (USA Swimming's Mike Unger: "We are being asked to host in

18  Las Vegas.  But FINA doesn't like it."); Ex. 22 (USAS-001306) (British Swimming's Jack

19  Buckner: "British Swimming won't be staging an event this year – because of the FINA

20  situation").  Nonetheless, FINA's rule reinterpretation forced ISL to cancel its event.

21       As the record shows, and as ISL will argue at the appropriate time, nothing about the MOU

22  negotiations could support FINA's newfound core theory that "ISL's alleged injury was self-

23  inflicted" for its refusal to agree to FINA's plainly onerous terms.  These were terms that FINA

24  had no basis to extract from ISL in the first place, given that FINA *own threats* (not its rules, or

25  the law) prevented national federations or swimmers from partnering with ISL for events where

26  swimmers were not competing on behalf of their respective member nations.

27  //

28  //

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC                    11                    36144\14006623.2

**III.   <u>ARGUMENT</u>**

The crux of FINA's argument is that ISL's counsel, disappointed that both Messrs. Grigorishin and Nitz "identified no insurmountable issues with FINA's draft MOU," coached the witnesses during the breaks to try to change the "essential character" of their testimony.  Mot. at 8, 13.  That argument is nonsensical as well as made in bad faith.  First, it assumes away all the above evidence of serious material differences between the parties of which both ISL's and FINA's counsel were aware, but which FINA's counsel chose not to examine the witnesses on.  Second, the test in this situation, even were there any merit to FINA's recasting of ISL's complaint, is not "insurmountable issues."  It is enough to sink FINA's "very close" characterization that FINA also admitted "material differences" in the parties' positions; FINA evaded in its motion squarely addressing the significance of differences that both Messrs. Nitz and Grigorishin identified.

Third, and relatedly, ISL has demonstrated a concerted horizontal boycott claim, not just what FINA would call a unilateral refusal to deal claim.  ISL is *not* restricted to recasting its allegations "within the very narrow antitrust doctrine about constructive refusals-to-deal" so that FINA could fabricate a motive for FINA's dark coaching fantasy.  Mot. at 11:26-28.  Further, FINA's final MOU (which FINA claims *at most* addresses just one December event) would not have ended FINA's continuing boycott; Mr. Marculescu's October 3, 2018 email, brandishing the June 5 Memorandum, independently establishes that harsh October 2018 reality for ISL.  Ex. 13 (ISL078570).

Fourth, as demonstrated above, the post-break clarifications from both witnesses were entirely consistent with both their earlier testimony, which identified these serious material issues with FINA's proposed terms, and the overwhelming weight of the record.  Finally, ISL counsel's alleged "subsequent objections and interjections" in response to a few of FINA counsel's post-break questions were not coaching because they were proper and never suggested an answer to the witness.  Indeed, ISL counsel never instructed Mr. Nitz not to answer except (properly) once when FINA's counsel attempted to invade the attorney-client privilege.  In any event, given the Court's February 25 Order that counsel shall now object only on the basis of privilege and privacy, the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

12

36144\14006623.2

1   parties would have been capable of completing the remaining depositions without resorting to the

2   Court hearing FINA's motion.

### A.   ISL Counsel's Supposed Motive for Coaching – to Establish that FINA's MOU Terms Were So Unreasonable to Amount to a Constructive Refusal to Deal – Distorts and Minimizes ISL's Actual Conspiracy to Boycott Claims.

5       FINA suggests that ISL's counsel was motivated to coach because both witnesses had

6   testified that FINA's offered MOU was reasonable (they did not), and that for ISL's case to

7   remain viable, it needs to fit its allegations "within the very narrow antitrust doctrine about

8   constructive refusals-to-deal, where a monopolist with a duty to deal only offers terms that 'would

9   not be profitable for the plaintiff to accept.'"  Mot. at 11:26-28 (citations omitted).  FINA's

10   argument is as wrong as it is consistent with FINA's ongoing mischaracterizations of ISL's case as

11   being moot and limited to the Turin event with no US targeting.  *See* Dkt. 253 at 22:20-25.

12       ISL's allegations and the evidence to date go far beyond a simple unilateral refusal-to-deal

13   theory.  For example, FINA's coordination with national federations to enforce a group boycott

14   against ISL is sufficient to establish a *concerted* refusal to deal under Section 1 of the Sherman

15   Act – and FINA's boycott against ISL was so egregiously anticompetitive to warrant application

16   of the *per se* rule.  *See Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing*

17   *Co.*, 472 U.S. 284, 290 (1985) ("This Court has long held that certain concerted refusals to deal or

18   group boycotts are so likely to restrict competition without any offsetting efficiency gains that

19   they should be condemned as per se violations of § 1 of the Sherman Act."); *see also Klor's Inc. v.*

20   *Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212-13 (1959) ("Group boycotts, or concerted refusals

21   by traders to deal with other traders, have long been held to be in the forbidden category [of an

22   unlawful restraint of trade].  They have not been saved by allegations that they were reasonable in

23   the specific circumstances . . . [T]he Sherman Act has consistently been read to forbid all contracts

24   and combinations which tend to create a monopoly[.]") (citations omitted); *see also NYNEX Corp.*

25   *v. Discon, Inc.*, 525 U.S. 128 (1998) (approving of application of *per se* rule in the boycott context

26   where there is a horizontal agreement).

27       Further, FINA's explicit scheme to threaten banning member federations and swimmers

28   from participating in the Olympic Games meant that FINA had practical and illegal control over

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

13

36144\14006623.2

the federations and swimmers, not control over a product or resource that was FINA's property to choose to provide access as FINA legally wished.

Ironically, review of the MOU correspondence and Mr. Marculescu's October 3 email (which FINA avoids) stresses the difference between FINA's mischaracterization of ISL's claims and how FINA used the MOU negotiation to attempt to extort ISL into no longer being a competitor out of FINA's control. As Mr. Marculescu wrote: "Also we would like to underline one more time what it was specified in the [the June 5 memorandum] sent to all National Federations that 'FINA does not recognize the International Swimming League[.]'" Ex. 13 (ISL078570). As Mr. Neuburger wrote on October 20, "ISL cannot exist" to compete against FINA, and ISL was "truly crazy" for trying to establish itself. Ex. 23. As far as Mr. Neuburger was concerned, FINA was in an existential battle with ISL: "We [FINA] must win, we will win." Ex. 24. Mr. Marculescu agreed, viewing ISL's attempt to enter the marketplace as "very dangerous" to FINA's existence. *See* Ex. 25.

Thus, it is not surprising that FINA's cited decisions are light years away from the facts at bar. FINA's authorities involve unilateral refusals to deal where the defendant had some legal basis to control an essential facility or resource to which the plaintiffs sought access and which defendant was well within its rights to negotiate. Mot. at 11-12. In both *MetroNet Services Corp. v. Qwest Corp.* and *Docmagic, Inc. v. Ellie Mae, Inc.*, the defendants were accused of improperly failing to provide access to networks or software that the defendants had themselves developed. *See* 383 F.3d 1124 (9th Cir. 2004); 2011 WL 871480 (N.D. Cal. March 11, 2011). Here, in contrast, FINA had no legitimate grounds to prevent federations and swimmers from partnering with ISL in the first place. In short, FINA's whole basis for its argument regarding the relevance of Mr. Nitz's and Mr. Grigorishin's testimony collapses since FINA's conduct was not just refusing to deal, which a contract might have remedied. FINA's new defense distorts common sense and antitrust principles by presuming that FINA was legally allowed to extort *any* terms from ISL – reasonable or not.

That ISL, in an effort to avoid costly litigation, nevertheless attempted to negotiate with FINA over terms that FINA had no right to demand in the first place does not excuse or erase FINA's illegal boycott.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

14

36144\14006623.2

**B.      Mr. Grigorishin's Post Break Testimony Was Consistent with Early Testimony and the Documents, Contrary to FINA's Assertions.**

FINA's allegation that Mr. Grigorishin's coached, post-break testimony – where he testified that he had called Mr. Nitz and recalled "that ISL was troubled by [FINA's initial MOU] because ISL had expectations arising out of the Lausanne meeting that the parties were going to execute a short-term contract with no fee attached" (Mot. at 6:25-27) – is based on a highly selective reading of his transcript and ignores both his contemporaneous documents and that he offered virtually identical testimony prior to the break.  FINA concedes that "if [Mr. Grigorishin's testimony were] all that happened, FINA would not be filing this motion." Mot. at 7:6-7.  Indeed, there was nothing improper or objectionable about Mr. Grigorishin's testimony, and FINA apparently mentions it only to try to create an ersatz pattern of changed testimony.  FINA tellingly seeks no remedies relating to Mr. Grigorishin's deposition, such as an order striking any of his testimony.

But discussion of Mr. Grigorishin's testimony is relevant not just to demonstrate that there was no pattern, but also that nothing fundamentally different occurred with Mr. Nitz's testimony—both witnesses' testimony was consistent with prior testimony.  Prior to the break at issue in Mr. Grigorishin's deposition, FINA first questioned the witness regarding the initial draft MOU that FINA sent to ISL after the parties' in-person September 26, 2018 meeting.  Far from testifying that the draft was acceptable, as FINA claims (Mot. at 5:20-6:6), Mr. Grigorishin testified that ISL was "ready to *start negotiation* on the [basis] of this MOU.  So we didn't say no. We didn't say yes.  We were ready to negotiate on the [basis] of this MOU."  Ex. 7 (Grigorishin Dep. at 302:1-4) (emphasis added).  Being "ready to negotiate" is far from believing FINA's draft to be acceptable.  Further, FINA chose not to ask why Mr. Grigorishin was ready to negotiate. What choice did ISL have but to be ready to negotiate and to treat the first MOU as acceptable to start negotiations, except to initiate an expensive litigation?

Similarly, during Mr. Grigorishin's testimony about FINA's final, October 9, 2018 draft MOU (sent in response to ISL's request for a short-term, one-event version of the MOU), Mr. Grigorishin testified that FINA's draft presented "some obstacle" and was again merely "a good

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

15

36144\14006623.2

starting point for negotiation." *Id*. at 309:6-8.  ISL was also "ready to negotiate" about FINA's $2 million fee demand, but he did not state the amount that he would be willing to pay or how much FINA would accept.  *Id*. at 310:1-14.  Crucially, by his deposition testimony where FINA alleges there was coaching, Mr. Grigorishin had already testified that ISL desired a "short MOU, about just one event in 2018, and in parallel to discuss our cooperation with FINA for the future," that ISL's approach was "don't pay anything in 2018" and that "if you pay some money to FINA, it's better to receive some guarantees for the future" so that ISL is not "in the same position, that we will be blocked in 2019."  *Id*. at 305:23-306:2; 316:5-11 ("We would like to receive some guarantees from FINA if we're paying them.").  This is virtually identical to the testimony that FINA argues was the result of coaching: that ISL was to "receive an approval for [its] 2018 competition for free" and FINA sent ISL "a letter with 2 million for one year without any guarantees for 2019," which didn't "look like a reliable partnership.  Because, again, why we should pay 2 million without any guarantee for 2019?"  *Id*. at 337:20-338:12.

Further, there was nothing irregular or objectionable when Mr. Grigorishin testified that during the break he "called *Artem Nitz* to refresh [his] memory" about the MOU negotiations.  *Id*. at 337:13-16 (emphasis added).  Mr. Grigorishin was ISL's Rule 30(b)(6) witness regarding the ISL-FINA MOU discussions, and such witnesses are encouraged to speak with other organizational members as necessary in their preparation.  Indeed, FINA's counsel had earlier complained that he thought Mr. Grigorishin was not adequately prepared for his Rule 30(b)(6) testimony.  In response, ISL offered on the record to have the witness review any specific documents on which FINA wanted him to testify.  *See* Ex. 11 (Grigorishin Dep. at 126:2-21).  FINA cannot both decry the extent of Mr. Grigorishin's preparation then also condemn his speaking with another ISL officer (Mr. Nitz, who also participated in the MOU negotiations) to refresh Mr. Grigorishin's recollection about events from two and a half years ago, particularly given the number of exchanges Mr. Grigorishin had in connection with ISL, in addition to his other entrepreneurial enterprises.

//

//

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

16

**C.    Mr. Nitz's Pre-Break Testimony About Material MOU Differences Between the Parties Demonstrated that They Were Not "Very Close," Contrary to FINA's Mischaracterization.**

As FINA acknowledges, Mr. Nitz testified extensively before the break about the specific terms in FINA's proposal that ISL considered unacceptable. Mot. at 8-9. Such testimony was consistent with his post-break testimony about why FINA's MOU drafts were problematic.

*First*, Mr. Nitz took issue with FINA's request that the event be FINA-branded. Ex. 18 (FINA-00002369); Ex. 1 (Nitz. Dep. at 91:14-92:1) ("It's our event, it's not FINA's event. It's our event. So we wanted that name to be ours as much as possible."). FINA's retort that "ISL was the first to propose FINA branding" (Mot. at 8:16-17) ignores that ISL's MOU drafts continuously removed the FINA branding, and FINA's MOU draft replaced it. See Exs. 10, 12, and 18 (ISL036999; ISL020195; FINA-00002369).

*Second*, Mr. Nitz objected to Section 2.2(a), which granted ISL the right to organize the event ███████████████████████████████████████████████████████ Ex. 18 (FINA-00002369, 00002372). FINA's insistence on having veto power over the event's format was a non-starter, given, first, the event was supposed to showcase **ISL**'s innovative vision for competitive swimming, and second, involving FINA as another decision maker was impractical given the limited time left to organize the event. Ex. 1 (Nitz. Dep. at 92:15-93:4) ("But being two months away from a requirement to stage an event, we were not willing to discuss the format. And, actually, the format is our proprietary know-how. We came up with the format that we think is – is more interesting to watch, more media friendly, more TV friendly."). FINA argues that Mr. Nitz was not able to identify any *actual* disagreements that the parties had regarding format. Mot. at 8:21-23. But that argument wrongly assumes that the parties (despite never executing the MOU) were far enough along in their planning for disagreements to arise. And whether such disagreements had yet arisen does not mean ISL was unreasonable to reject the term; that FINA under Section 2.2(a) would be restricted only from ███████████ withholding its approval – whatever that means – was unworkable given ISL was pumping millions of dollars into the event and FINA was still invoking its settlement correspondence its June 5 boycott threat.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

17

36144\14006623.2

1          ***Third***, Mr. Nitz made a similar objection to Section 2.2(b), which similarly provided that

2    how ISL was to commercialize the event was to be ███████████████████████████

3    ████████████████████ Allowing an international federation discretion over how a league

4    was to commercialize its event was also unprecedented.  Ex. 18 (FINA-00002369); Ex. 1 (Nitz

5    Dep. at 100:14-25) ("But in terms of civilized market practice of other sports . . . governing bodies

6    do not intervene into the way professional leagues can generate commercial deals.").

7          ***Finally***, Mr. Nitz testified to the unreasonableness of FINA's consideration clause, which

8    stated that ISL was to pay FINA a $2 million fee.  Ex. 18 (FINA-00002369).  Like Mr.

9    Grigorishin, Mr. Nitz testified that it "sounded [like] quite [a] heavy fee for – for one event" and

10   "was deemed as a negotiation point that could be further negotiated down."  Ex. 1 (Nitz. Dep. at

11   104:2-7).  But again, that does not mean that FINA's $2 million demand was reasonable, or that

12   the parties were bound to reach an agreement.

13         Further, and also contrary to FINAs "very close" narrative, Mr. Nitz had *already testified*

14   that FINA's September 27, 2018 MOU draft, which did not reflect the terms discussed in the

15   parties' in-person meeting, "put [ISL] to square one in the negotiations process."  Ex. 1 (Nitz Dep.

16   at 70:23-25).  ISL "thought it – it would be feasible for parties to negotiate a short-term

17   agreement, a short-term MOU and that was focused only on 2018 event.  And we did want to have

18   a longer term agreement, but to be discussed later, after concluding the 2018 event."  Ex. 1 (Nitz

19   Dep. at 71:2-7).  Then, immediately *before* the lunch break, Mr. Nitz testified about the problems

20   with FINA's consideration clause.  The clause specifically mentions that █████████████

21   ████████████████ ISL was to pay FINA the $2 million fee and, pursuant to the definitive

22   agreement, ████████████████████████████████████████████████

23   ███████  Ex. 18 (FINA-00002369); Ex. 1 (Nitz Dep. at 103:12-17).  This testimony aligns

24   completely with his post-break FINA-alleged "coached" testimony.

25       **D.**    **Nitz's Post Break Testimony Regarding Concern About the MOU's**
**"Definitive Agreement" Language Was Consistent With Earlier Testimony**

26               **and the Documents.**

27          The parties broke for lunch, and Mr. Nitz noted that he "was taking a look over the break

28   [at] the MOU" and "wanted to follow up" on the previous questions regarding issues with the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

18

36144\14006623.2

1   agreement.  Ex. 1 (Nitz Dep. at 105:7-13).  Mr. Nitz prefaced his remark by noting, accurately,

2   that he "stated earlier that we wanted to negotiate with FINA one specific event and that event

3   only, and after that to discuss a longer term cooperation agreement." *Id*. at 105:17-20.  Mr. Nitz

4   then clarified that "Clause 5, Consideration" – *i.e.*, the final clause before the break that Mr. Nitz

5   identified as problematic – says that if ISL wanted to stage the 2018 event, it "must have a

6   definitive agreement in place as well." *Id*. at 106:7-23.

7          FINA is right that ISL's counsel had raised this "conditionality" point via email the day

8   before (after previously raising it several days earlier).  Mot. at 9; Ex. 26 (February 15 email to

9   FINA).  But Mr. Nitz had also testified about the consideration clause's reference to the definitive

10  agreement *just before the break*, less than an hour earlier: "And if you see this clause, it speaks

11  about a longer term commitment.  Although we are focusing on the one event, the remaining part

12  was kept from previous versions where they wanted us to commit to a 10-year schedule of

13  payments."  Ex. 1 (Nitz Dep. at 103:10-17).  As discussed above, such testimony was also

14  consistent with Mr. Kahn's and Mr. Grigorishin's testimony, as well as with the contemporaneous

15  documents which FINA's motion and accusations sidesteps.  *See supra* at 8-10.

16         There are thus a number of obvious and probable explanations for why Mr. Nitz offered

17  his clarifying testimony.  But instead of believing that Mr. Nitz was "look[ing] over the break [at]

18  the MOU" (as he testified), or that Mr. Nitz had independently reached a conclusion regarding the

19  definitive agreement and that ISL's counsel had no need to strong-arm Mr. Nitz into parroting

20  testimony, FINA cynically fabricates without any basis that "it could not be any more obvious"

21  that ISL's counsel "interject[ed] himself and his thoughts on the matter in the middle of a

22  deposition with the goal, no less, of changing his client's testimony to add irresolvable

23  unreasonable arguments."  Mot. at 13:2-4.

24         **E.       FINA Offers No Basis in Fact or Law for Its Improper Coaching Charge, and**
25                   **Avoided Dispositive Evidence That Blocks FINA's Motion.**

26         But outside of FINA's tactical and cynical accusation narrative, this is no basis to conclude

27  that coaching occurred, let alone to proceed to the unsupported step of awarding FINA its

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

19

36144\14006623.2

1  requested relief.  FINA's own case law[3] states that "[a]n attorney enjoys extensive leeway in

2  preparing a witness to testify" and that "the attorney crosses a line when she *influences the witness*

3  *to alter testimony in a false or misleading way*."  Mot. at 13 (citing *Ibarra v. Baker*, 338 F. App'x

4  457, 465 (5th Cir. 2009); *see also In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D.

5  Nev. 1998) ("To deny a client any right to confer with his or her counsel about anything, once the

6  client has been sworn to testify, and further to subject such a person to unfettered inquiry into

7  anything which may have been discussed with the client's attorney, all in the name of compliance

8  to the rules, is a position this Court declines to take.").  Further, and without revealing what was or

9  was not said with either Messrs. Nitz or Grigorishin during the breaks, common practice is that

10  attorneys and witness occasionally discuss the substance of the earlier testimony during breaks and

11  counsel may encourage the witness to offer accurate and honest clarifications if necessary.  *See* A.

12  Depositions, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-A ("If your client or

13  witness is being deposed and testifies erroneously, discuss the problem with the witness during a

14  recess. When you go back on the record, ask permission for the witness to clarify the record.").

15      To begin with, the record establishes that Mr. Nitz did not change or contradict anything

16  (and certainly not in a "false or misleading way"), and that both he and Mr. Grigorishin testified in

17  a manner consistent with their prior testimony and the several other contemporaneous documents

18  establishing that FINA's MOU draft was unreasonable and conditioned upon execution of a later

19  agreement.  *See supra* at 8-10; Ex. 19 (ISL109010) (Grigorishin to FINA on October 14, 2018: "*I*

20  *thought we had already come to common understanding that now we are going to sign a very*

21  *simple document relating to December 2018 only and in parallel will start work on a definitive*

22

---

23  [3] Notwithstanding  FINA's inconsistent position on lawyers talking with clients during

24  depositions, FINA's motion's authorities led ISL to surprising in-circuit district courts holding that
   it is "improper for a witness and her attorney to discuss the substance of her testimony during
   breaks in a deposition, except where necessary to address matters of privilege." *Barajas v. Abbott*

25  *Lab'ys, Inc.*, No. 18CV00839EJDVKD, 2018 WL 6248550, at *4 (N.D. Cal. Nov. 29, 2018)

26  (Demarchi, M.J.).  Given the valuable time and money that FINA's rule breaches and motion have
   caused, a *Barajas*-type embargo on off-record conversations – which ISL proposed to FINA, and

27  which FINA refused – seems a reasonable preventative mechanism at bar, particularly since FINA

28  has steadfastly refused a Special Master to officiate at the depositions.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,   20
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

36144\14006623.2

1   *contract for 2019 and onwards*[.]") (emphasis added)[4].  ISL noted these consistencies with FINA

2   both before FINA's rush to file its motion as a counterweight to ISL's request for additional

3   depositions (Ex. 26) (Feb. 15, 2021 email from ISL to FINA), and after FINA's filing pursuant to

4   the Court's meet and confer order (Ex. 2) (March 3 and 5, 2021 emails from ISL to FINA).  But

5   FINA's counsel counter-factually insisted in the meet and confer, as in its motion, that were it not

6   for coaching, Messrs. Nitz's and Grigoishin's interpretation of the MOU would not exist anywhere

7   in the evidentiary record.  *See* Ex. 2 (March 4, 2018 email from FINA to ISL) ("Were it not for

8   your coaching, such an 'interpretation' of the MOU would not exist anywhere in the evidentiary

9   record.").  And in both the meet and confer and in its motion, FINA refused to address this

10   documents and pre-break testimony.  That was true both prior to and after FINA filed, and refused

11   to withdraw, its motion.  Goteiner Decl. at ¶ 2-4.

12   **F.      ISL Counsel's On-the-Record Objections Did Not Constitute Coaching.**

13           FINA alleges that ISL's counsel, through his objections, intended to impede FINA from

14   questioning Mr. Nitz about the basis for his post-break clarification.  Mot. at 10-11.  Objections

15   must indeed "be stated concisely in a nonargumentative and nonsuggestive manner."  *See* Fed. R.

16   Civ. P. 30(c)(2).  But FINA's motion just asserts *ipse dixit* that ISL counsel's objections constitute

17   coaching, without explaining at all how his objections suggested any particular response.  Mot. at

18   14:19-25 (arguing that "Mr. Goteiner's argumentative and suggestive objections and statements

19   ran afoul of the Federal Rules" and constituted "unmitigated coaching.").  That is because there

20

21   _____

22   [4] FINA argues that Mr. Grigorishin, in his testimony about this email, meant that FINA's MOU

23   "did not offer a guarantee for the 2019 season, not that it preconditioned approval of the 2018
     event on a long-term agreement."  Mot. at n.4.  But Mr. Grigorishin had just testified that he sent

24   the email because "[w]e were ready to sign the document of December 2018 only.  And in
     parallel, we will start work on definitive – definitive contract for 2019 onwards" – terms that were

25   missing from FINA's final MOU.  Ex. 7 (Grigorishin Dep. at 314:6-9).  And FINA cannot deny
     the plain import of the email – that ISL reasonably believed at the time that FINA was

26   conditioning its approval upon execution of the definitive agreement.  The fact that both
     witnesses' testimony is consistent with the contemporaneous record belies FINA's argument that

27   this conditionality argument was "concocted" by counsel, where FINA argues that falsity is also a
     requisite for coaching.  *See* Mot. at 13:14-16 ("[T]he attorney crosses a line when she influences

28   the witness to alter testimony in a false or misleading way.").

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

21

36144\14006623.2

1   was no coaching, as evidenced by FINA's inability to allege that Mr. Goteiner suggested any

2   testimony to Mr. Nitz.

3          Instead of pointing to any improper objections, FINA's counsel concedes that he first tried

4   to invade attorney-client privilege by asking Mr. Nitz if he discussed the MOU issue with counsel

5   during the lunch break, to which ISL's counsel instructed him not to answer. Ex. 1 (Nitz Dep.

6   109:18-23).  Then, ISL counsel's supposed "coaching" related to his request that FINA, when

7   questioning Mr. Nitz about specific provisions in a detailed, multi-page legal agreement, point Mr.

8   Nitz to a specific part of the document – a simple courtesy to the witness that FINA decries as an

9   improper attempt by ISL's counsel "to interject his own views  of 'context' into Mr. Nitz's

10  testimony."  Mot. at 14.  Specifically:

11  •    Q: Is an agreement that would be entered into in October and applied to one event
         and expire by its terms on January 1, 2019, a long-term agreement?
12  •    MR. GOTEINER: Do you – do you want to point him out where it says that in the
         agreement?
13  •    MR. WALL:  No.  I just want him to answer my question –
    •    MR. GOTEINER:  No.  Well –
14  •    MR. WALL: – and I want you to get out of the way.

15         Ex. 1 (Nitz Dep. at 110:1-11).

16         After this exchange, FINA's counsel raised his very first allegation of coaching and

17  threatened to terminate the deposition, to which ISL's counsel proceeded to state his objection on

18  the record and repeated his request that FINA's counsel point Mr. Nitz to a provision in the

19  document before asking detailed questions: "You're assuming facts not in evidence.  You're not

20  directing him to anywhere in the document where it says what you're saying and you're asking for

21  a legal opinion.  So please, if you're asking him about the document, let him read it."  *Id*. at

22  110:24-111:5.  FINA's counsel repeated his questions, refusing to point the witness to the MOU,

23  and then terminated the deposition despite ISL's counsel making it clear that he was not

24  instructing Mr. Nitz not to respond.  *Id*. at 111:7-113:9 ("I'm not going to instruct him not to

25  answer your – I'm not going to instruct you not to answer his question if he wants you to do it

26  without reading the document.  MR. WALL: I'm terminating the deposition at this time.  We're

27  filing a Motion to Compel and for sanctions.").

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC

22

36144\14006623.2

1      **G.     FINA's Counsel Has Never Identified Any Reason Under the Court's or**
       **Federal Rules Justifying Termination of Mr. Nitz's Deposition.**
2

3          Even putting aside that FINA's counsel, Mr. Wall, often asked ISL's counsel to show

4   documents to Mr. Marculescu,[5] and that ISL has established FINA's pattern of speaking

5   objections and coaching,[6]  FINA counsel's decision to halt the deposition was unwarranted.

6   FINA's counsel knew that he had several choices given Mr. Goteiner's position of not instructing

7   the witness – for example, continuing the deposition by asking further questions, with or (if he

8   insisted) without pointing Mr. Nitz to the MOU.  Second, if FINA's counsel truly felt it justified to

9   stop the deposition for suborning perjury, he should have called the Court, as it suggested, instead

10  of unilaterally halting the deposition.  *See* Jan. 17, 2020 Hr'g Tr. at 11:19-25 ("[I]f you have

11  something brewing, contact Ms. Means . . . If you're in a depo and there's an issue, call Ms.

12  Means.").  Third, FINA's counsel could have taken up Plaintiffs' repeated suggestion to have a

13  Special Master for the remainder of Mr. Nitz's deposition.  Fourth, FINA counsel could have

14  completed the deposition, since this was his only claimed problem with ISL's objection, and then

15  made a motion.  Just terminating the deposition without justification was improper and a waste of

16  time.

17  **IV.    <u>CONCLUSION</u>**

18         ISL believes that the Court's Order limiting objections should resolve the parties' issues

19  regarding deposition conduct.  ISL also believes that it's reasonable here for the Court to order for

20  all future depositions no off-the-record conversations between party witnesses and attorneys or

21  third parties.  *See supra* at n. 3 (citing *Barajas v. Abbott Lab'ys, Inc.*).  The Court should otherwise

22

23  _____

24  [5] *See, e.g.*, Ex. 27 (Marculescu Dep. at 203:25-204:20)

25  ████████████████████████████████████████

26  ████████████████████████████████████████

27  ████████████████████████████████████████

28  [6] *See* Dkt.139 (Pls.' Letter Brief Regarding a Special Master), collecting FINA counsel's many
    attempts at coaching through improper speaking objections.

1    deny FINA's motion and re-admonish FINA never again to breach the Court's orders regarding

2    discovery motion practice or face sanctions.

3

4    Dated:  March 22, 2021                          FARELLA BRAUN + MARTEL LLP

5
                                                     By:        */s/ Neil A. Goteiner*
6                                                        Neil A. Goteiner

7                                                     Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

ISL'S OPP. TO FINA'S MOTION TO COMPEL,            24            36144\14006623.2
TO STRIKE, AND FOR SANCTIONS
Case No. 3:18-CV-7394-JSC