UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL SWIMMING LEAGUE, LTD,<br><br>Plaintiff,<br><br>v.<br><br>FÉDÉRATION INTERNATIONALE DE NATATION,<br><br>Defendant. | Case No. 18-cv-07394-JSC<br><br>**ORDER RE: FINA'S MOTION TO COMPEL, TO STRIKE, AND FOR SANCTIONS & ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 257, 258, 275, 278 |

On February 16, 2021, Fédération Internationale De Natation ("FINA") deposed International Swimming League, Ltd.'s ("ISL's") Chief Operating Officer, Artem Nitz.[1] (Dkt. No. 257-10.)[2] Before the Court is FINA's motion to compel, to strike, and for sanctions brought as a result of ISL's lead counsel's conduct during Mr. Nitz's deposition, as well as for counsel's similar conduct during the deposition of ISL's Rule 30(b)(6) deponent, Konstantin Grigorishin. (Dkt. No. 257-4 at 6.) The parties also submit administrative motions to file under seal portions of their briefs and supporting documents. (Dkt. Nos. 257, 275, 278.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES FINA's motion to compel, to strike, and for sanctions. The behavior of ISL's counsel is not sanctionable, nor does the current record of Mr. Nitz's deposition testimony justify an additional opportunity to depose him or strike the testimony he provided during his February 16, 2021 deposition. The Court additionally GRANTS in PART and denies in part FINA's administrative motion to seal filed in connection with its motion to compel, GRANTS in

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 14.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   PART and DENIES in part ISL's administrative motion to seal filed in connection with its

2   opposition, and GRANTS FINA's motion to file under seal excerpts of its reply.

## BACKGROUND

The gravamen of ISL's antitrust action is that FINA, an international federation recognized by the International Olympic Committee, engages in anticompetitive conduct by using its control over Olympic aquatic sports to determine the terms of compensation and competition for international swimming events outside of the Olympic games and its own competitions.  (*See* Dkt. No. 100.)  This action was filed on December 7, 2018.  (Dkt. No. 1.)  A class action complaint filed by Olympic and professional swimmers against FINA in the related action *Shields, et. al. v. Fédération Internationale De Natation*, Case No. 3:18-cv-07393-JSC, was filed that same day.[3]  (*Shields*, Case No. 3:18-cv-07393-JSC, Dkt. No. 1.)  After the Court permitted the parties to conduct jurisdictional discovery, on December 16, 2019 the Court denied FINA's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (Dkt. No. 86.)  ISL filed an amended complaint on January 17, 2020.  (Dkt. No. 100.)  Since then, the parties have filed a litany of discovery disputes, one of which motivates the instant motion.

On February 5, 2021, FINA deposed Mr. Grigorishin, ISL's designated Rule 30(b)(6) deponent.  (Dkt. Nos. 257-5 at 28, 258-2 at 2 ¶ 3.)  On February 16, 2021, FINA deposed Mr. Nitz, ISL's Chief Operating Officer.  (Dkt. No. 257-10.)  According to FINA, during breaks in these depositions ISL's lead counsel, Neil Goteiner, coached these witnesses to contradict their previously offered testimony regarding the parties' efforts to negotiate an agreement for FINA to sanction ISL's December 2018 event, as well as testimony concerning a potential longer-term relationship between the parties.  (Dkt. No. 257-4 at 6-7.)  After Mr. Nitz offered testimony following the parties' lunch break that FINA argues demonstrates he was "coached" by Mr. Goteiner, Daniel Wall—counsel for FINA—terminated Mr. Nitz's testimony and announced FINA's intention to file a motion to compel.  (*Id.*)  FINA filed the instant motion on February 24, 2021.  (Dkt. No. 258.)  The motion is fully briefed.  The Court summarizes below the factual

---

[3] FINA has not filed a motion to compel or for sanctions in the related *Shields* action.

background and relevant testimony underpinning FINA's motion.

FINA avers that Mr. Nitz—like Mr. Grigorishin—offered testimony before a deposition break that it believes Mr. Nitz contradicted following the break with a "point that he did not [previously] raise on his own[.]"[4] (DKt. No. 257-4 at 7.) This "point," FINA argues, is that a draft Memorandum of Understanding ("MOU") providing FINA's approval of ISL's December 2018 event was "unreasonable" because it "conditioned [FINA's] approval of ISL's 2018 event on the execution of a long-term contract between ISL and FINA." (*Id.*) According to FINA, neither Mr. Nitz nor Mr. Grigorishin advanced this "conditionality" theory during FINA's questioning of either witness regarding the MOU and MOU negotiations before their deposition breaks, but once the witnesses returned and were put back on the record their testimony changed. In Mr. Grigorishin's case, he stated he called Mr. Nitz during his break to "refresh his memory" regarding the negotiations and afterward testified that a draft of the MOU FINA sent ISL on September 27, 2018 gave him the impression that FINA was not a "reliable partner[,]" despite previously testifying that terms of the September 27, 2018 MOU were acceptable and that the MOU draft provided a basis for the parties to begin negotiating an agreement regarding the 2018 event and their relationship. (Dkt. Nos. 257-5 at 24-25, 28-29, 53-54; 257-4 at 11-12.)

FINA states that it would not have filed its motion if Mr. Grigorishin's post-break clarification was "all that happened," but that it has done so because "the problem" is that Mr. Nitz's post-break testimony was inconsistent in "almost exactly the same way" as Mr. Grigorishin's post-break testimony.[5] (Dkt. No. 257-4 at 12.) In support of its contention that Mr. Nitz did not offer testimony regarding the "conditionality" theory on his own, FINA proffers an e-mail exchange between counsel for FINA and ISL the day before Mr. Nitz's deposition that it believes demonstrates and makes "obvious" that Mr. Goteiner coached Mr. Nitz to offer testimony regarding this "eye-open[ing]" theory after his deposition's lunch break. (Dkt. Nos. 258-2 at 3-4 ¶

---

[4] FINA does not move to compel or strike any testimony from Mr. Grigorishin's deposition.
[5] Mr. Wall submits in his declaration to FINA's motion that he was concerned Mr. Grigorishin's clarification and idea to call Mr. Nitz "had not been [Mr. Grigorishin's] own," but that on the day of the February 5, 2021 deposition he "let it go and concluded the deposition." (Dkt. No. 258-2 at 2-3 ¶ 5.)

3

8, 258-4.) In this e-mail exchange, ISL's counsel stated on February 15, 2021—the day before Mr. Nitz's deposition—that Mr. Nitz discovered handwritten notes he had taken during a September, 26 2018 meeting between ISL and FINA and sent the notes as an e-mail attachment to FINA. (Dkt. No. 258-4 at 3-4.) FINA responded that the notes were a late disclosure of relevant discovery the day before Mr. Nitz's deposition, and—after the parties acrimoniously disputed the timeline of discovery disclosures—Mr. Goteiner stated that "FINA's last MOU established that it was conditioning the December [2018] match on what it called a definitive agreement [with ISL] for the future[.]"[6] (*Id.* at 2.) In its motion, FINA represents that this is not true, but that—for the purposes of its motion—the "important point" is that he made this "conditionality" argument on February 15, 2021, one day before Mr. Nitz's deposition. (Dkt. No. 257-4 at 12.)

FINA argues that Mr. Nitz's testimony identified "no insurmountable issues with FINA's draft MOU" and that, as such, his post-break testimony concerning the "conditionality" of a shorter-term MOU on a longer, definite relationship between the parties is belied by his pre-break testimony. (Dkt. No. 257-4 at 13.) Before taking a lunch break during the deposition, FINA asked Mr. Nitz a series of questions regarding the last draft MOU that FINA sent to ISL following the parties' September 26, 2018 meeting concerning ISL's December 2018 event. (Dkt. No. 257-10 at 8.) During his testimony, Mr. Nitz stated that ISL objected to the MOU's requirement that its event be "FINA branded," that it did not want FINA to approve the format of its event, which it regarded as "intellectual property[,]" or the requirement that ISL to seek "written approval" from FINA before doing anything "commerce-wise" with business entities. (Dkt. No. 257-10 at 9-10, 12.) Mr. Nitz testified that ISL wanted freedom to "go to the market" itself, after which Mr. Goteiner requested the parties take a lunch break at noon. (*Id.* at 13.)

Mr. Nitz continued: he described FINA's conduct as "anti-competitive" and that in a "civilized market practice in developed sports, governing bodies do not interfere as much as FINA

---

[6] The disclosure of the handwritten notes, as well as the production of notes from other persons concerning the September 26, 2018 meeting between ISL and FINA attached to and discussed in this exchange—and whether they were timely disclosed pursuant to FINA's Requests for Production—is not the subject of FINA's motion, and the Court does not address whether they were late in their disclosure.

4

wanted to interfere[.]" (*Id.* at 14, 16.) While Mr. Nitz could not identify any part of the event's commercial rights and media programming he was concerned that FINA would not approve, he stated he did not want to create a precedent regarding the need for FINA's approval and that a separate clause, the "Consideration clause," of the MOU contemplated "a longer term commitment [and] FINA wanted [ISL] to commit to a 10-year schedule of payments."[7] (*Id.* at 17-18.) Before the lunch break, Mr. Goteiner also asked Mr. Wall if Mr. Wall—in asking questions regarding FINA's proposal for approving ISL's commercial rights—was also "asking for his discussions or ISL discussions with counsel[.]" (*Id.* at 17.) Mr. Nitz also stated that the $2,000,000 fee set out in the "Consideration clause" was an issue but not the "main issue" with the MOU. (*Id.* at 18.)

Following the lunch break, Mr. Nitz asked to "follow up" on the "last question about issues with the MOU." (*Id.* at 20.) He stated he "[took] a look over the break at the MOU" and that in the MOU's last draft he found an issue relating to the "definitive agreement[.]" (*Id.*) Mr. Nitz clarified that whereas he previously testified that ISL "wanted to negotiate with FINA one specific event and that event only" and that after these negotiations the parties would discuss a longer, definitive agreement, his interpretation of the "Consideration clause" discussed before the break relating to the parties' longer-term commitment tied a definitive agreement as a "prerequisite for [ISL] to stage the 2018 event." (*Id.* at 21.)

In response to Mr. Wall's follow-up question, Mr. Nitz then confirmed he understood the draft MOU to run only through January 1, 2019, and that ISL had no obligations under it after that date. (*Id.* at 22.) Following this, Mr. Wall asked Mr. Nitz to offer his interpretation of an MOU provision concerning the parties' "best efforts" to enter into a definitive agreement by the end of 2018, and that failure to do so would lead to the MOU's expiration on January 1, 2019. (*Id.*) Mr. Goteiner objected on the grounds that Mr. Nitz's response to the question called for a legal opinion. (*Id.*) Mr. Wall responded that "[Mr. Goteiner] told [Mr. Nitz] to say something new [regarding the 'conditionality' theory] that he hadn't said before that corresponds to what [Mr. Goteiner] put in an e-mail over the weekend[.]" (*Id.* at 22-23.) After Mr. Wall accused Mr.

---

[7] Mr. Nitz testified he was not part of the negotiations with FINA regarding any potential request ISL made earlier for a longer-term relationship with FINA. (*Id.*)

Goteiner of "grotesquely unethical" conduct, Mr. Goteiner referenced previous testimony Mr. Nitz offered during his deposition that he believed demonstrated Mr. Nitz's post-break testimony "tied back" to previously offered testimony; Mr. Wall then asked Mr. Nitz directly if he discussed the issue with Mr. Goteiner during the break, and Mr. Goteiner told Mr. Nitz not to answer on the grounds that "[Mr. Wall is] not allowed to ask [Mr. Nitz] questions about what he discussed with counsel or didn't." (*Id.* at 23-24.) Mr. Wall then continued to ask questions regarding the MOU; Mr. Goteiner objected on the grounds that Mr. Wall was assuming facts not in evidence without directing Mr. Nitz to a specific provision of the MOU when and about which he was asking his question. (*Id.* at 24-25.) Mr. Wall subsequently terminated the deposition, after which Mr. Goteiner clarified on the record that "if [Mr. Nitz] wants to review the [MOU] before [he] answer[s] the question to confirm where or whether it says it expires by some terms on January 1, [Mr. Nitz] can do that," and that Mr. Goteiner would not "instruct [Mr. Nitz] not to answer [Mr. Wall's] question if [Mr. Wall] wants [Mr. Nitz] to do it first without reading the [MOU]." (*Id.* at 27-28.)

**DISCUSSION**

FINA moves to compel a further opportunity to depose Mr. Nitz, including on the subject of his discussion with Mr. Goteiner during the deposition lunch break, and an order directing counsel from asserting improper deposition objections.[8] FINA moves to strike the testimony Mr. Nitz gave after the parties' lunch break, and to preclude ISL from advancing an argument that FINA "acted unreasonably or engaged in a constructive refusal-to-deal" on the basis of its negotiations with ISL concerning ISL's December 2018 event and longer-term agreement between the parties. (Dkt. No. 257-4 at 20.) Finally, FINA moves the Court to impose sanctions against Mr. Goteiner due to his deposition behavior in the form of (1) fees and costs associated with the continued deposition of Mr. Nitz and (2) fees for preparing the instant motion. The parties additionally submit administrative motions to file under seal in connection with their briefs and

---

[8] The Court need not address FINA's request regarding deposition objections because in its February 25, 2021 Order it made clear that moving forward "[t]he only objections that may be made during deposition are those based on privilege/privacy; otherwise all objections are preserved." (Dkt. No. 261 at 2.)

6

supporting documents.

**I.      Motion to Compel, Strike, and for Sanctions**

   **A. Mr. Nitz's Testimony**

"An attorney enjoys extensive leeway in preparing a witness to testify truthfully, but the attorney crosses a line when she influences the witness to alter testimony in a false or misleading way.." *Ibarra v. Baker*, 338 F. App'x 457, 465 (5th Cir. 2009) (citation omitted).  The Court has reviewed the cited deposition testimony, as well as the email from the day before, and does not find that Mr. Goteiner crossed that line.

Mr. Wall chose (or failed), prior to initiating the lunch break, to ask Mr. Nitz whether he had identified every issue that ISL had with the wording of the final MOU. (Dkt. No. 257-10 at 19.)  Thus, Mr. Nitz's post-lunch unsolicited testimony did not contradict or alter his pre-lunch testimony; he was merely following up with another issue related to one he had already identified (the Consideration clause "speaking to a longer term commitment").  (*Id.* at 18.)  To put it another way, if Mr. Nitz had not raised the issue following the break, and then on summary judgment had submitted a declaration that included the post-lunch testimony regarding the concern with the purported proposed definitive agreement (along with his explanation of having further reviewed the MOU), his declaration could not be struck as a sham because it would not have been inconsistent with his deposition testimony. *See Van Asdale v. International Game Technology*, 577 F.3d 989, 999 (9th Cir. 1999).

FINA's reliance on *Horowitz v. Chen*, No. SA CV 17-00432-AG (DFMx), 2019 WL 9313599, at *2-4 (C.D. Cal. Aug. 22, 2019) is unpersuasive.  In *Horowitz*, defense counsel requested the break at issue immediately following the defendant's answers to opposing counsel's questions. *Id.* at *3.  Upon returning from this break, the defendant changed his answer to a previous question regarding a timeline of events.  The defendant and his counsel then gave several changing and inconsistent explanations as to why the defendant altered his testimony.  The trial court concluded:

> At best, [attorney] and [the defendant] engaged in an improper off-the-record conference and were less than fully forthcoming in the details of what transpired, with [the attorney] eventually coaching [the

7

> defendant] to admit that someone in [the attorney's] office contacted him. At worst, [the attorney] and [the defendant] intentionally tried to cover-up the fact that [the attorney's] assistant (or [a third party]) relayed to [the defendant] specific information regarding [the issue]. Either scenario is a bad look and one that the Court has already sanctioned [the attorney] for.

*Horowitz v. Chen*, No. SACV1700432AGDFMX, 2019 WL 9313599, at *4 (C.D. Cal. Aug. 22, 2019). The *Horowitz* circumstances are not present here. First, FINA's counsel—not ISL's—chose to call the break at that moment; thus, there is no inference that Mr. Goteiner took a break intending to coach the witness. Second, as explained above, Mr. Nitz's after-lunch testimony did not contradict his pre-lunch testimony because it gave more detail to testimony he gave prior to the break, and Mr. Wall never got him to commit that he had shared every single issue ISL had with the final MOU.

*Barajas v. Abbott Lab'ys, Inc.*, No. 18-cv-00839-EJD (VKD), 2018 WL 6248550, at *2-3 (N.D. Cal. Nov. 29, 2018), is likewise distinguishable. Unlike the plaintiff in *Barajas*, Mr. Nitz did not conclude his pre-break testimony by stating he did not know the answers to a question that he was then able to answer following a break with counsel. *Barajas*, 2018 WL 6248550, at *3. Further, the *Barajas* court declined to grant the defendant's motion to compel a further deposition because defense counsel initiated the break during which the coaching occurred, and moreover "[the defendant] ha[d] not identified any specific questions or line of questioning that it believe[d] it could not fairly pursue because of improper communications occurring on a break [its] counsel invited [the plaintiff's] counsel to take." *Id.* Same here.

Mr. Goteiner's February 15, 2021 e-mail is insufficient to demonstrate that he influenced Mr. Nitz to alter his testimony during the deposition break, especially when—as the record indicates—before the break Mr. Nitz discussed the "Consideration clause" and the parties' longer-term relationship (Dkt. No. 257-10 at 18) and, in any event, the post-break testimony was not inconsistent with the pre-break testimony.

**B. Mr. Goteiner's Objections**

FINA argues that Mr. Goteiner's objections during Mr. Nitz's deposition constitute coaching that "run afoul" of the Federal Rules of Civil Procedure. (Dkt. No. 257-4 at 19.)

During a deposition, an attorney may properly state objections for the record in a concise,

8

nonargumentative, and nonsuggestive manner. Fed. R. Civ. P. 30(c)(2). Generally, "instructions not to answer questions at a deposition are improper." *Detoy v. City & Cty. of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000) (citation omitted). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). "If a party believes that a particular question asked of a deponent is improper for any other reason, that party may object; however, the examination still proceeds; the testimony is taken subject to any objection." *Nguyen v. LVNV Funding, LLC*, No. 15CV758-LAB (RBB), 2017 WL 951026, at *2 (S.D. Cal. Mar. 10, 2017) (citation omitted).

Mr. Goteiner's interjections demanding that Mr. Wall identify to Mr. Nitz where something in the MOU was located (Dkt. No. 257-10 at 25:5-6, 25:24-26:5) were improper. Mr. Nitz volunteered that it was his "legal opinion" that particular language in the final MOU required there to be a definitive agreement in place to stage a 2018 event. (Dkt. No. 257-10 at 21:14-19.) FINA was entitled to follow up on that testimony and Mr. Goteiner had no right to dictate that his client be shown the MOU while being questioned. If Mr. Goteiner wanted to ask Mr. Nitz about specific language in the MOU, he could have done so when he had the opportunity to question him. Those objections were unwarranted. It was also improper coaching to tell the witness that he could review the MOU before answering Mr. Wall's question. (Dkt. No. 257-10 at 27:22-25.)

However, Mr. Goteiner appeared to realize that his objection that his client be shown the MOU was improper, because he eventually stated that he would not instruct his client not to answer Mr. Wall's question if Mr. Wall insisted that Mr. Nitz answer his question without looking at the MOU. (*Id.* at 28:1-6.) At that point Mr. Wall should have then asked his question again; instead, he unilaterally terminated the deposition.

\* \* \*

For the reasons set forth above, on the current record the Court cannot conclude that Mr. Goteiner impermissibly coached Mr. Nitz to alter his deposition testimony during the break, and while he did impermissibly coach Mr. Nitz about one question, he corrected his error and gave FINA the opportunity to ask the question. FINA chose not to do so. Accordingly, no monetary

1  sanctions are warranted. *See Batts v. Cty. of Santa Clara*, No. C 08-00286 JW, 2010 WL 545847,
2  at *2 (N.D. Cal. Feb. 11, 2010) ("[S]anctions for deposition conduct are discretionary pursuant to
3  Fed. R. Civ. P. 30(d)(2)[.]")

4　　　　Regarding FINA's request for a "further opportunity" to depose Mr. Nitz, the Court agrees
5  with *Barajas*: without identifying any "specific questions or line of question that [FINA] believes
6  it could not fairly pursue because of improper communications," the Court declines to grant
7  FINA's request to depose Mr. Nitz again. *Barajas*, 2018 WL 6248550, at *4. FINA has not
8  identified any line of questioning it could not fairly pursue based on Mr. Goteiner's conduct, and
9  its request to depose Mr. Nitz about his lunchtime discussion is not enough, on its own, the reopen
10 Mr. Nitz's deposition. *See also Mendez v. R+L Carriers, Inc.*, No. CV 11-02478-CW JSC, 2012
11 WL 1535756, at *2 (N.D. Cal. Apr. 30, 2012) ("Although [the plaintiffs'] objections were
12 excessive, the Court concludes that [the] [d]efendants are not entitled to further depositions of
13 either [plaintiff] as [they] have not identified the subjects on which they need to further depose
14 these [plaintiffs].") FINA chose to file this motion. Mr. Wall chose to terminate Mr. Nitz's
15 deposition, and may not again depose a witness whose deposition he terminated.

## II. Administrative Motions to File Under Seal

FINA seeks to file under seal portions of its motion as well as certain supporting exhibits. (Dkt. Nos. 257.) FINA also submits a motion to file excerpts of its reply under seal. (Dkt. No. 278.) ISL similarly seeks to file under seal excerpts of and documents related to its opposition. (Dkt. No. 275.) After careful consideration of the parties' sealing motions, the Court rules as set forth below.

### A. Legal Standard

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Courts generally apply a "compelling reasons" standard when considering motions to seal documents, recognizing that "a strong presumption in favor of access is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotations and citations omitted). However, in the case of non-dispositive motions and filings that are "only tangentially related[]to the underlying cause

10

of action[,]" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citation omitted), the public has less need for access these documents. *See also Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2016 WL 10770864, at *1 (N.D. Cal. May 3, 2016) (applying "good cause" standard to motion for discovery sanctions). Therefore, parties moving to seal them need only meet the lower "good cause" standard of Federal Rule of Civil Procedure 26(c). *See Kamakana*, 447 F.3d at 1179-80; *Ctr. for Auto Safety*, 809 F.3d at 1101. The "good cause" standard requires a "particularized" showing that "specific prejudice or harm will result if the information is disclosed." *Cont'l Auto. Sys., Inc. v. Avanci*, LLC, No. 19-CV-02520-LHK, 2019 WL 6612012, at *1 (N.D. Cal. Dec. 5, 2019) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir.2002)). Under Civil Local Rule 79-5(b), sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is . . . entitled to protection under the law," or "sealable." N.D. Cal. Civ. L.R. 79-5(b). Moreover, "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." N.D. Cal. Civ. L.R. 79–5(d)(1)(A).

### B. FINA's Administrative Motion to Seal (Dkt. No. 257)

FINA moves to seal Exhibits 1, 4-7, and 12 to Mr. Wall's supporting declaration, as well as excerpts of its motion that reference these Exhibits. (Dkt. No. 257 at 2-3.) FINA moves to seal Exhibits 1, 5, and 12 because ISL designated or, at the time it filed the motion, FINA believed ISL intended to designate these Exhibits as "Confidential" pursuant to the parties' Amended Protective Order. (*Id.* at 3-4.) However, in its response to FINA's administrative motion, ISL stated that it withdraws its confidentiality designation as to Exhibit 5, and does not designate Exhibits 1 or 12 as "Confidential." (Dkt. No. 264 at 3-4.) As such, there is no basis for sealing these documents— or the portions of FINA's motion that reference them—and FINA's sealing request is DENIED as to Exhibits 1, 5, and 12. (Dkt. Nos. 257-5, 257-7, 257-10.)

FINA has designated Exhibits 4, 6, and 7 as "Confidential" and seeks to seal them in their entirety on the grounds that FINA must do so in accordance with the requirements of the General Data Protection Regulation ("GDPR"). (Dkt. No. 257 at 2-3). FINA articulates the requirements

1    of GDPR and Swiss law as well as its sealing request's compliance with these requirements;
2    accordingly, good cause exists to seal these Exhibits in connection with these discovery motions,
3    although the same result may not occur if used in connection with dispositive motions or trial.
4    Therefore, FINA's request to seal Exhibits 4, 6, and 7 based on its compliance with European law
5    is GRANTED.  (Dkt. Nos. 257-6, 257-8, 257-9.)

6         FINA also states that Exhibit 6 "is a draft contractual agreement between FINA and ISL,
7    the terms of which are not public."  (Dkt. Nos. 257 at 3, 257-1 at 3 ¶ 7.)  According to FINA, these
8    terms include "commercial rights, ownership interests, and payment schedules" whose disclosure
9    would place "FINA at a competitive disadvantage in future negotiations with independent
10   organizers seeking to enter into agreements with FINA."  (*Id.*)  The Court agrees; good cause
11   exists to seal Exhibit 6 on the basis of the Exhibit's content and the harm that would result from its
12   disclosure, and GRANTS FINA's motion to seal as to Exhibit 6.  (Dkt. No. 257-8.)  *See Digital*
13   *Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2014 WL 6986068, at *1 (N.D. Cal.
14   Dec. 10, 2014) (finding "good cause" to grant sealing motion where document contained
15   information regarding "revenues, payments, technical aspects of licensing agreements and unique
16   material terms" because the information's disclosure would adversely affect the plaintiff's future
17   negotiations); *see also Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2020 WL
18   5630051, at *11 (N.D. Cal. Sept. 21, 2020) (finding good cause to seal portions of documents that
19   contained "confidential business and proprietary information" related to a party's operations).

20        For the reasons discussed above, the only excerpts of FINA's motion that are sealable are
21   those that quote from or explicitly reference Exhibit 6.  As such, sealing is GRANTED as to Dkt.
22   No. 257-4 at 9:12-14; 257-4 at 12-13 n.1; and 257-4 at 13-14's excerpts in the bulleted list that
23   cite Exhibit 6, but is otherwise DENIED.

24        **C.  ISL's Administrative Motion to Seal (Dkt. No. 275)**
25        In its sealing motion, ISL seeks to seal portions of its opposition and supporting
26   documents.  Specifically, ISL seeks to seal Exhibits 4-5, 14-16, 20, and 27 in support of its
27   opposition to FINA's motion on the grounds that FINA designated these documents
28   "Confidential" pursuant to the parties' Amended Protective Order.  (Dkt. No. 275 at 2.)  ISL

additionally seeks to seal Exhibits 10, 12, and 17-18.  (*Id.* at 2-3.)  Exhibit 18 to ISL's opposition is the draft agreement that FINA designated as "Exhibit 6" in connection with its motion, and ISL's Exhibits 10, 12, and 17 are "other version of this draft contract[.]"  (*Id.* at 3.)

Regarding Exhibits 4-5, 14-16, 20, and 27, ISL submits the declaration of counsel Joshua W. Malone, who attests that ISL was required to file these Exhibits under seal "[p]ursuant to Section XV, paragraph C of the Amended Protective Order . . . as well as excerpts" from its opposition brief that quote from or reference these Exhibits.  (Dkt. No. 275-1 at 2 ¶ 4.)  Under the Local Rules of this District, where a party seeks to file under seal any material designated as confidential by another party, the submitting party must file a motion for a sealing order.  *See* N.D. Cal. Civ. L.R. 79-5(d)-(e). "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration . . . establishing that all of the designated information is sealable."  *Id*. at 79-5(e)(1). "If the Designating Party does not file a responsive declaration as required by subsection 79-5(e)(1) and the Administrative Motion to File Under Seal is denied, the Submitting Party may file the document in the public record no earlier than 4 days, and no later than 10 days, after the motion is denied."  *Id*. at 79-5(e)(2).  To date, FINA, the designating party, has not filed a responsive declaration to ISL's administrative motion to seal.  (Dkt. No. 275.)  Having considered ISL's submission and for the reasons stated above, the Court DENIES ISL's request to seal Exhibits 4-5, 14, 16, 20, and 27.  (Dkt. Nos. 275-33, 275-34, 275-37, 275-39, 275-42, 275-42.)

However, Exhibit 15 contains a draft of the contract at issue in FINA's administrative motion to seal.  (Dkt. No. 275-38.)  As such, and consistent with the reasons discussed *supra* regarding FINA's request to seal the draft agreement, the Court GRANTS ISL's motion to seal Exhibit 15.  (Dkt. No. 275-38.)  For this same reason the Court GRANTS ISL's motion to seal Exhibits 10, 12, and 17-18.  (Dkt. Nos. 275-35, 275-36, 275-40, 275-41.)  *See also Digital Reg of Texas, LLC*, 2014 WL 6986068, at *1; *Smith*, 2020 WL 5630051, at *11.

Accordingly, the only excerpts of ISL's opposition that warrant sealing are those that quote from or explicitly reference the terms Exhibits 10, 12, 15, or 17-18 whose disclosure would result in a specific prejudice or harm.  *See Cont'l Auto. Sys., Inc.*, 2019 WL 6612012, at *1.  Good cause

1    does not exist to seal general references to the parties' negotiations or drafts of the agreement.

2    Therefore, sealing is GRANTED as to Dkt. No. 275-32 at 13:5-7, 10-11, 16-18; Dkt. No. 275-32

3    at 21:13; 275-32 at 22:2-3, 20-23, but is otherwise DENIED.

**D.  FINA's Administrative Motion to Seal Reply Excerpts (Dkt. No. 278)**

FINA seeks to seal excerpts of its reply that reference provisions from the draft contractual agreement between ISL and FINA.[9]  (Dkt. No. 278 at 2.)  For the reasons discussed *supra*, good cause exists to seal all requested excerpts of its reply brief.  As such, FINA's administrative motion to seal is GRANTED.

## CONCLUSION

For the reasons set forth above, FINA's motion to compel a further opportunity to depose Mr. Nitz as well as to strike his post-break deposition testimony is DENIED.  Furthermore, FINA's sanctions motion regarding Mr. Goteiner's conduct during Mr. Nitz's deposition is DENIED.  FINA's administrative motion to file under seal excerpts of and exhibits in connection with its motion is GRANTED in part and DENIED in part; its motion to seal excerpts of its reply brief is GRANTED.  ISL's motion to seal excerpts of its opposition brief and supporting documents is GRANTED in part and DENIED in part.

This Order disposes of Dkt. Nos. 257, 258, 275, 278.

**IT IS SO ORDERED.**

Dated: May 24, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[9] FINA cites Dkt. No. 258-8 as the citation for the document at issue; however, the provisions it cites and seeks to seal in the reply brief are found at Dkt. No. 257-8.  Accordingly, the Court analyzes FINA's motion with reference to Exhibit 6 of FINA's motion, the draft agreement, found at Dkt. No. 257-8.

14