**FILED**

SEP 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS A. SHIELDS; KATINKA HOSSZÚ, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs-Appellants,<br><br>　v.<br><br>WORLD AQUATICS,<br><br>　　　　Defendant-Appellee. | No.　23-15092<br><br>D.C. No. 3:18-cv-07393-JSC<br><br>MEMORANDUM* |
| INTERNATIONAL SWIMMING LEAGUE, LTD.,<br><br>　　　　Plaintiff-Appellant,<br><br>　v.<br><br>WORLD AQUATICS,<br><br>　　　　Defendant-Appellee. | No.　23-15156<br><br>D.C. No. 3:18-cv-07394-JSC |

Appeal from the United States District Court
for the Northern District of California
Jacqueline Scott Corley, District Judge, Presiding

Argued and Submitted February 16, 2024
San Francisco, California

---

　　* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: MILLER, BADE, and VANDYKE, Circuit Judges.

Plaintiffs-Appellants, a group of professional swimmers and the International Swimming League (ISL), appeal the district court's grant of summary judgment to Defendant-Appellee Fédération Internationale de Natation (FINA) on their claims under section 1 of the Sherman Act. (Since the district court's decision, FINA has changed its legal name to World Aquatics.) The swimmer plaintiffs also appeal the district court's denial of class certification. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

"We review a grant of summary judgment *de novo* and evaluate the evidence most favorably to the nonmoving party to determine whether any genuine issues of material fact remain and whether the district court correctly applied the relevant substantive law." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432 (9th Cir. 1995). "We review a district court's denial of a motion to modify a scheduling order for abuse of discretion." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 982 (9th Cir. 2017). We review a district court's denial of class certification and "any particular underlying Rule 23 determination involving a discretionary determination" for abuse of discretion. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).

Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies that unreasonably restrain trade. *Tanaka v. University of S. Cal.*, 252

F.3d 1059, 1062 (9th Cir. 2001); *see* 15 U.S.C. § 1. Restraints can be unreasonable in one of three ways. "A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output." *Ohio v. American Express Co.* (*Amex*), 585 U.S. 529, 540 (2018) (internal quotation and citation omitted). Most restraints are subject to the rule of reason, under which we "conduct a fact-specific assessment of 'market power and market structure . . . to assess the [restraint]'s actual effect' on competition." *Id.* at 541 (alterations in original) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)). When restraints are "'not unambiguously in the per se category,'" but "'require no more than cursory examination to establish that their principal or only effect is anticompetitive,'" *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011) (quoting 11 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1911a (2d ed. 2005)), we apply a "quick look," or truncated, rule of reason approach.

    1. Plaintiffs have created a triable issue as to whether FINA's General Rule 4 constituted a per se unlawful group boycott by preventing member federations and swimmers from doing business with ISL without risking draconian sanctions. We apply the per se approach to an alleged boycott when "competitors enter into a horizontal agreement" with "no purpose other than disadvantaging the target," *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 820 (9th Cir. 2023), or when

3

some or all of the following conditions are met: "(1) the defendant's restriction 'cut[s] off access to a supply, facility, or market necessary to enable the boycotted firm to compete'; (2) the defendant 'possesse[s] a dominant position in the relevant market'; and (3) the defendant's restriction is 'not justified by plausible arguments that [it is] intended to enhance overall efficiency and make markets more competitive.'" *Id.* at 821 (alterations in original) (quoting *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 294 (1985)).

Viewing the evidence in the light most favorable to the plaintiffs, a rational trier of fact could conclude that General Rule 4 had no purpose other than to disadvantage FINA's competitors. FINA admitted that General Rule 4 "has also been applied in the context of third parties that seek to . . . replace FINA as the international governing body," and FINA executives discussed plans to thwart future ISL events by punishing member federations for engaging with unaffiliated organizations.

The district court reasoned that General Rule 4 "does not (and did not in 2018) prevent swimmers from participating in unauthorized events; it prevented and continues to prevent *member federations* from affiliating with ISL and other non-sanctioned entities." That is one interpretation of the evidence, but a jury could conclude otherwise and find that General Rule 4 cut off ISL's access to top-tier professional swimmers, an input necessary for ISL to compete. Before it was

amended in 2019, General Rule 4 required member federations to "suspend[]" any "individual or group" that participated in an unsanctioned event "for a minimum period of one year, up to a maximum period of two years." The rule prohibited member federations from engaging with non-affiliated bodies and, more generally, the "exchange of competitors" with such bodies. While FINA never imposed sanctions on any athletes for participating in non-FINA events, plaintiffs point to ample evidence that FINA, national federations, and swimmers understood the rule to expose swimmers to suspensions—including from competing at the Olympics and World Championships—if they participated in events hosted by unaffiliated entities like ISL.

    2. Plaintiffs have also created a triable dispute under the quick look standard, which requires showing that General Rule 4 imposed a "naked restraint on price and output." *National Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 110 (1984). A rational trier of fact could conclude that General Rule 4 reduced output in the market for swimming competitions by suppressing the number of competitions in 2018, and that it lowered prices in the market for swimmers' services by reducing the total pool of prize money and appearance fees.

    The district court erred in concluding that a rule of reason analysis was necessary because courts lack experience with "the rules of a governing body for international and Olympic sports." It is well established that "the

likelihood that horizontal price and output restrictions are anticompetitive is generally sufficient to justify application of the per se rule without inquiry into the special characteristics of a particular industry." *Board of Regents*, 468 U.S. at 100 n.21; *accord In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).

Similarly, FINA argues that as with joint venture sports leagues, the rule of reason applies because FINA is "an athletic *governance* association" and General Rule 4 is a necessary "governance rule." It is true that sports leagues and joint venture restrictions are unique antitrust contexts that are generally analyzed under the rule of reason. *See Honey Bum*, 63 F.4th at 822 n.4; *National Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 88–91 (2021). As the district court recognized, however, FINA and its member federations are not a joint venture sports league, but an association of independent national federations. And the fact "[t]hat *some* restraints are necessary to create or maintain a league sport does not mean *all* 'aspects of elaborate interleague cooperation are.'" *Alston*, 594 U.S. at 90 (quoting *American Needle, Inc. v. National Football League*, 560 U.S. 183, 199 n.7 (2010)). A rational trier of fact could conclude that FINA can organize swimming competitions and maintain its calendar of events without restricting participation in non-affiliated events.

3. The district court did not abuse its discretion in denying plaintiffs' request

6

to extend their merits expert report deadline. Once a district court enters a scheduling order setting a deadline for completing discovery, modifications are allowed only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *DRK Photo*, 870 F.3d at 989. The district court was within its discretion to reject plaintiffs' post hoc argument that confusion arising from unrelated stipulations prevented them from meeting their deadline. The court reasonably determined that there was "no inference to be drawn from" plaintiffs' failure to meet their deadline "other than that [it] was an intentional decision."

    4. Absent expert testimony, plaintiffs have not created a triable dispute regarding market definition. By omitting it from their opening brief, plaintiffs have forfeited any challenge to the district court's determination that they failed to define their proposed "market for the organization and promotion of top-tier international swimming competitions." *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("[A]rguments . . . omitted from the opening brief are deemed forfeited."). As to plaintiffs' proposed labor market for top-tier swimmers, undisputed facts render unreasonable their evidence substantiating the buyer side of this market. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). For example, top-tier professional swimmers, including the

swimmer plaintiffs, frequently compete in a wide variety of non-affiliated events.

5. Even without a viable market definition, however, Plaintiffs have raised a triable dispute under the rule of reason through direct evidence of anticompetitive effects. "A plaintiff is not required to define a particular market for . . . a rule of reason claim based on evidence of the actual anticompetitive impact of the challenged practice," *PLS.com, LLC v. National Ass'n of Realtors*, 32 F.4th 824, 838 (9th Cir. 2022), "'such as reduced output, increased prices, or decreased quality in the relevant market,'" *id.* at 832 (quoting *Amex*, 585 U.S. at 542). Drawing all reasonable inferences in plaintiffs' favor, a rational trier of fact could conclude that by threatening to sanction swimmers, General Rule 4 prevented ISL from holding events in 2018 and thereby reduced output and wages.

6. The district court abused its discretion in refusing to certify the swimmer plaintiffs' proposed damages classes of swimmers who signed contracts to participate in ISL competitions in 2018 or participated in ISL events in 2019. Under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). "'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions*

§ 3.58 (5th ed. 2011)). Rule 23(b)(3) permits certification when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The district court abused its discretion in determining that representation was inadequate because swimmers "compete for shares of a fixed pot," meaning "any damages formula will necessarily disfavor some swimmers." Any such conflict would not be fundamental because each plaintiff shares the same liability and damages theory: that General Rule 4 precluded opportunities to compete in ISL events and collect prize money. *See Blackie v. Barrack*, 524 F.2d 891, 909–10 (9th Cir. 1975). Plaintiffs proposed to apportion more money to swimmers with stronger past performance; "[m]ere speculation as to conflicts that may develop" from that methodology is not an appropriate reason to deny certification. *Social Servs. Union, Loc. 535, Serv. Emps. Int'l Union, AFL-CIO v. Santa Clara County*, 609 F.2d 944, 948 (9th Cir. 1979).

Any arguments about adequacy of representation arising from the funding of this litigation by ISL's founder, Konstantin Grigorishin, have been forfeited by FINA because it did not address that issue in its answering brief. *See Jensen v. EXC, Inc.*, 82 F.4th 835, 847 (9th Cir. 2023).

The district court also abused its discretion in holding that a class action was

not superior to individual actions because issues related to the allocation of damages—as well as the high total damages at stake—give each absent class member a strong interest in individually prosecuting an action. A class action is superior to other methods of litigation when it "will reduce litigation costs and promote greater efficiency" or when "no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). By failing to address superiority on appeal, FINA has forfeited any argument that a class action was not superior to other methods of litigation. *See Jensen*, 82 F.4th at 847. Even so, plaintiffs' damages model projected that most swimmers lost less than $10,000 in 2018 and 2019 due to cancelled ISL events, making the cost of individually prosecuting an antitrust action prohibitive. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

      **REVERSED and REMANDED.**