1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    INTERNATIONAL SWIMMING              Case No. 18-cv-07394-JSC
     LEAGUE, LTD,

8            Plaintiff,                  **ORDER FOLLOWING PRETRIAL
                                         CONFERENCE AND RE: MOTIONS IN
9       v.                               LIMINE**

10   WORLD AQUATICS,                     Re: Dkt. Nos. 483, 484, 485, 486, 487, 489,

11           Defendant.                  491, 492, 493, 495, 496

12

13       Jury trial is scheduled to commence on January 12, 2025.  The Court held a pretrial

14   conference with the parties on November 18, 2025.

15   **I.      MOTIONS IN LIMINE**

16       **A.      Plaintiff's Motions in Limine**

17           **1.      Motion in Limine 1: To Limit Paul K. Meyer's Testimony (Dkt. No.
                       485)**

18

19       Plaintiff seeks to limit the testimony of Defendant's accounting and rebuttal expert, Paul

20   K. Meyer, "to matters of accounting, and to exclude his repetition of record facts, speculation

21   about state of mind, and vouching for World Aquatics' other experts' testimony."  (Dkt. No. 485

22   at 2.)  As Mr. Meyer provides proper rebuttal testimony, the Court DENIES the motion.

23           **2.      Motion in Limine 2: To Preclude Evidence or Argument Concerning
                       Konstantin Grigorishin's Russian or Other Foreign Sanctions or
24                     Criminal Convictions (Dkt. No. 486)**

25       Plaintiff argues evidence or argument concerning Konstantin Grigorishin's criminal or

26   sanctions history is inadmissible to prove Mr. Grigorishin's character or impeach his testimony.

27   *See* Fed. R. Evid. 404(a), 609(a).  Defendant contends it plans to "offer testimony and evidence

28   touching on Mr. Grigorishin's criminal history not to impeach Mr. Grigorishin or provide

United States District Court
Northern District of California

1    evidence of future wrongdoing, but to prove 'the falsity of [ISL's] representation' regarding

2    damages as well as independent reasons for World Aquatics' and sponsors' conduct." (Dkt. No.

3    486 at 13 (citation omitted).)  Under Rule 404(b), "unless the evidence of other crimes tends only

4    to prove propensity, it is admissible." *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 947

5    (9th Cir. 2009) (cleaned up); *see also* Fed. R. Evid. 404(b)(2) (noting non-propensity purposes

6    "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

7    mistake, or lack of accident").

8         Although Defendant states it does not intend to use Mr. Grigorishin's background as

9    propensity evidence, to this extent, Plaintiff's motion is GRANTED.  However, the motion is

10   DENIED to the extent Plaintiff seeks to prohibit Defendant from using the information as

11   evidence as to why Defendant and third parties may not have wanted to work with Plaintiff.  The

12   parties shall work together on how this evidence will be presented, that is, how much detail needs

13   to be shared with the jury.

**3.    Motion in Limine 3: To Preclude Evidence or Argument That ISL
Lacks Standing to Pursue Damages Due to Entities Through Which
Funds Flowed (Dkt. No. 487)**

16        Plaintiff moves to preclude evidence or argument it "lacks standing to pursue its damages

17   claims because its lost profits would have been earned by related entities and its increased

18   expenses were incurred by entities with whom [it] has contractual relationships" because such

19   evidence would be distracting and open the door to evidence related to its Second Motion in

20   Limine.  (Dkt. No. 487 at 2.)  *See* Fed. R. Evid. 403.

**a.    Ownership of Sponsors**

22        To the extent Plaintiff's motion seeks to exclude evidence of the related ownership of

23   supposed sponsors of ISL events, Plaintiff's motion is DENIED.  As Defendant argues:

> ISL's lost profit projections are based, in part, on a number of
> supposed 'sponsorships' ISL claims it secured in 2019. World
> Aquatics is entitled to present evidence regarding the various shell
> companies that were the source of those 'sponsorships' to show that
> ISL never actually secured legitimate sponsors, but rather relied on
> non-arm's-length 'sponsorships' from entities affiliated with Mr.
> Grigorishin and ISL. . . . ISL cannot put forth evidence of sponsorship
> revenue it received in its later seasons to demonstrate sponsor interest
> in its sporting property while also preventing World Aquatics from

United States District Court
Northern District of California

United States District Court
Northern District of California

showing that those revenues actually came from Mr. Grigorishin's shell companies. World Aquatics intends to demonstrate that, aside from Mr. Grigorishin's entities, no actual sponsors were seriously interested in ISL's event, even after ISL staged numerous events with top-tier swimmers.

(Dkt. No. 487 at 9, 14-15.)

### b.      Expenses Paid by Other Related Entities

Plaintiff primarily seeks to preclude evidence and argument it lacks standing because its expenses were incurred by other entities. For the reasons discussed at the pretrial conference, the Court holds this portion of the motion in limine in abeyance pending supplemental briefing. Plaintiff shall file its brief by Tuesday, December 2, 2025, and Defendant shall file its response by Tuesday, December 16, 2025.

### B.      DEFENDANT'S MOTIONS IN LIMINE

#### 1.      Motion in Limine 1: To Exclude Untimely and Undisclosed Merits Expert Testimony (Dkt. No. 489)

Defendant seeks to prevent Plaintiff from introducing the opinions of Dr. Daniel Rascher, the *Shields* class certification and damages expert, as a merits expert on anticompetitive effects. Defendant argues because the Court ruled—and the Ninth Circuit affirmed—Plaintiff had missed the merits expert deadline, the law of the case prevents Plaintiff from using Dr. Rascher as a merits expert. However, the law of the case as Defendant defines it does not exist. The Ninth Circuit did affirm this Court's ruling Plaintiff had missed the merits expert report deadline and could not disclose merits experts. (Dkt. No. 346 at 4, 7, 12; Dkt. No. 450 at 6-7.) However, the Court did not prohibit Plaintiff from using Dr. Rascher's testimony as evidence of direct anticompetitive effects. Instead, the Court held Plaintiff had not identified sufficient evidence of direct anticompetitive effects, and wrote:

> Putting aside that [Dr. Rascher] is a damages rather than merits expert, he (unsurprisingly) provides no testimony that disputes the evidence ISL did not need FINA to sponsor top-tier international swimming competitions.

(Dkt. No. 419 at 19.) However, the Ninth Circuit reversed this Court's summary judgment order because "Plaintiffs have raised a triable dispute under the rule of reason through direct evidence of anticompetitive effects." (Dkt. No. 450 at 8.) So, contrary to Defendant's insistence, this Court

1    and the Ninth Circuit never ruled any party could not call at trial existing and properly-disclosed

2    experts used in connection with class certification.  Furthermore, Defendant had a full opportunity

3    to challenge Dr. Rascher.

4        The Court therefore DENIES the motion.  Dr. Rascher may testify consistent with—but

5    not beyond—his report, to the extent relevant to an issue in the case.

6        **2.    Motion in Limine 2: To Exclude Argument and Evidence Regarding the European Commission's Case Against the International Skating Union (Dkt. No. 491)**

7

8        Defendant seeks to exclude any evidence of the European Commission ("EC") proceedings

9    against the International Skating Union ("ISU") as irrelevant and unfairly prejudicial.  *See* Fed. R.

10   Evid. 402, 403.  However, as Plaintiff argues, Defendant's discussions about the EC's ISU

11   proceedings are relevant to show Defendant understood its invocation of GR 4 was a threat to

12   swimmers and national federations, and national federations understood it similarly.  This

13   evidence also rebuts Defendant's defense it did not invoke GR 4 to threaten federations or

14   swimmers.  So, the discussions may help Plaintiff show Defendant's anticompetitive intent and

15   purpose.  *See Sidibe v. Sutter Health*, 103 F.4th 675, 686, 693 (9th Cir. 2024) (explaining evidence

16   of intent "can often be important to prove that a defendant 'intentionally engaged in conduct'

17   constituting a per se violation," and "anticompetitive purpose is an essential element of the rule of

18   reason analysis" (citations omitted)).

19       So, Defendant's motion is DENIED to the extent the evidence is relevant to evaluating

20   Defendant's intent and its and its alleged co-conspirators' understanding of the effect of GR 4 and

21   may be used for that purpose.  The parties shall meet and confer on the evidence Plaintiff intends

22   to offer and an appropriate limiting instruction, to the extent Defendant believes one is warranted.

23       **3.    Motion in Limine 3: To Exclude Improper Propensity Evidence Concerning the World Swimming Association, the World High Diving Association, the World Open Water Swimming Association, Oceanman and Other Entities (Dkt. No. 492)**

24

25

26       Defendant seeks to exclude any evidence, testimony, or argument concerning other third-

27   party entities and aquatics competitions as inadmissible propensity evidence, as well as irrelevant

28   and unfairly prejudicial.  Plaintiff cites evidence related to the World Swimming Association's

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    Ring of Fire, World High Diving Federation, World Open Water Swimming Association, and

2    OceanMan competitions which supports an inference Defendant knew GR 4 could be used to

3    threaten athletes and national federations and intended to threaten them by invoking it; the national

4    federations would have interpreted the invocation as a threat; and Defendant had a modus operandi

5    of invoking GR 4 to harm competitors.  (Dkt. No. 492 at 12-14.)  The Court agrees with Plaintiff

6    these are non-propensity purposes for which the evidence is admissible.  *See* Fed. R. Evid.

7    404(b)(2) (explaining evidence of prior conduct "may be admissible for another purpose, such as

8    proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

9    lack of accident"); *see also United States v. Izatt*, 480 F. App'x 447, 450 (9th Cir. 2012)

10   (affirming admission of evidence "relevant to show *modus operandi*"); *Movie 1 & 2 v. United*

11   *Artists Commc'ns, Inc.*, 909 F.2d 1245, 1250 (9th Cir. 1990) (noting admission of evidence "to

12   demonstrate previous anti-competitive conduct by defendant").

13        Defendant's motion is DENIED to the extent Plaintiff seeks to use evidence concerning

14   third party entities and aquatics competitions for non-propensity purposes.

15                **4.       Motion in Limine 4: To Exclude Argument and Evidence Regarding
                            World Aquatics' Alleged "Threats" to Swimmers (Dkt. No. 493)**
16
17        Defendant seeks to exclude evidence or testimony arguing Defendant made "threats" to

18   swimmers regarding sanctions or their Olympic eligibility because "there is no evidence of any

19   actual communications between World Aquatics and *swimmers* related to ISL," so any purported

20   evidence would be inadmissible hearsay.  (Dkt. No. 493 at 4.)  Plaintiff argues evidence of

21   Defendant's threats is not hearsay because it will not be offered for its truth, but rather to show

22   Defendant's legally actionable conduct and the statements' effect on the national federation and

23   swimmer recipients.  *See United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019) ("An out-of-

24   court statement is *not* hearsay if offered for any purpose other than the truth of whatever the

25   statement asserts . . . [e.g.,] for the purpose of establishing what effect it had on the listener."

26   (citations omitted)); *see also Bergene v. Salt River Project Agric. Imp. & Power Dist.*, 272 F.3d

27   1136, 1142 (9th Cir. 2001) (finding threat was not hearsay because it was not offered to show

28   employer "in fact would deny the promotion" but instead to show employer's "claimed rationale .

United States District Court
Northern District of California

1  . . was a pretext").  In addition, Defendant only specifically identifies and objects to Katinka

2  Hosszu's interrogatory responses, which Plaintiff does not intend to introduce into evidence.  So,

3  the Court DENIES the motion.

4  **II.    SEALING MOTIONS**

5      Pending before the Court are three administrative motions, filed November 10, 2025, to

6  consider whether another party's material shall be sealed: (1) Plaintiff's motion regarding material

7  designated as confidential by Wasserman and USA Swimming, (Dkt. No. 484); (2) Defendant's

8  motion regarding material designated as confidential by the swimmer plaintiffs in *Shields*, (Dkt.

9  No. 495); and (3) Defendant's motion regarding material designated as confidential by USA

10  Swimming, (Dkt. No. 496).  Under the Local Rules, when a party seeks to file under seal any

11  material designated as confidential by another party, the submitting party must file an

12  administrative motion for a sealing order.  *See* N.D. Cal. Civ. L.R. 79-5(f).  "Within 7 days of the

13  motion's filing, the Designating Party must file a statement and/or declaration" specifically stating

14  the applicable legal standard and reasons for keeping the confidential documents under seal.  *Id.* at

15  79-5(f)(3).  "A failure to file a statement or may result in the unsealing of the provisionally sealed

16  document without further notice."  *Id.*

17      As Wasserman, USA Swimming, and the *Shields* plaintiffs have not responded to the

18  motions to justify the sealing of this information, the Court DENIES the administrative motions to

19  consider whether another party's or non-party's information should be sealed.

20  **III.    OTHER PRETRIAL ISSUES**

21      **A.    Plaintiff's Late Disclosure of Cyndi Gallagher**

22      Defendant objects to the inclusion of Cyndi Gallagher, a swimming coach and former ISL

23  coach, on Plaintiff's witness list.  According to Defendant, Plaintiff first disclosed Ms. Gallagher

24  when exchanging its proposed witness list on October 31, 2025, on which it included Ms.

25  Gallagher "for twenty minutes of limited testimony concerning her experience with swimmers and

26  ISL coaching."  (Dkt. No. 490 at 11.)

27      "Compliance with [Federal Rule of Civil Procedure 26(a)(1)'s] disclosure requirements is

28  'mandatory.'"  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014)

United States District Court
Northern District of California

1   (citation omitted).  Absent a showing of substantial justification or harmlessness, the witness

2   should be stricken from the witness list and precluded from testifying at trial.  *See id.* (citing Fed.

3   R. Civ. P. 37(c)(1)).  As Defendant argues, Plaintiff's "untimely disclosure of Ms. Gallagher . . . is

4   not harmless, because [Defendant] was deprived the opportunity to seek information from [her] or

5   depose her during discovery."  (Dkt. No. 490 at 10.)  And the Court is not persuaded by Plaintiff's

6   argument Ms. Gallagher's late inclusion is justified because, in light of the *Shields* settlement,

7   "swimmers who were class plaintiffs [a]re no longer available to testify."  (*Id.* at 11.)

8           The Court therefore STRIKES Ms. Gallagher from the witness list.

9   **B.      Motion for an Order Requesting Mr. Grigorishin's Admission to the United
            States (Dkt. No. 483)**

10          Plaintiff filed an unopposed administrative motion for a Court order requesting U.S.

11  Customs and Border Protection grant Konstantin Grigorishin temporary admission to the United

12  States to testify at trial, pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(a).  (Dkt. No.

13  483.)  Plaintiff relies on cases in which courts issued such orders for a criminal defendant's

14  witnesses.  *See United States v. Saipov*, 412 F. Supp. 3d 295, 303 (S.D.N.Y. 2019); *United States

15  v. Theresius Filippi*, 918 F.2d 244, 246 (1st Cir. 1990).  Plaintiff does not cite any civil case in

16  which a court has issued such an order, much less an order for a plaintiff's witness.  So, the Court

17  DENIES the motion.

18  **C.      Testimony via Live Video**

19          Plaintiff asks the Court to allow two witnesses, Konstantin Grigorishin and Artem Nitz, to

20  testify at trial via live video.  (Dkt. No. 490 at 12.)  "At trial, the witnesses' testimony must be

21  taken in open court unless" an exception applies.  *See* Fed. R. Civ. P. 43(a).  "For good cause in

22  compelling circumstances and with appropriate safeguards, the court may permit testimony in

23  open court by contemporaneous transmission from a different location."  *Id.*

24          Plaintiff explains Mr. Nitz is prohibited from leaving Ukraine because he may be

25  conscripted into the armed forces.  Defendant does not object to Mr. Nitz's video testimony, as

26  "being unable to leave the country of his residence due to wartime restrictions is the type of

27  exception to in-person testimony to which Rule 43(a) is intended to apply: unexpected

28

7

1    circumstances that are out of the witness's control." (Dkt. No. 490 at 14.)  The Court GRANTS

2    Plaintiff's request for Mr. Nitz to testify via video.

3        Mr. Grigorishin's "inability to lawfully enter the United States [would] constitute[] good

4    cause in compelling circumstances to justify" testimony via video, especially as his deposition was

5    conducted remotely.  *See Monserrate v. K.K. Machine Co. Inc.*, No. 10-3732 (TLM), 2013 WL

6    1412194, at *1 (E.D.N.Y. Apr. 8, 2013).  However, Plaintiff has not shown Mr. Grigorishin "ha[s]

7    pursued and [] been denied a visa to the United States." *See El-Hadad v. United Arab Emirates*,

8    496 F.3d 658, 669 (D.C. Cir. 2007).  The Court holds Plaintiff's request for Mr. Grigorishin to

9    testify via video in abeyance pending evidence he applied for and failed to obtain a visa to enter

10   the United States.

11   **IV.    TRIAL LOGISTICS**

12       **A.    Jury Questionnaires**

13       The Jury Office anticipates providing counsel and the Court with completed jury

14   questionnaires by Wednesday, January 7, 2026.  The Court will identify hardship excuses from the

15   surveys, and the parties shall meet and confer as to whether they agree on any additional excuses.

16   Court will not excuse any jurors in advance of voir dire without the parties' agreement.  The Court

17   will hold a hearing via Zoom video on Thursday, January 8, 2026 at 4 p.m. to discuss excuses.

18       **B.    Jury Selection and Trial Schedule**

19       Jury selection will begin Monday, January 12, 2026 at 8:30 a.m.  Each side will have 20

20   minutes for voir dire and is allowed three peremptory challenges.  Eight jurors will be seated.

21   Opening statements and the first witness will follow, as time allows, after a 45-minute lunch break

22   and concluding around 3:00 p.m.

23       On Tuesday, January 13, 2026, trial will be conducted from 8:30 a.m. to 3:00 p.m.  No trial

24   will be conducted on Wednesday, January 14, 2026.  On Thursday, January 15, 2026, trial will be

25   conducted from 8:30 a.m. to 1:30 p.m.  On Friday, January 16, 2026, trial will be conducted from

26   8:30 a.m. to 3:00 p.m.  Given the federal holiday, no trial will be conducted on Monday, January

27   19, 2026.  On Tuesday, January 20, 2026, trial will be conducted from 8:30 a.m. to 3:00 p.m.  On

28   Wednesday, January 21, 2026 and Thursday, January 22, 2026, trial will be conducted from 8:00

United States District Court
Northern District of California

1    a.m. to 1:30 p.m.  On Friday, January 23, 2026, trial will be conducted from 8:00 a.m. to 3:00 p.m.

2         On days when trial is conducted until 3:00 p.m., there will be 15-minute breaks in the

3    morning and afternoon and a 45-minute break for lunch.  On days when trial is conducted until

4    1:30 p.m., there will be two 15-minute breaks.

5         Counsel should arrive by 8:00 a.m. each morning to address matters outside presence of

6    the jury.

7    **C.     Time Limits**

8         Each side has 14 hours for direct and cross-examination.  This time does not include

9    opening and closing statements; each side has 45 minutes for its opening statement, and the Court

10   will disclose closing statement time limits later.

11        This Order disposes of Docket Nos. 483, 484, 485, 487, 489, 491, 492, 493, 495, and 496.

12   **IT IS SO ORDERED.**

13   Dated: November 20, 2025

14

15

16   JACQUELINE SCOTT CORLEY
     United States District Judge

United States District Court
Northern District of California